# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

# Appeal No. 23-13624-G

EALAILA CONARD,

*Plaintiff-Appellant,*

v.

CHANEL INC.,

*Defendant -Appellee.*

On Appeal from the United States District Court

For the Northern District of Georgia

Civil Action File:  22-CV-3784 (MLB) (CCB)

## APPELLANT'S OPENING BRIEF

Ealaila Conard in *Propria Persona*

3162 Blackstone Run
Lawrenceville, Georgia 30043

(770) 545-7013

I

## PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Ealaila Conard certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. Michael L. Brown (U.S. District Judge)
2. Chanel, Inc. (Appellee)
3. Ealaila Conard (*pro se* Appellant)
4. Alex S. Drummond (Appellee's counsel)
5. Karla Grossenbacher (Appellee's counsel)
6. Shana Madigan (Appellee's counsel)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Ealaila Conard, hereby certifies that Plaintiff-Appellant has no parent corporation and no publicly held corporation owning 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Ealaila Conard, pursuant to Federal Rule of Appellate Procedure 34(a) and the Eleventh Circuit Rule 34 1(a), does not request oral argument. The facts and legal arguments are adequately presented in the briefs.

# Table Of Contents                                                                      Page

Statement of Subject Matter and Appellate Jurisdiction.............................………........4

Standard of Review.....…………………………………………………………5

Statement of the Issues..…………………………………………………..…….6

Statements of Fact.…....................................................................................…………..8

Statement of the Case....................................................................................….....12

Argument and Authorities.....................................................................………..17

I.  The Court assumed facts not alleged by suggesting Chanel assumed Conard was a threat of contagious disease at some time in the future.

II. The Court assumed facts not alleged, and failed to apply correct legal standards, by finding that Chanel did not demonstrate misclassifying Conard as impaired when it fired her for refusing treatment for a perceived disability.

III.  The Court failed to accept alleged facts of disparate treatment arising from Chanel's assumption that Conard was a threat of contagion.

IV. The Court assumes facts not alleged and misinterprets the nature of the perceived disability.

a.) Conard never claimed that being "unvaccinated" is a disability under the ADA.

b.) The "COVID policy" established the perceived disability as: being a threat of deadly contagious disease.

c.) "Vaccine record-keeping" is just one of the actions taken by the Chanel which demonstrate Chanel's history of misclassifying Conard as impaired.

d.) The Court cited cases which do not apply to Conard's alleged facts and are not binding.

V.  Conard opposed the policy for potential violations, and Chanel retaliated.

VI.  The "COVID policy" is not a legitimate policy.

VII.  Non-job related treatments and tests. Inquiries designed to identify perceived disabilities.

Conclusion.............................................................................................………..29

Certificates of Compliance and Service...…………………………………....30

**JURISDICTION STATEMENT**

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §1331 because this Court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112 as implemented by 29 CFR § 1630.

This Court has appellate jurisdiction under 28 U.S.C. §1291 because this appeal is from a final judgment.

On July 13, 2023, Magistrate Judge Christopher Bly issued a thirty-page "Report and recommendation" regarding Chanel, Inc.'s ("Chanel") motion to dismiss Ealaila Conard's complaint.  On July 25, 2023, *pro se* plaintiff Conard asked for more time to research and draft her objections to the report.  This request was denied by Judge Brown on July 28, 2023.

On August 14, 2023, Judge Michael Brown issued an order adopting Magistrate Judge Christopher Bly's "Report and recommendation" regarding granting Chanel's motion to dismiss Ealaila Conard's complaint for procedural reasons and also adopted the Magistrate's recommendation that the plaintiff be refused any opportunity to amend her complaint.  The Judge declared the case terminated.

4

On August 21, 2023, plaintiff Conard filed a motion to vacate the order based upon identifying several potentially incorrect legal conclusions, misconstrued facts and improper procedures which invalidated the Report. Conard asked that the case be re-opened.

On September 6, 2023, defendant Chanel responded to the motion. On October 5, 2023, the court denied the motion and the case remained closed with no opportunity for amendment.

The Notice of Appeal was served on the Clerk of the district court on October 27, 2023 and docketed on October 30, 2023. This appeal is timely under FRAP 4(a).

## STANDARDS OF REVIEW

### I. Judicial Error

The Court misconstrued Conard's claim under the "actual disability" standards rather than correctly applying the "perceived disability" standards; failed to apply legal citations appropriately; failed to apply the specific standards of the ADA to the allegations, and used a manufactured standard of "plausibility" instead.

The Court misapplied the law applicable to the facts of the case by failing to abide by a Congressional mandate to first analyze the employer's compliance. The Court also failed to acknowledge that the medical inquiries and treatments mandated by Chanel's policy were not-job-related and failed to rule this violated the ADA.

## II. Abuses of discretion:

The Court reached incorrect legal conclusions because the Judge refused to be ruled by guiding principles set out by Congress regarding the mandate to prioritize analysis of the employer's compliance. The ruling was made so contrary to the facts of the case such that it appears arbitrary or motivated by something other than the evidence presented to the court. The Court is holding a *pro se* plaintiff to a higher standard than professional lawyers by requiring Conard to more than sufficiently allege all pleading requirements and by questioning her alleged facts without objective explanation.

### STATEMENT OF THE ISSUES

The District Court erred by dismissing the complaint for failure to state a claim of discrimination based upon disability. The Magistrate report stated that plaintiff did not allege that she was disabled, which is a completely false conclusion that necessarily ignored that Conard alleged all the pertinent facts and followed the rules of construction. The Magistrate also ignored the fact that Conard pled violations of the ADA which require no showing of disability at all. The Court ignored the Congressional mandate requiring the Court to focus primarily on the employer's compliance of its obligations under the ADA in order to assess liability.

6

Instead, the Court imposed an additional and fictitious "plausibility" standard on top of the rules of construction, which improperly placed the burden of liability on the plaintiff rather than on the defendant, despite defendant's acknowledged and assumed legal duty, as a covered entity, to uphold the ADA. The Court focused all its attention on determining whether Conard "plausibly alleged" the pleading standard, when the rules simply require the plaintiff to <u>sufficiently allege</u> the elements of construction, assuming an evidentiary hearing is to follow. Thus, the Judge is using an arbitrary standard that is not objective and may even be politically motivated.

The Judge also failed to use the correct pleading standards and reached the incorrect conclusion that Conard does not qualify for the protections of the ADA, despite abundant allegations of adverse employment actions taken, which is the correct standard for "regarded as" claims.[1] The Court erroneously misapplied the rules pertinent for a claim brought under the "actual" (diagnosed) prong of disability to Conard's claims of <u>being treated</u> and <u>misclassified</u> as if she has a "perceived disability". Conard's disability claims were for a "perceived disability" and the rules required her to allege that adverse employment actions were taken on the basis of the "perceived disability". Conard is not required to show that she asked for a reasonable accommodation and was denied it, as one would in an "actual disability" case. She is required to show that adverse employment actions were taken on the basis of a

---

[1] "[A]n individual is "regarded as having such an impairment" any time a covered entity takes a prohibited action against the individual because of an actual or perceived impairment, even if the entity asserts, or may or does ultimately establish, a defense to such action." *29 CFR 1630.2 (l) 2*.

7

"perceived disability" because this is objective proof that discrimination took place. The Court failed to apply the correct pleading standard to this case.

The Judge also erred because the rules do not require any showing of disability to claim either the violation of invasion of medical privacy or to claim the violation of being subjected to non-job-related medical treatments, tests and disability-related inquiries.

The District Court also erred by dismissing the complaint for failure to state a claim of retaliation based upon disability, by ignoring the facts alleged and arguing that there was no causal connection between Conard's protected activity, her claim of disparate treatment based upon "perceived disability" and the materially adverse employment actions she endured at the hands of her employer; despite the facts that the employer <u>admitted</u> the adverse actions and that numerous written communications documented them.

## STATEMENT OF FACTS

Conard began working for Chanel in December of 2018 as a fashion advisor at its retail location within Neiman Marcus in Atlanta. (Doc. 1 at ¶ 19). Chanel required Conard and all her colleagues to work from home between mid-March of 2020 and mid-June of 2020 due to the declaration of the "COVID-19 public health emergency" which, on its face, treated everyone as physical threats of spreading deadly contagious

disease. *Id.* at ¶¶ 19, 20. On or about June 12, 2020, Chanel informed Conard that she and all employees could return to work on the premises but that Chanel would require all employees to wear a surgical mask over their faces and engage in frequent hand-washing in an effort to mitigate the spread of contagious disease. These mitigation measures were implemented as a new condition of employment for all employees but Chanel never claimed that these mitigation measures were directly related to the performance of Conard's job duties. *Id.* at ¶ 21. Conard returned to work on or about June 12, 2020, and was told she was required to wear a mask to prevent the spread of "COVID-19" which demonstrates that Chanel was assuming that all employees presented a threat of contagious disease; which condition needed to be mitigated by wearing masks. (Doc. 1-1 at 2, ¶ 10). In late December of 2020, a co-worker claimed that she "tested positive for COVID-19", and it was Chanel's policy to treat any employee's self-proclaimed self-diagnosis based upon a test result as equivalent to a doctor's *bona fide* diagnosis of carrying a deadly contagious disease. Chanel additionally told Conard, who did not have any symptoms, that she had to stay home for several days and then she would be required to provide a "negative PCR test result" in order to return to work after the imposed quarantine period. Conard, who works mainly on commission, states that she missed a "big day of sales at work" which occurred during the forced quarantine period. Chanel informed Conard that she would not be allowed to work until she provided the company with a "negative PCR test

9

result". Chanel coerced Conard into revealing her private medical information as a new condition of employment. *Id.* at 2, ¶ 11. Chanel never claimed that these new medical tests were necessary to perform her job functions.

On September 13, 2021, during a meeting, store manager Bradley announced that Chanel was now requiring all employees to receive COVID-19 drug treatments. These injections were being marketed as "vaccines" despite the fact that the makers did not claim that the drug provided immunity or prevented transmission. Chanel acted *as if* any employee who did not take the Covid drug would be considered a contagious threat of deadly disease, and would terminate them. Conard was told that taking this drug treatment was another new condition of continued employment. (Doc. 1 at ¶ 23). Conard was emailed Chanel's COVID-19 policy, which mandated that all U.S. employees be injected with the COVID drug by November 8, 2021 or be subject to termination. *Id.*; (*see also* Doc. 1-1 at 6). On September 17, 2021, Chanel published instructions on how to request what Chanel termed an "exemption" from the COVID injection policy, and Chanel also referred to such an "exemption" as an "accommodation" which is a defined term used in the ADA statutes for any measure that allows a disabled employee to perform their job functions. (Doc. 1 at ¶ 24; *see also* Doc. 1-1 at 6). Chanel did not claim that taking a COVID drug was necessary for Conard to perform her job duties. The published instructions did not mention any other ways to opt-out of the medical treatments. On September 22, 2021, based on her

employer's advice, Conard asked for a "religious exemption" and provided a written request. (Doc. 1-1 at 2, ¶ 14). On October 6, 2021, store manager Bradley, assistant manager Hae, and Human Resources (HR) employee Michelle Rhee held a meeting with Conard. *Id.* at 3, ¶ 16. Rhee and Bradley told Conard that her religiously-based request to forego the COVID drug was denied.    On October 8, 2021, Rhee sent Conard a letter formally denying Conard's "exemption" request to refuse the COVID drug and reiterating that, as a new condition of her employment, she was required to take the COVID drug treatment by November 8, 2021. (Doc. 1 at ¶ 26; Doc. 1-1 at 7). Rhee stated that Conard's position required her "regular, in-person presence" and interaction with others. It was Chanel's policy was to assume that employees presented physical threats to the "health and safety of [Chanel's] workforce", and Conard's request not to undertake the drug treatment for this condition would not be allowed. Conard was told that she would be fired if she did not receive medical treatment for this condition in the form of taking a "COVID-19 vaccine". *Id.*    Chanel ultimately terminated Conard on November 8, 2021 because its policy assumed that Conard was a physical threat of contagious disease and Conard failed to be treated for this condition. (Doc. 1 at ¶ 27). On November 10, 2021, Donna Hart with Chanel's legal department emailed Conard a separation agreement which offered Conard $5000 if Conard would agree to waive her rights to file a claim against Chanel in the future.

On February 16, 2022, Conard filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (Doc. 1 at ¶ 5). She filed an amended charge on May 4, 2022. (Doc. 1-1 at 18–24). The EEOC issued her a notice-of-right-to-sue letter on June 7, 2022. *Id.* at 25.

## STATEMENT OF THE CASE

On September 6, 2022[2], plaintiff filed a complaint against her employer, Chanel, for violations of the Americans with Disabilities Act Amendments Act ("ADA-AA") for discrimination and retaliation on the basis of disability and other prohibited actions.

Therein, Conard argued that Chanel, a covered entity, discriminated against her based upon  a perceived disability[3] and misclassified her based upon a perceived disability or impairment. Conard also alleged that Chanel imposed non-job-related medical tests and made inquiries about whether she had taken specific drugs to treat the perceived disability. Conard alleged that the medical treatments (masking, "testing", quarantining, taking COVID drugs) were new qualification standards for employment which were not in any way related to performing her essential job functions.  She opposed these new measures on the basis that they were discriminatory, interfered with her right to medical privacy, medical choice, informed consent, and they were not related to performing her job functions. Chanel imposed various

---

[2]  The clerk received the complaint on September 6, 2022, but did not docket the claim until September 19, 2022. [Dkt 1, Doc 1 page 1]

[3]  The stereotype and prejudicial perception that everyone was a physical threat of deadly, contagious disease developed from the government announcement of a public health emergency in January of 2020.

mitigation measures for the perceived impairment[4]; including but not limited to: medical examinations ("testing"), medical interventions such as quarantine, mask-wearing and COVID drug injections; and made several inquiries to determine if the perceived disability had been treated. Chanel never conducted an assessment of Conard to determine whether Conard physically presented an objective health and safety threat. Conard expressed her opposition to the "COVID policy" measures and gave Chanel written notices[5] that it was potentially violating her rights. Conard claimed that Chanel used policies and procedures that harass, isolate, segregate, limit, misclassify, deny equal access and impose non-job-related medical exams, treatments and inquiries about perceived disabilities upon her. Conard claimed Chanel retaliated against her by refusing her meaningful redress to reclaim her rights or to oppose violations without incurring punishment. Conard claims several adverse employment actions were taken against because she opposed a policy that potentially violated her rights; she claims Chanel: refused to recognize her rights in the first place; Chanel HR failed to protect her job during Conard's opposition; Chanel invaded her medical privacy; refused informed consent and medical choice; segregated her away from others by quarantining her without evidence; adversely changed the original terms and conditions of her employment several times; refused to let her work by imposing a

---

[4]  Conard alleges that Chanel treated her as if she had the "perceived disability" of being a physical threat of deadly, contagious disease; and that Chanel misclassified her as a physical threat of deadly contagious disease and began taking adverse employment actions against her despite her good faith opposition.

[5]  Due to Chanel's conditions, Conard expressed her opposition to violating her rights in a "religious" exemption request and later in EEOC complaints for discrimination.

13

quarantine upon her; effectively reduced her pay during the imposed quarantine; reduced her work hours; treated her disparately[6] from employees who took the COVID drug and ultimately terminated her employment   All these adverse actions were taken in order to enforce the "Covid policy" which had many inherent ADA violations.[7]

On November 17, 2022, Chanel filed a motion to dismiss the complaint for a failure to state a claim.  Chanel claimed that Conard's complaint was time-barred by being filed past the 90 days given by the EEOC.  Chanel claimed that Conard did not allege that she is disabled within the meaning of the ADA.  Chanel argued that Conard failed to allege an "actual disability" and furthermore that having COVID-19 does not constitute a disability.  Chanel argued that 1.) Conard failed to allege that she ever had COVID-19; 2.) Chanel had never been told that Conard had COVID-19;  3.) therefore there was no basis upon which to suppose that Chanel regarded Conard as disabled. Chanel argued that it was not a plausible inference that Chanel misclassified all employees as having the same perceived disability because Chanel offered an opportunity for exemption.   Chanel stated that Conard failed to state a claim for "failure to accommodate" by confusing "exemptions' with *bona fide* ADA accommodations. Chanel also claimed that to the extent that Conard was retaliated against during a period in which she did not specifically claim the protection of the

---

6   The record shows that the COVID drug does not confer immunity or prevent transmission.  Chanel fired employees who refused the drug by claiming that they presented physical threats to the health and safety of others; yet Chanel allowed "COVID drugged" employees to work around others.

7   See Conard's Complaint section "Preamble" for a brief description of several non-compliant features of Chanel's COVID policy.  [Dkt 1 Doc 1 pp. 2-4]

ADA that her retaliation claim fails. Chanel claimed that inquiries for "COVID-19 vaccine" proof are not disability-related inquiries and quoted an EEOC guidance document. Chanel admitted that it collected medical information but claimed that plaintiff failed to allege that her medical records were *disclosed* improperly.

On December 20, 2022, Conard filed a Response in opposition to the motion to dismiss her claim. Conard showed that her complaint was not time-barred because she was able to prove that she mailed it on September 2, 2022 which is within the 90 days given by the EEOC. Conard listed the paragraphs in her complaint where she had sufficiently alleged that she has a disability within the meaning of the ADA.[8] Conard reiterated that she is not claiming an "actual (diagnosed) disability", rather she is claiming a "perceived disability" and claiming that she is being misclassified as having a "perceived disability". Conard never claimed to "have COVID-19" nor is this relevant to Conard's claims. Under the "regarded as" prong, Conard is required to show that the terms of her employment were adversely affected because Chanel assumed that Conard had the "perceived (hypothetical) disability" of being a threat of deadly, contagious disease. The fact that the "COVID policy" does not require any diagnosis or assessment prior to imposing mitigation measures shows that the policy treats hypothetical conditions.

On January 9, 2023, Chanel filed its reply.

---

8   See *Response to motion to dismiss* [Dkt Doc 19 p.2] which lists *Complaint* ¶¶ 33, 39, 57, 58, 88, 121, 122.

On March 2, 2023 Conard filed a notice asking the court to take notice of its delay in deciding this threshold matter particularly in light of the Congressional mandate that Court's analyze the employer's compliance as the first order of business.

On July 13, 2023, Magistrate Judge Christopher Bly issued a 30-page report which recommended that Conard's complaint was not time-barred; but that it should be dismissed for failure to state a claim.   Bly claimed  that (1) Conard did not sufficiently allege that her employer misclassified her as having a perceived disability or regarded her as having a perceived disability, and (2) Conard did not sufficiently allege a causal connection between her so-called "protected activity" and her termination. Bly also recommended not allowing Conard to amend her complaint.

On July 25, 2023, Conard requested more time to object to the Magistrate's report because of its length (30 pages), number of citations to research and her *pro se* status.

On July 28, 2023, Judge Michael Brown denied the request.  On August 14, 2023, Judge Brown adopted the report, dismissed the complaint and ordered the clerk to close the case.

On August 21, 2023, Conard filed a motion to vacate the order based upon incorrect facts applied in the ruling, and incorrect legal conclusions derived as a result of false facts.

16

On October 5, 2023, Judge Brown denied the motion to vacate.

On October 27, 2023, Conard filed a Notice of this Appeal. On October 31, 2023, the appeal court docketed this appeal.

## ARGUMENTS AND AUTHORITIES

**I.  The Court assumed facts not alleged by suggesting Chanel assumed Conard was a threat of contagious disease at some time in the future.**

The Magistrate suggested that Chanel treated Conard as if she might become a contagious threat *in the future*, which is not a fact that Conard ever claimed, and there is no evidence to support this hypothesis.  The Magistrate erroneously suggested that Conard's claim should be dismissed because he fabricated that Conard "... has not alleged that Defendant perceived her to have a disability at the time of her termination."[9] He referred to the Eleventh Circuit's review of  *Equal Emp. Opportunity Comm'n v. STME*, LLC, 938 F.3d 1305, 1314 (11th Cir. 2019).   He quoted that court's sensible ruling of finding that "the terms of the ADA protect persons who experience discrimination because of a current, past, or perceived disability—not because of a potential future disability that a healthy person may experience later." *Id* at 1311.  Then the Magistrate, for reasons unclear, hypothesized that Chanel has treated Conard as if she will develop a disease *in the future.*

Conard never alleged that she is regarded as impaired in the future. Conard claimed that she has been treated as a contagious threat from the moment Chanel adopted the "COVID policy" around March 2020 when it segregated and isolated all

---

[9]    *Report and Recommendation* p.16.

employees by making them work from home, and then it allowed employees back on the premises but made them all wear masks and wash their hands frequently so they would not spread infection. [Dkt. Doc. 1 p. 4 ¶19]  Conard was fired a year and eight months later on November 8, 2021; and she was regarded as a threat of deadly contagious disease the entire time.  The mitigation measures of isolating, masking, washing hands, "testing" and quarantining all demonstrate that Chanel assumed that all employees were currently threats of deadly contagious disease.  The Magistrate has no factual basis for presuming Chanel required these mitigation measures because it perceived some employee might develop a future condition of contagiousness; on the contrary, Chanel's actions show that it considered every employee a current and present threat of contagion.  In fact, Conard alleged that when one employee claimed she "had COVID" because of a test result, Chanel quarantined a number of employees for several days, including Conard, because it assumed they were all potentially infected/infectious.[10]  Chanel also sent an October 8, 2021 email to Conard which denied her request to opt out of the COVID drug because she presented a health and safety threat to all persons physically near her.

**II. The Court assumed facts not alleged, and failed to apply correct legal standards by finding that Chanel did not demonstrate misclassifying Conard as impaired when it fired her for refusing treatment for a perceived disability.**

---

[10]  There is no distinction in the COVID policy, being infected is the same as being infectious, both conditions exist simultaneously.

18

Next the Magistrate recommended dismissing Conard's claim under the "record of" prong by which Conard claims Chanel also *misclassified* her as having a perceived disability.  The Magistrate states, "Defendant did not classify (or misclassify) Plaintiff as having "an impairment that substantially limited one or more major life activities" by noting that Plaintiff was unvaccinated for COVID- 19." [11]

Conard did not allege that Chanel misclassified her as having a perceived disability because it "*noted*" she did not take the COVID drug, she alleged that Chanel *terminated her employment* because she did not take the drug, which is an <u>adverse action</u>.[12]  She alleged that Chanel began *misclassifying* her back in March of 2020 when all employees were sent home because they were considered threats of contagion.  Conard alleged that Chanel *continued to* misclassify her as an on-going threat of contagion when employees came back to the premises, and Chanel told her to mask, quarantine and "test".  The final non-job-related medical treatment that Chanel imposed was the COVID drug[13], which Chanel appears to view as the most definitive treatment for the perceived impairment. Chanel drew a line in the sand and stated that any employee who refused the drug treatment would be terminated.

Conard is required, by the pleading standard, to show that adverse actions were taken on the basis of perceived disability.  The fact that Chanel repeatedly admits that it will terminate any employee that does not get this drug treatment for the perceived disability is direct evidence that Chanel regards Conard as having a perceived disability and that it misclassifies her as having a perceived disability.  The treatments evolved over time, however

---

11  *Report and Recommendation* p.18.
12  See *Complaint* Dkt Doc 1 ¶¶ 27, 45, 50, 64, 65, 87, 116, 117, 124.
13 Chanel imposed this experimental treatment for a medical condition Conard had never been diagnosed with.

Chanel now decided to terminate any employee who refused the drug treatment; and the Magistrate failed to "*note*" that the adverse action taken provides evidence that Chanel treated Conard as if she had a perceived disability and fired her because of it.

## III. The Court failed to accept alleged facts of disparate treatment arising from Chanel's assumption that Conard was a threat of contagion.

In his report, Magistrate Bly recognized that Conard never claimed that she suffered discrimination because Chanel failed to accommodate her. The Magistrate noted that Conard was claiming that she was treated disparately. Magistrate Bly mentions in a footnote that Conard has failed to allege disparate treatment because the COVID policy was applied to everyone. The Magistrate opines that "[n]othing in Defendant's policy was "disproportionately" applied only to Plaintiff."[14] Bly once again misses the facts Conard alleged.[15]

Conard states that the policy applied to everyone, because it assumed everyone was equally a threat of contagious disease. However, once Conard opted-out of the policy, based upon claiming that it interfered with her rights, she placed herslf in a separate class, one which Chanel HR rightly should have respected and facilitated, but instead Chanel HR moved to terminate Conard. Those who comply with a policy keep their jobs, those who oppose the policy in good faith because of potential rights violations suffer adverse employment actions and are ultimately terminated. The

---

14 *Report* p. 18 at footnote.
15 See Complaint [Dkt Doc 1, page 10, ¶¶ 53-54

employees Chanel assumes will no longer pose a threat of deadly contagious disease are allowed to work, while the employees Chanel assumes continue to pose a threat of deadly contagious disease are harassed and terminated. This disparate treatment is based solely upon a perceived disability and it is punitive. As Chanel has no objective proof that Conard is contagious with disease, only a hypothetical assumption, the disparate treatment is discriminatory rather than evidence-based. Defendant's "Covid policy" discriminates against "untreated" employees by using a "treated"/"untreated" qualification standard as a new condition of employment. The policy is also disproportionally applied to individuals who claim protected opposition to treatments, tests and inquiries. This group is terminated.

**IV.   The Court assumes facts not alleged and misinterprets the nature of the perceived disability.**

**a.) Conard never claimed that being "unvaccinated" is a disability under the ADA.**

The Magistrate misstates Conard's alleged facts and then cites irrelevant dicta from cases which are not holdings to support his misapprehension of the alleged facts. Bly reports that "Plaintiff alleges that Defendant "made a record of" Plaintiff having a disability "by adding [her] name to a list of employees who were 'unvaccinated' and then keeping an actual record of the same." (Doc. 1 at ¶¶ 121, 122)." However, Magistrate Bly is misstating Conard's actual allegations and he misquotes her. At ¶ 121 Conard clearly claims: "... the defendant made a record of such [perceived] disability by *mis-classifying the plaintiff*

21

*as having an impairment* that substantially limited one or more major life activities….".
(*emphasis* added)  The Magistrate left the qualifying phrase out of his quote.  The perceived impairment is: "being a threat of deadly contagious disease."

**b.) The "COVID policy" established the perceived disability as: being a threat of deadly contagious disease.**

First, it should be understood that the nature of the "perceived disability" necessarily comes from the <u>defendant's own "COVID policy"</u> and it is the <u>defendant</u> which has defined the perceived disability as "being a threat of deadly contagious disease." Conard is simply reporting the facts of her experience.   Throughout the complaint Conard expresses the perceived disability, as defined by the "COVID policy" itself:

> ¶ 8 "The defendant admits that their Covid-19 Policy was intended to *prevent the spread Covid-19, described as a deadly contagious disease*. Their policy rested on the *assumption that every employee, the plaintiff included, had or could have this disease*. That is, the policy's underlying assumption was that *all of their employees were simultaneously a risk and posed a risk to the health of all other employees. (emphasis* added)

> ¶ 60 The defendant's Covid-19 Policy openly claims that it is intended to *"prevent the spread of Covid-19", described a deadly contagious disease*, and then outrageously, *acts as if everyone is infected with it and must consequently submit to the same exact medical treatments* without any professional examination, diagnosis, supervision, or judicial approval or oversight. (*emphasis* added)

Conard consistently claims that Chanel misclassified her as having the perceived disability of being a deadly contagious threat; and factually supports the  misclassification by stating that once she was identified as refusing "vaccination" she was terminated.  This is because Chanel perceived all "unvaccinated" employees as on-going threats of such disease who refused to cease being threats.

22

**c.) "Vaccine record-keeping" is just one of the actions taken by the Chanel which demonstrate Chanel's history of misclassifying Conard as impaired.**

In her complaint, at ¶ 93 plaintiff alleges "[t]he defendant, by its own policies, attitude toward the plaintiff and means of communication, record-keeping and general treatment of the plaintiff, created a set of facts that satisfy the criteria under the ADA known as the "record of prong."   Clearly each of these *actions taken* by the defendant are alleged as factual support of the claim of misclassification.  Conard is not claiming that the impairment is: a record of being "unvaccinated".  The record-keeping, as well as the other actions described by Conard in ¶ 93 quoted above are simply the various methods by which Chanel objectively demonstrates that it misclassifies Conard as a perpetual threat of deadly contagious disease.

**d.) The Court cited cases which do not apply to Conard's alleged facts and are not binding.**

The judges in the *Speaks*, *Librandi* and *Shklyar* cases oddly all make the same "mistake" that Magistrate Judge Bly is making, almost as if the district courts have developed a "template" response.  However, the alleged facts in Conard's case do not match the fabricated facts the three judges and Magistrate Bly have conjured up.  Conard does not claim, and neither do the plaintiffs in the  *Speaks*, *Librandi* and *Shklyar* cases, that being "unvaccinated" is the perceived disability or initiated the misclassification of having a perceived disability.  It is abundantly clear that all mitigation measures (masks, quarantine, "testing", drugs) are the treatments imposed

because the defendant's policy *has already pre-determined* that the plaintiff is a threat of deadly contagious disease. Chanel identified Conard (and all employees) as having a perceived disability which necessarily precedes all further acts of imposing the various treatments. It is absurd for any judge or this magistrate judge to pretend that any of these plaintiffs claimed that *not having a specific drug treatment* constitutes a disability under the ADA when each of these plaintiff's have clearly claimed the COVID policy *a priori* established the perceived disability.

If, as the *Shklyar* judge wrote, it is not a "reasonable inference" to assume that the "COVID policy's" universally applied mitigation measures "require inferring that [the employer] regarded all of its... employees as having a disability." Then why isn't the court able to discern how equally unreasonable it is for the employer to assume that all its employees came down with the same condition, at the same time, and need the same treatment, and everybody must be treated in order to make each other treatments work, and no diagnosis is required, and even if you have no symptoms you might kill someone's grandma? Why isn't the court reviewing the absurd assumptions inherent in the "COVID policy" itself which lead to the absurd, yet objectively true circumstance that all employees were treated as if they were direct threats of deadly contagious disease? Why isn't the court reviewing the covered entity's compliance as the first order of business as Congress has instructed it to do in ADA cases?

**V. Conard opposed the policy for potential violations, and Chanel retaliated**

The Magistrate stated that the "Plaintiff has not plausibly alleged that her termination was causally connected to her *opposition* to the policy, as opposed to her failure to comply with the policy." The Magistrate again has failed to correctly state the alleged facts. Conard sufficiently alleged that she engaged in statutorily protected activity[16]. According to the EEOC, acts that "oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it."[17] This is a simple and straightforward bar that Conard easily met. She was by told her employer on September 13, 2021 that Chanel was now going to require all employees to take the COVID drug, and on September 17, 2021, Chanel told employees that it would accept only medical or religious exemption requests. Conard emailed the reasons she believed the policy violated her rights to informed consent, medical choice, medical privacy, to be free from coercion and duress, and to not be discriminated against on September 22, 2021. Chanel's trained HR agents were aware that Conard was expressing her resistance to the policy based upon perceived violations during the in-person meeting they had with Conard on October 6th to discuss her opposition. On October 8, 2021, Chanel responded in writing at Conard's request and told her that she was too great a threat to the health and safety of others to be allowed to work without getting the COVID drug treatment. Conard was terminated.

---

16  See *Complaint* ¶¶ 24- 28 and
17 U.S. Equal Employment Opportunity Commission, Retaliation. Available at: https://www.eeoc.gov/retaliation.

On November 10, 2021, Chanel offered Conard $5000 if she would agree to waive any rights to sue Chanel. These facts were alleged, and they are sufficient to show that she was coerced, given bad legal advice, threatened with termination as soon as she opposed a policy she believed was illegal, and then offered a paltry $5000 in an effort to keep her quiet.

## VI.  The "COVID policy" is not a legitimate policy.

The Magistrate is required to accept Conard's facts as true at this phase of the proceedings and he is certainly not allowed to accept Chanel's  naked claim that it only fired the plaintiff because she refused to *comply* with a policy, when that very policy *arguably violates the ADA.*  Is the policy legitimate?  Does it conflict with established law?  What legal duty does Chanel have to stop the spread of "COVID"? Did the policy allow meaningful redress?  Was there suspicious timing between her opposition and her termination?

Chanel's liability is imposed, not only because it is a covered entity, but because it failed to perform any individualized assessment showing that a symptomless Conard presented a significant threat of contagion to others.   Chanel claimed that it is "implausible" that Chanel treats every employee as if they are a threat of deadly contagious disease, then why does the "COVID policy" impose the exact same medical treatment on everyone without bothering to establish the medical necessity of the treatments; and why isn't the policy overseen by a medical professional to review

26

contraindications or pre-existing health issues?  The policy itself is implausible because it assumes that everyone has the same condition at the same time and that "Sally" has to take the treatment in order to make "Bill's" treatment work.   Conard argued that Chanel's "exemption" policy is really a ruse, and demonstrates that Chanel has no intention of letting any employee work without being treated.   The email denying Conard an exemption from taking the COVID drug stated that Chanel was refusing to let Conard work around others because of the health and safety threat she posed to others by her physical presence. [Dkt 1-1 p.7]  With that kind of reasoning, would any employee be granted an exemption? The exemptions are a ruse, they are designed to cull workers who claim their rights.   Chanel's "exemptions" are also not true accommodations because they fail to meet the ADA definition of assisting an employee to perform their job functions.  Conard's complaint is not about religious exemptions, it is about violations under the ADA.   Conard expressed consistent opposition to the policy once it was implemented. Chanel duplicitously only offered "exemptions" which it erroneously called "accommodations" so Conard endeavored to express the violations by the form the employer advised her to take. Conard expressed that the policy violated rights to medical privacy, informed consent, to refuse non-job related measures, she identified the policy as potentially illegal and claimed discrimination.   She filed an amended complaint with the EEOC that lists several violations of the ADA specifically, but Conard is not required to use ADA terminology to be protected under the ADA.

She simply needs to express resistance to a policy that potentially violates her protected rights.  Chanel received sufficient notice of her claims and could have handled the situation in a manner compliant with the ADA, and it is supposed to have staff trained to interpret ADA issues. Chanel's HR team actually spearheaded the retaliation against Conard.

## VII. Non-job related treatments and tests. Inquiries designed to identify perceived disabilities.

The Magistrate failed to apply proper standards.  Chanel is not absolved from complying with all the requirements in-place prior to asking an employee for private medical information or making an inquiry about a medical treatment that assumes a perceived disability exists.  Furthermore, Chanel cannot impose a "COVID vaccine" because it failed to show that the treatment was job-related or met the business necessity standard which requires an assessment.  Chanel cannot ask for certain medical information because it has not shown that the information is job-related, it is irrelevant whether it *disclosed* the information properly if Chanel cannot show that it was allowed to request the information in the first place.

Conard fully alleged that she was engaged in exercising her ADA-protected rights, opposing a discriminatory "Covid policy", and identifying violations such as her right to not be subjected to non-job related and disability-related medical inquiries

and treatments. Chanel admits that but-for Conard's opposition to the policy and her refusal to undergo COVID drug treatments she would not have been fired.

Magistrate Bly, and Judge Brown by accepting the report and denying the motion to vacate, have made incoherent and inapplicable arguments, have ignored alleged facts, have used improper procedures, and have demonstrated bias for Chanel.

## CONCLUSION

WHEREFORE, the appellant requests an order reversing the trial court's decision and remanding it to trial court for further proceedings.

DATED this day 11th of December, 2023.        By: Ealaila : Conard

Ealaila Conard, Appellant

29

**CERTIFICATE OF COMPLIANCE**

I, Ealaila Conard, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains **6,067** words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

By: _EC._

**CERTIFICATE OF SERVICE**

I, Ealaila Conard, hereby certify that a true and correct copy of the foregoing was duly served upon Chanel's attorney Alex S. Drummond, at the address of 1075 Peachtree Street, N.E. Suite 2500 Atlanta, GA 30309-3958, via first class mail on this 11th day of December, 2023.

I further certify that four true and correct copies of the foregoing was duly served upon the United States Court of Appeals for the Eleventh Circuit at the Elbert Tuttle Court of Appeals, 56 Forsyth Street, N.W.; Atlanta, Georgia 30303, via first class mail on this 11th day of December, 2023.

By: _EC._