# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

# Appeal No. 23-13624-G

EALAILA CONARD,

*Plaintiff-Appellant,*

v.

CHANEL INC.,

*Defendant -Appellee.*

On Appeal from the United States District Court

For the Northern District of Georgia

Civil Action File:  22-CV-3784 (MLB) (CCB)

## APPELLANT'S APPENDIX

Ealaila Conard in *Propria Persona*

3162 Blackstone Run
Lawrenceville, Georgia 30043

(770) 545-7013

U.S. COURT OF APPEALS
RECEIVED
CLERK
DEC 21 2023
ATLANTA, GA

1

**Index**

1.) Notice of Appeal

2.) District Court Docket Sheet

3.) Conard's Complaint + Affidavit + Exhibits

4.) Chanel's Memorandum in Support of Motion to Dismiss

5.) Conard's's Response to Motion to Dismiss

6.) Magistrate Judge's Report and Recommendation

7.) Order adopting report and granting motion to dismiss

8.) Conard's Motion to Vacate the Order

9.) Order denying the Motion to Vacate

USPS tracking #: ____7021 1970 0001 8154 5139____

Clerk of the Court
US District Court Northern District of Georgia
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

October 27, 2023

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**OCT 3 0 2023**

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

Notice of Appeal

Hello Clerk,

I am filing a notice of appeal of the Order entered on October 5, 2023 in my case of:
EALAILA CONARD v. CHANEL, INC.; Case # 22-CV-3784-MLB-CCB
Please include a conformed or certified copy of the order along with the transmission of the
record to the appeals court clerk.

By: Ealaila: Conard
Ealaila Conard, Plaintiff in *Propria Persona*
3162 Blackstone Run
Lawrenceville, Georgia 30043

- 1 -

4months,CCB,CLOSED,SUBMDJ

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:22-cv-03784-MLB

Conard v. Chanel, Inc.
Assigned to: Judge Michael L. Brown
Cause: 42:12101 et seq. Americans with Disabilities Act of 1990

Date Filed: 09/19/2022
Date Terminated: 08/14/2023
Jury Demand: Plaintiff
Nature of Suit: 445 Civil Rights:
Americans with Disabilities - Employment
Jurisdiction: Federal Question

**Plaintiff**

**Ealaila Conard**                                        represented by   **Ealaila Conard**
                                                                            3162 Blackstone Run
                                                                            Lawrenceville, GA 30043
                                                                            PRO SE

V.

**Defendant**

**Chanel, Inc.**                                          represented by   **Karla Grossenbacher**
                                                                            Seyfarth Shaw, LLP -DC
                                                                            975 F. Street, NW
                                                                            Washington, DC 20004-1454
                                                                            202-828-3556
                                                                            Fax: 202-641-9256
                                                                            Email: kgrossenbacher@seyfarth.com
                                                                            *LEAD ATTORNEY*
                                                                            *PRO HAC VICE*
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Shana Madigan**
                                                                            Seyfarth Shaw, LLP -DC
                                                                            975 F. Street, NW
                                                                            Washington, DC 20004-1454
                                                                            202-270-3989
                                                                            Fax: 202-828-5393
                                                                            Email: smadigan@seyfarth.com
                                                                            *LEAD ATTORNEY*
                                                                            *PRO HAC VICE*
                                                                            *ATTORNEY TO BE NOTICED*

                                                                            **Alex S. Drummond**

Seyfarth Shaw-Atlanta
Suite 2500
1075 Peachtree Street, NE
Atlanta, GA 30309
404-881-5467
Fax: .
Email: adrummond@seyfarth.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/19/2022 | 1 | COMPLAINT with Jury Demand filed by Ealaila Conard. (Filing fee $402, receipt number GAN100141145) (Attachments: # 1 Affidavit In Support of Complaint, # 2 Civil Cover Sheet)(ane) Please visit our website at http://www.gand.uscourts.gov /commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 09/20/2022) |
| 09/19/2022 | | Case Assigned to Judge Michael L. Brown. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:22-cv-3784 MLB CCB. Please make note of this change in order to facilitate the docketing of pleadings in this case. (aar) (Entered: 10/04/2022) |
| 09/20/2022 | 2 | Summons Issued as to Chanel, Inc. (ane) (Entered: 09/20/2022) |
| 10/04/2022 | | Notification of Docket Correction Case assigned to Judge Brown but entered under Judge Cohen (aar) (Entered: 10/04/2022) |
| 10/21/2022 | 3 | Return of Service Executed by Ealaila Conard. Chanel, Inc. served on 10/13/2022, answer due 11/3/2022. (jpa) (Entered: 10/24/2022) |
| 10/28/2022 | 4 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by Chanel, Inc.. (Attachments: # 1 Text of Proposed Order)(Drummond, Alex) (Entered: 10/28/2022) |
| 10/28/2022 | 5 | Corporate Disclosure Statement by Chanel, Inc..(Drummond, Alex) (Entered: 10/28/2022) |
| 10/31/2022 | 6 | MINUTE ORDER: The Court GRANTS 4 Defendant's consent motion for extension of time to answer. Defendant shall have through and including November 17, 2022 to answer or otherwise respond to the complaint. Ordered by Magistrate Judge Christopher C. Bly on 10/31/2022. (jtj) (Entered: 10/31/2022) |
| 10/31/2022 | | Clerk's Certificate of Mailing as to Ealaila Conard re 6 Order. (jtj) (Entered: 10/31/2022) |
| 11/17/2022 | 7 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with Brief In Support by Chanel, Inc.. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of S. Madigan, # 3 Exhibit A)(Drummond, Alex) (Entered: 11/17/2022) |
| 12/02/2022 | 8 | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Karla Grossenbacher. Clerk to follow-up by 12/12/2022. (cdg) (Entered: 12/02/2022) |

| 12/02/2022 | 9 | Letter from Clerk re: LR 83.1 Pro Hac Vice requirements sent to Shana Madigan. Clerk to follow-up by 12/12/2022. (cdg) (Entered: 12/02/2022) |
|---|---|---|
| 12/05/2022 | 10 | MOTION for Extension of Time to respond to Defendant's 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Ealaila Conard. (jpa) (Entered: 12/06/2022) |
| 12/06/2022 | | Submission of 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , to Magistrate Judge Christopher C. Bly. (jpa) (Entered: 12/06/2022) |
| 12/06/2022 | 11 | MINUTE ORDER: Plaintiff filed a motion for an extension of time to respond to Defendant's motion to dismiss. (Doc. 10). Given the relevant time constraints, to the extent Defendant wishes to oppose the motion, it should do so by 5:00 p.m. on December 7, 2022. If Defendant elects not to oppose the motion, the Court would appreciate Defendant docketing a brief notice so stating its lack of opposition. Ordered by Magistrate Judge Christopher C. Bly on 12/6/2022. (jtj) (Entered: 12/06/2022) |
| 12/06/2022 | | Clerk's Certificate of Mailing as to Ealaila Conard re 11 Order. (jtj) (Entered: 12/06/2022) |
| 12/07/2022 | 12 | NOTICE by Chanel, Inc. re 10 MOTION for Extension of Time to respond to re: 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and Chanel's Motion for Extension of Deadline for Reply Brief* (Attachments: # 1 Brief)(Drummond, Alex) Modified on 12/16/2022 to add motion (dob). (Entered: 12/07/2022) |
| 12/07/2022 | 13 | ORDER GRANTING the 10 Motion for Extension of Time to respond to Defendant's 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Plaintiff shall file her response by 12/19/2022. If Plaintiff elects to oppose Defendant's reasonable request for additional time to file a reply, she should do so by December 14, 2022. Signed by Magistrate Judge Christopher C. Bly on 12/7/22. (jpa) (Entered: 12/08/2022) |
| 12/12/2022 | | Clerk's Certificate of Mailing as to Ealaila Conard re 13 Order (jpa) (Entered: 12/12/2022) |
| 12/12/2022 | 14 | APPLICATION for Admission of Karla Grossenbacher Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12252062).by Chanel, Inc.. (Drummond, Alex) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/12/2022) |
| 12/12/2022 | 15 | APPLICATION for Admission of Shana Madigan Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12252096).by Chanel, Inc.. (Drummond, Alex) Documents for this entry are not available for viewing outside the courthouse. (Entered: 12/12/2022) |
| 12/15/2022 | | APPROVAL by Clerks Office re: 14 APPLICATION for Admission of Karla Grossenbacher Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12252062). Attorney Karla Grossenbacher added appearing on behalf of Chanel, Inc. (pdt) (Entered: 12/15/2022) |
| 12/15/2022 | | APPROVAL by Clerks Office re: 15 APPLICATION for Admission of Shana Madigan Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12252096). Attorney Shana Madigan added appearing on behalf of Chanel, Inc. (pdt) (Entered: 12/15/2022) |
| 12/15/2022 | 16 | ORDER granting 15 Application for Admission Pro Hac Vice as to Shana Madigan. Signed by Judge Michael L. Brown on 12/15/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at |

| | | |
|---|---|---|
| | | http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(dob) (Entered: 12/15/2022) |
| 12/15/2022 | 17 | ORDER granting 14 Application for Admission Pro Hac Vice as to Karla Grossenbacher. Signed by Judge Michael L. Brown on 12/15/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(dob) (Entered: 12/15/2022) |
| 12/15/2022 | | Clerk's Certificate of Mailing as to Ealaila Conard re 16 Order on Application for Admission PHV, 17 Order on Application for Admission PHV,. (dob) (Entered: 12/15/2022) |
| 12/16/2022 | 18 | ORDER granting 12 Motion for Extension of Time to file Reply to 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by 1/9/2023. Signed by Magistrate Judge Christopher C. Bly on 12/15/2022. (dob) (Entered: 12/16/2022) |
| 12/16/2022 | | Clerk's Certificate of Mailing as to Ealaila Conard re 18 Order on Motion for Extension of Time. (dob) (Entered: 12/16/2022) |
| 12/20/2022 | 19 | RESPONSE re 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Ealaila Conard. (dob) (Entered: 12/21/2022) |
| 01/09/2023 | 20 | REPLY BRIEF re 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Chanel, Inc.. (Drummond, Alex) (Entered: 01/09/2023) |
| 01/12/2023 | | Submission of 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , to Magistrate Judge Christopher C. Bly. (jpa) (Entered: 01/12/2023) |
| 03/02/2023 | 21 | NOTICE Of Filing letter concerning delay of case by Ealaila Conard (jpa) (Entered: 03/08/2023) |
| 03/09/2023 | 22 | NOTICE Of Filing Letter to Judge Bly by Ealaila Conard (jpa) (Entered: 03/20/2023) |
| 04/25/2023 | 23 | NOTICE Of Filing Letter by Ealaila Conard (Attachments: # 1 Letter/Certificate of Service)(dob) (Entered: 04/25/2023) |
| 07/13/2023 | 24 | FINAL REPORT AND RECOMMENDATION that the Plaintiffs 1 Complaint be DISMISSED for failure to state a claim. Signed by Magistrate Judge Christopher C. Bly on 07/13/2023. (kng) (Entered: 07/14/2023) |
| 07/13/2023 | | FINAL REPORT AND RECOMMENDATION that the 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM be GRANTED. The Clerk is DIRECTED to terminate the reference of this matter to the undersigned. Signed by Magistrate Judge Christopher C. Bly on 07/13/2023. (kng) (Entered: 07/14/2023) |
| 07/13/2023 | 25 | ORDER for Service of 24 Final Report and Recommendation by Magistrate Judge Christopher C. Bly. Each party may file written objections to the Report & Recommendation within 14 days of service. If no objections are filed, the Report & Recommendation may be adopted as the opinion and order of the District Court. Signed by Magistrate Judge Christopher C. Bly on 07/13/2023. (kng) (Entered: 07/14/2023) |
| 07/14/2023 | | Clerk's Certificate of Mailing as to Ealaila Conard re 24 FINAL REPORT AND RECOMMENDATION, 25 Order for Service of Report and Recommendation. (kng) (Entered: 07/14/2023) |

| 07/25/2023 | 26 | (Construed by Clerk as) MOTION for Extension of Time to Respond to Magistrate's Report re: 24 FINAL REPORT AND RECOMMENDATION re 1 Complaint by Ealaila Conard. (kng) (Entered: 07/27/2023) |
|---|---|---|
| 07/28/2023 | 27 | ORDER DENYING 26 Request for Enlargement of Time to Respond to Magistrate's Report re: 24 FINAL REPORT AND RECOMMENDATION. Signed by Judge Michael L. Brown on 07/28/2023. (kng) (Entered: 07/28/2023) |
| 07/28/2023 | | Clerk's Certificate of Mailing as to Ealaila Conard re 27 Order on Motion for Extension of Time. (kng) (Entered: 07/28/2023) |
| 07/31/2023 | | Submission of 24 FINAL REPORT AND RECOMMENDATION re 1 Complaint; FINAL REPORT AND RECOMMENDATION re 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; and 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM to District Judge Michael L. Brown. (jpk) (Entered: 07/31/2023) |
| 08/14/2023 | 28 | ORDER: The Court ADOPTS the Magistrate Judge's Final Report and Recommendation 24 and DISMISSES Plaintiff's Complaint for failure to state a claim. The Court DIRECTS the Clerk to close this case. Signed by Judge Michael L. Brown on 8/14/23. (ceo) (Entered: 08/15/2023) |
| 08/14/2023 | | Civil Case Terminated. (ceo) (Entered: 08/15/2023) |
| 08/15/2023 | 29 | CLERK'S JUDGMENT in favor of Defendant against Plaintiff (ceo)--Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 08/15/2023) |
| 08/15/2023 | | Clerk's Certificate of Mailing as to Ealaila Conard re 29 Clerk's Judgment, 28 Order on Final Report and Recommendation. (ceo) (Entered: 08/15/2023) |
| 08/21/2023 | 30 | MOTION to Vacate Final Order re 28 Order on Final Report and Recommendation, Order on Motion to Dismiss for Failure to State a Claim by Ealaila Conard. (kng) (Entered: 08/23/2023) |
| 09/06/2023 | 31 | RESPONSE in Opposition re 30 MOTION to Vacate 28 Order on Final Report and Recommendation,,,, Order on Motion to Dismiss for Failure to State a Claim, filed by Chanel, Inc.. (Drummond, Alex) (Entered: 09/06/2023) |
| 09/26/2023 | | Submission of 30 MOTION to Vacate 28 Order on Final Report and Recommendation to District Judge Michael L. Brown. (jpk) (Entered: 09/26/2023) |
| 09/29/2023 | 32 | NOTICE and Addendum to Motion to Vacate Final Order by Ealaila Conard re 30 MOTION to Vacate Final Order. (kng) (Entered: 10/03/2023) |
| 10/05/2023 | 33 | ORDER DENYING Plaintiff's 30 Motion to Vacate Final Order. Signed by Judge Michael L. Brown on 10/5/2023. (kng) (Entered: 10/05/2023) |
| 10/05/2023 | | Clerk's Certificate of Mailing as to Ealaila Conard re 33 Order on Motion to Vacate. (kng) (Entered: 10/05/2023) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
| 10/27/2023 12:08:54 |



Ealaila Conard
Plaintiff in *Propria Persona*
3162 Blackstone Run
Lawrenceville, Georgia 30043
eahabibul@gmail.com
770(645)7013

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

EALAILA CONARD

    PLAINTIFF

v.

CASE N⁰ 1:22-CV-3784

CHANEL, INC.

    DEFENDANT

_____/

## COMPLAINT FOR DISCRIMINATION, RETALIATION, AND PROHIBITED ACTIONS ON THE BASIS OF DISABILITY

    Ealaila Conard ("plaintiff"), sues the CHANEL, INC. ("defendant") for violations of the Americans with Disabilities Act and the Americans with Disabilities Amendments Act of 2008 (hereafter "ADA" and "ADA-AA", respectively), 42 U.S.C. §12101, *et seq.*, for discrimination, retaliation, and prohibited actions taken on the basis of disability under the "regarded as" and "record of" prongs in violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendment Act of 2008 (hereafter "ADA" and "ADA-AA", respectively), 42 U.S.C. § 12101, *et seq.* Plaintiff petitions for declaratory and injunctive relief under Title I of the ADA as implemented under 29 CFR Part 1630, *et seq.*

## PARTIES

1.    The plaintiff resides in Lawrenceville, Georgia at the address of 3162 Blackstone Run for all times material to the facts giving rise to the complaint.

2.    The defendant is an "employer" within the definition of 42 U.S.C. 12111(5), with their principal place of business at 3393 Peachtree Road NE, Atlanta, Georgia, 30026 for all times material to the facts giving rise to the complaint.

## JURISDICTION AND VENUE

3.     This court has original and exclusive jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the ADA and ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) and (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

4.     Venue is proper in this judicial district under 28 U.S.C. §1391 because the defendant does business in this judicial district and the acts complained of took place in this judicial district.

5.     The plaintiff timely filed a charge of discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on February 16th, 2022. The plaintiff has exhausted all administrative remedies and obtained her right to sue letter from the EEOC within the ninety days preceding the date on which she commenced her original complaint against the defendant. A true and correct copy of the EEOC's right to sue letter is alleged and included as Exhibit A.

6.     The plaintiff has exhausted all administrative remedies available to her.

## PREAMBLE

7.     Since 2020, the defendant adopted measures known collectively as their "Covid-19 Policy", which included requirements or accommodations that employees wear surgical masks, take experimental vaccines, practice isolation and segregation, submit to medical examinations, and disclose vital statistics as new conditions of employment.

8.     The defendant admits that their Covid-19 Policy was intended to prevent the spread of Covid-19, described as a deadly contagious disease. Their policy rested on the assumption that every employee, the plaintiff included, had or could have this disease. That is, the policy's underlying assumption was that all of their employees were simultaneously at risk and posed a risk to the health of all other employees.

9.     No provisions were made to establish individualized assessments as to whether particular employees posed a direct threat on the health of their co-workers.

**10.**    One of the mitigation measures established by the defendant's Covid-19 policy is a vaccination mandate. On the basis of compliance with this accommodation, the defendant's policy identified three types of employees: (1) vaccinated; (2) unvaccinated but with a medical or religious exemption; and (3) unvaccinated with no exemption. The defendant's policy treated the last group of employees (as opposed to the other employees that complied with the Covid-19 Policy or exempted themselves from it) either as if they carried a specific, active, infectious disease, or had an impaired or suppressed immune system that made them prone to contracting Covid-19.

**11.**    It should be noted that no provisions were included to handle disability considerations or exceptions in the defendant's Covid-19 policy. The policy failed to acknowledge the existence of a fourth group of employees: those qualified individuals with a disability who claim their rights under the ADA and therefore are not subject to the same requirements as the rest of the employees.

**12.**    The adoption of this policy was voluntary, since no law prescribed the implementation of their mitigation measures and it lacked any legal enforcement mechanism.

**13.**    No provisions prescribed nor authorized the policy measures either by legal duty nor statute. However, the policy imposed mitigation measures recommended by the Center for Disease Control and Prevention (CDC), largely developed for an over 65 and immune-compromised population,  upon all of their workers without considering the individualized medical assessment of each employee's health nor the fact that said group does not accurately represent the working population. In the rush to implement the policies no oversight was given to whether the policies were appropriate for the working population.

**14.**    Notwithstanding the lack of enforceability, the defendant chose to adopt and implement their Covid-19 Policy through obfuscation, coercion, retaliation and interference towards their employees, including the plaintiff, besides the fact that none of these practices were related in any way to the plaintiff's essential job function[1].

**15.**    The policy asks representatives of employers to make repeated, non-job related medical inquiries of their employees and to impose non-job related medical treatments on them. Medical decisions are far beyond the scope of the employer-employee relationship.

[1] 29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

Page 3 of 23

Additionally, the defendant failed to give conspicuous notice as to the manner in which the measures were directly related to plaintiff's essential job function.

**16.**    The defendant employed their policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and other medical treatments upon the plaintiff.

**17.**    When the plaintiff, as a qualified individual, exercised her right to object the accommodations imposed by the Covid-19 Policy and gave notice that she was being "regarded as" having a disability, the defendant denied her equal access to the premises and continued to impose these unrequited accommodations.

**18.**    The defendant also retaliated against the plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, and ultimately terminating her employment as a direct and proximate cause of her good faith refusal to participate in the defendant's Covid-19 Policy.

<div align="center"><strong><u>STATEMENT OF FACTS</u></strong></div>

**19.**    The plaintiff was first employed by the defendant in December of 2018 as a fashion advisor at their retail location within Neiman Marcus in Atlanta. During the period between mid-March of 2020 and mid-June of 2020, the plaintiff and her colleagues were segregated and isolated from each other by the defendant's assignment requiring each of them to work from home on the presumption that plaintiff had Covid-19 or that at some point in the future she might become infected with such a disease.

**20.**    This stereotype and speculation appeared to be the result of the government's announcement of a public health emergency related to the Covid-19 disease in January of 2020.

**21.**    By June 12th, 2020, the defendant informed the plaintiff that as a new condition of employment and returning back to the premises of the defendant, she had to submit to various medical interventions such as wearing surgical masks over her face and frequent hand-washing.

**22.** On September 12ᵗʰ, 2021, the plaintiff received a text message from the store assistant manager Hae, which notified her about meeting on September 13ᵗʰ, 2021 at 9:30 a.m.

**23.** On September 13ᵗʰ, 2021 during the Teams meeting, Store Manager Bradley announced that the defendant was requiring all employees get vaccinated with the Covid-19 vaccine as a condition for continuation of employment. The plaintiff also received an e-mail from "Chanel Corporate" purportedly mandating the Covid-19 vaccine, a true and correct copy of which is alleged as Exhibit A-1.

**24.** On September 17ᵗʰ, 2021, the defendant updated the Connect Chanel Hub (Internet interface) with instructions on how to request an "exemption" from the policy, and referred to it as an "accommodation", deceptively portraying it as the only response or means of objecting to or "requesting permission" to refuse the defendant's treatments. The plaintiff, at that time, was not aware that: (1) it was the defendant which had the burden of proving that such measures were legally required, and (2) the plaintiff had rights that were protected under the ADA.

**25.** In response, the plaintiff asked for a "religious exemption" as a means of exercising her rights under the ADA. However, the ADA does not require any special language in order to invoke one's rights, and certainly not in this situation, where the employer –plaintiff's adversary– overtly deceived her into a legal process that ultimately had no legal merit and ultimately would be denied by the defendant who first proposed it to the plaintiff. Thereby, the plaintiff alleges that as of September 17ᵗʰ, 2021, she exercised her rights under the ADA to refuse the defendant's accommodations under their Covid-19 Policy, and also exercised her rights under 29 CFR Part 1630.9(d) by asking for an exemption.

**26.** Demonstrating the defendant's bad faith legal advice and instruction to the plaintiff, in an attempt to violate the ADA by offering the plaintiff a decoy "right" to "request permission to be exempted from" a medical treatment for which there was no legal duty in the first place, the defendant denied the "religious exemption" request on the false premises that the plaintiff was infected with Covid-19 or that, because plaintiff was working in close proximity to others, she could infect them, or on the pure speculation that she could someday be

infected with Covid-19, and finally, on the false premise that the defendant had the legal duty and legal authority to impose such measures upon the plaintiff.

27.    As alleged in the plaintiff's affidavit, the defendant informed the plaintiff that refusing their Covid-19 Policy would be the direct cause of the termination of her employment, which constitutes another adverse employment action. Ultimately, the defendant terminated the plaintiff's employment on November 8th, 2021, as the plaintiff's testimony reveals, and as alleged herein.

28.    While the defendant attempted to conceal their actions that were intended to terminate her employment, in an effort to avoid creating any written record of their illegal actions, again as the plaintiff's testimony demonstrates, the defendant continued their efforts to defeat the plaintiff's legal rights, even after wrongfully terminating her employment, by attempting to conceal their illegal conduct by their efforts to persuade the plaintiff into signing an agreement waving her rights to sue the defendant in exchange for a mere $5,000.

29.    This demonstrates that the defendant was fully aware of their illegal conduct and made several attempts to, and undertook a collective and concerted effort intended solely to, conceal their violations and then persuade the plaintiff to waive her rights to have any remedy for the defendant's violations, in exchange for a small sum of money.

30.    Following this ordeal, the plaintiff had time to research her rights and finally determined several months later that while employed, she had rights under the ADA. She immediately filed a complaint with the EEOC for disability discrimination and retaliation. Subsequently, she obtained her right to sue letter and commenced the present complaint against the defendant.

## COUNT I -- COMPLAINT FOR DISCRIMINATION IN VIOLATION OF THE ADA-AA

31.    Plaintiff re-alleges each of the pertinent statements from paragraphs 1 to 30 and those in her affidavit, and incorporates each herein and further alleges that this is a case of first impressions.

32.    The defendant is a covered entity as defined under 42 U.S.C. §12111(5) of the ADA.

33.    Disability cases typically involve plaintiffs who have assumed the burden of proof under the "actual" or "diagnosed" prong of the ADA; whereas, the plaintiff is proceeding under the "regarded as" and the "record of" prongs of the ADA where the burden of proof is upon the defendant to prove that it qualified for an exemption or exception to their legal duties to comply with the ADA. These are further expressed in this complaint.

34.    This is also a case of first impression because, regarding the defendant's Covid-19 Policy, the plaintiff has exercised her rights to medical privacy and informed consent to refuse medical treatments. These rights are not limited merely to the "doctor-patient" relationship, but are squarely rooted in the ADA under 29 CFR Parts 1630.9(d), 1630.12(b), 1630.13(b) and Parts 1630.14(c) and (d) for the reason that these rights are <u>intangible private property rights</u> of people, and of the plaintiff specifically, and are protected by law and not originated or granted by any statute. These rights existed long before any laws were adopted by modern society and in fact, have been exercised in the formation of modern society.

35.    This is also a case of first impressions because the plaintiff was the first one to use the ADA to protect her rights and asked the question: how did the defendant suddenly acquire a new legal authority or legal duty to treat the plaintiff for a disease without any medical examination or diagnosis? The answer of course is that the defendant never did acquire any such legal duty or authority.

36.    This is also a case of first impressions because, while the defendant makes the noble-sounding but disingenuous claim that their Covid-19 Policy is intended to prevent the spread of Covid-19, they have absolutely no financial responsibility to engage in or administer such a policy. In fact, many employers adopt such policy for the entirely ulterior motive of qualifying for the government's disaster relief funds.

37.    This case, for the first time, requires answers for the following three questions: (1) Does the defendant have proof of any financial responsibility (insurance, etc.) to compensate anyone for becoming infected with Covid-19 after complying with their Covid-19 Policy? (2) Does the defendant have proof of any financial responsibility (insurance, etc.) to compensate anyone for suffering any adverse health consequences as a result of

complying with its Covid-19 Policy? And (3) Why has the United States District Court itself adopted the same policies as the defendant and, therefore, how can the court be impartial?

38.     Once again, this is a case of first impressions because, if the defendant actually had the *bona fide* legal right to require the plaintiff to disclose her medical records, then the defendant would have the right to simply obtain the name and address of the plaintiff's physician and then request such records directly from her physician. It is well-established that no physician would make such disclosure without the express written permission of the patient (plaintiff) or without a *bona fide* court order. Instead, the defendant's Covid-19 Policy depends solely upon the employee to voluntarily waive her rights to medical privacy and disclose such records.

39.     The plaintiff is regarded as having a disability by the defendant's Covid-19 Policy, which, according to the defendant, was intended to prevent the spread of the contagious disease known as Covid-19, which has been said to cause a global pandemic since January, 2020.

40.     Although the plaintiff is not required by law to discuss the nature of such disability, for clarity's sake she alleges that the defendant's policy rested on the assumption that every employee, the plaintiff included, had or could have this disease. That is, the policy's underlying assumption was that all of its employees were simultaneously at risk and posed a risk to the health of all other employees.

41.     One of the mitigation measures established by the defendant's Covid-19 policy is a vaccination mandate. On the basis of compliance with this accommodation, the defendant's policy identified three types of employees: (1) vaccinated; (2) unvaccinated but with a medical or religious exemption; and (3) unvaccinated with no exemption.

42.     The defendant's Covid-19 Policy regarded the plaintiff as having Covid-19 or being prone to getting infected with Covid-19 because she is not vaccinated.

43.     It is undisputed that the defendant openly admitted that the purpose of such policy was the prevention of the spread of Covid-19. This policy was inherently based upon the unproven presumption that the plaintiff had such a disability and the pure speculation that

someday the plaintiff might become infected with such disease. The defendant also assumes that its policy was the proper treatment to mitigate its effects in the workplace.

44.    The defendant's Covid-19 Policy imposed certain medical treatments, including but not limited to experimental vaccines, wearing a surgical mask over the face, social distancing, segregation, isolation, disclosing medical records and medical history, and submitting to medical examinations. These are each well-known medical treatments that invoke the plaintiff's medical privacy rights and as explained previously, which are squarely rooted in the ADA.

45.    The defendant's Covid-19 Policy classified the plaintiff in such a way that her employment opportunities were adversely affected and limited because the defendant would not permit the plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").

46.    The defendant required non-job-related medical examinations of the plaintiff that were not consistent with any conceivable business necessity.

47.    The defendant made disability-related inquiries of the plaintiff that were not consistent with business necessity and not permitted under 29 CFR Part 1630.13(b)

48.    The vaccines demanded by the defendant were experimental because the policy was adopted during the Emergency Use Authorization (EUA) period and because none of the experimental vaccines had been approved by the Food and Drug Administration. Some may have been "authorized", but only one was approved and is not commercially available, even if the plaintiff chose to take it.  Simply, there are no proper and safe vaccines. In addition, if a vaccine prevents infection and transmission of a disease as defined by modern scientific standards, why would anyone need to take a vaccine so that someone else could avoid become ill? A vaccine protects the person taking it, and there is absolutely no scientific standard where any vaccine is taken to protect anyone else but the person taking it.

49.    And if there was such a vaccine, why did employees who were concerned simply take the vaccine themselves? Since when does one take a medical treatment so that someone else will not become ill?  This is not even sane.

**50.** In fact, this practice, regarding oneself and others as having an illness without any diagnosis, and then seeking to treat everyone with the same medical intervention without any diagnosis, is defined as a mental illness in the Fifth Edition of the <u>Diagnostic and Statistical Manual for Mental Health</u>. The defendant's Covid-19 Policy demonstrates that those seeking to impose it upon employees and the plaintiff are suffering from an un-diagnosed mental illness and have demonstrated that each of them are a danger to themselves and others and must be ordered to submit to an involuntary mental evaluation. The plaintiff's allegations easily satisfy the elements of discrimination by showing that she falls within a protected group, that she was qualified for the position she held, that she was subject to an adverse employment action and that the adverse employment action was taken under the circumstances giving rise to the facts which constitute unlawful discrimination.

**51.** The defendant's Covid-19 Policy fails to include any provisions for: (1) employees with disabilities; and (2) protecting the medical privacy of employees, and specifically the plaintiff's.

**52.** The defendant's Covid-19 Policy fails to include any provisions establishing that the plaintiff waived her rights to medical privacy, to informed consent or her rights protected under the ADA.

**53.** The defendant's Covid-19 Policy is applied disproportionately by identifying groups of employees, such as those who are "vaccinated" and those who are "unvaccinated". It ignores the group of employees who invoke their rights under the ADA and further identifies another group of employees who claim to be exempted from such policy for medical or religious reasons.

**54.** The plaintiff is within the group of employees who has invoked rights under the ADA and is treated differently by the defendant than the other groups, such as those who defendant considers "vaccinated" and then "unvaccinated" and those requesting "exemptions for medical or religious reasons".

**55.** While it is not necessary to allege that the defendant regarded the plaintiff as having a disability, the defendant's Covid-19 Policy clearly demonstrates that the defendant sought to impose its provisions upon the plaintiff based upon the pure speculation, stereotype and

generalization that she was infected or may in the future become infected with a deadly contagious disease (e.g. Covid-19) and that the defendant acquired the legal duty and legal authority to cure or treat such disability by imposing measures upon the plaintiff.

56.     The defendant claimed that its Covid-19 Policy was a requirement, but it failed to act under any legal authority or legal duty to impose its policy measures on their employees.

57.     The defendant's Covid-19 Policy was not supported by a legal duty with which the plaintiff was required to comply. Actually, the plaintiff was protected under the ADA upon giving notice to the defendant that she was a qualified individual who was being regarded as having a disability. Simply claiming that a policy is "mandatory" or "required" does not automatically make it compulsory.

58.     The defendant disingenuously denies regarding the plaintiff as having a disability, even though the plaintiff had given defendant sufficient notice that she is regarded as having a disability.

59.     The defendant claims that they are simply following the law or regulations or policies; however, none of the Covid-19 policies have created any new legal duty upon the defendant, nor given the defendant any new legal authority. There is no such law.

60.     The defendant's Covid-19 Policy openly claims that it is intended to "prevent the spread of Covid-19", described a deadly contagious disease, and then outrageously, acts as if everyone is infected with it and must consequently submit to the same exact medical treatments without any professional examination, diagnosis, supervision, or judicial approval or oversight.

61.     To this day, the defendant has not identified any authority or legal duty it has to impose its non-job related policy.

62.     To this day, the defendant has failed to demonstrate that they met or satisfied any exemptions or exceptions to its *bona fide* legal duties under the ADA to aid and encourage those with disabilities, including the plaintiff.

63.     To this day, the defendant has failed to demonstrate that they had any financial responsibility to either protect anyone, including the plaintiff, from a purportedly deadly contagious disease or that it had any financial responsibility to anyone suffering adverse

1    health consequences from participating in its Covid-19 Policy measures, namely, taking
2    experimental vaccines during an emergency use authorization (EUA) period.

3    64.    The defendant made false claims that its Covid-19 Policy was voluntary and yet
4    imposed pecuniary measures and other adverse employment actions as a direct and
5    proximate cause of the plaintiff's good faith refusal to participate or accept such
6    provisions(i.e. the Covid-19 Policy).

7    65.    The defendant's adverse employment actions included, but were not limited to,
8    segregating and isolating their employees and asking her to work from home, and thus
9    preventing her from doing her normal employment duties; compelling her to submit to
10   various medical interventions such as wearing masks over her face and getting "PCR" tests;
11   requiring her to get vaccinated as a new condition of employment; diminishing her
12   responsibilities by refusing to schedule her, and ultimately terminating her employment.
     Actually, the defendant admitted that non-compliance with the vaccination mandate would
13   result in termination of the plaintiff's employment.

14   66.    Furthermore, the defendant's policy violates 29 CFR §1630.14(c) of the ADA
15   because it involves sharing non-job-related medical classifications (e.g. "vaccination status",
16   vital statistics and "PCR"[2] medical examination history) without any regard to confidentiality.
17   The policy includes no provision to preserve the medical privacy rights of any employee,
18   including the plaintiff's.

19   67.    The plaintiff is not required to request exemptions from the defendant's Covid-19
20   Policy for religious or medical reasons and in fact, is not required to request any
21   accommodations or reasonable modifications regarding such policy because none of its
22   provisions are related to her essential job function. Likewise, the defendant has failed to
23   give conspicuous notice as to the manner in which such policy is related in any way to the
     plaintiff's essential job function.
24
25   68.    Furthermore, the defendant's policy, which itself demonstrates that the defendant
26   certainly regards the plaintiff as having Covid-19, a disability that is covered by the ADA,
     illegally fails to include any provision for those employees with disabilities.
27

28
     _____
     2   Polymerase Chain Reaction

69.     Defendant fails to provide any advice or instruction on how to conduct any individualized assessment[3] for those employees claiming rights under the ADA, and fails to identify any ADA representative of the defendant. In fact, the defendant's Covid-19 Policy completely ignores their legal duties to aid and encourage those with disabilities under the ADA.

70.     Ironically, the defendant's Covid-19 Policy also impairs the plaintiff's ability to perform her essential job functions as the policy itself creates a physical impairment that substantially limits the plaintiff's ability to engage in one or more major life activities, one of which includes "working". This is not the sole impairment the plaintiff is alleging. The fact is that the defendant made a record of the impairment its policy is intended to treat, by documenting plaintiff's "vaccination status" even though she refused to disclose her medical records, and via its communication, attitude and treatment of the plaintiff.

71.     The defendant refused to allow the plaintiff to continue working without first submitting to its discriminatory Covid-19 Policy. The fact that the defendant applied the policy to everyone equally fails to recognize that the plaintiff, after giving notice of being regarded as having a disability and objecting to submit to the defendant's "accommodations", was within a protected class and engaged in a protected activity and therefore, not subject to the same Covid-19 Policy as everyone else who had not invoked their rights under the ADA. This is the same as in the example of the defendant requiring a wheelchair-bound employee to use the stairs or face loss of income, title or employment termination. *Everyone was required to use the stairs and the policy is applied equally to everyone*, is the erroneous conclusion here.

72.     The defendant never provided notice of any kind to the plaintiff, advising the plaintiff as to the manner in which such accommodations in its Covid-19 Policy were related to her essential job function.

---

3    EEOC Technical Manual 2.2 (c)   "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments." The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

73.    In fact, none of the accommodations were related to the plaintiff's essential job function because she was able to continue performing her essential employment duties without participating in the defendant's Covid-19 Policy.

74.    Regarding each incident of the plaintiff's good faith refusal to accept defendant's Covid-19 Policy measures, and the defendant's adverse response, the plaintiff was in a protected class and engaged a protected activity, and not required to participate in the defendant's policy under 29 CFR Part 1630.9(d), unless the defendant established an exemption or exception to its legal duty to comply with the ADA.

75.    The plaintiff did not request any reasonable modification or accommodation to the defendant's Covid-19 Policy; however, the plaintiff was deceived into requesting a "religious exemption" which was not a meaningful accommodation. In fact, it was intended solely to give the appearance of fairness because it was never seriously considered and the defendant never disclosed any qualifying criteria for such "exemption" nor the legal duty from which the plaintiff was being "exempted" as the defendant's policy did not impose any new legal duties upon the plaintiff from which she could have been exempted.

76.    Instead, the defendant failed to conduct any individualized assessment establishing that the plaintiff's good faith refusal to participate in its Covid-19 Policy was a direct threat.

77.    The defendant simply punished the plaintiff for her refusal on the pure speculation that the plaintiff had a disability known as Covid-19, or on the pure speculation that someday she might have such a disease, and on the false premise that the defendant had the legal duty and authority to protect her and everyone else from contracting such a disease (disability).

78.    The defendant proceeded to segregate and isolate the plaintiff, thereby causally resulting in the plaintiff's loss of assignment (job opportunities) and the loss of her usual income, taking into consideration that her income depended highly on sales commissions.

79.    Claiming that the plaintiff had a deadly contagious disease, or that she might someday become infected with such a disease, is not a defense to violating the ADA, specifically, 29 CFR Parts 1630.9(d), 1630.12(b), 1630.13(b) and Parts 1630.14(c) and (d).

80.    The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's Covid-19 Policy would have created any undue financial hardship.

81.    The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's Covid-19 Policy would have fundamentally altered their normal operations. In fact, the defendant's policy itself already did in fact fundamentally alter their normal operations.

82.    The defendant failed to identify or describe any set of facts establishing that the disability its policy was intended to prevent was both transitory and minor.

83.    The defendant failed to establish any set of facts that proved that the Covid-19 disease is transitory because it is said to have created a world-wide pandemic that began at the end of the year 2019 and continues to this day, including the "variations"  (strains) and the so-called "long Covid" and "short Covid", all based upon the claim that these are and have been since the end of 2019, deadly contagious diseases.

84.    The defendant cannot now claim that such disability is "transitory", especially since they are not acting upon any medical diagnosis, court order obtained by the Department of Health, or any individualized assessment establishing that the plaintiff individually is a direct threat.

85.    The defendant cannot rely upon news or public announcements to determine that the plaintiff individually has any type of disability since that would require a *bona fide* medical examination and diagnosis by a physician.

86.    The defendant's Covid-19 Policy was not uniformly or universally applied to the plaintiff once she gave notice that she was a qualified individual with a disability and that she was regarded as having a disability, and once the defendant began making a record of such disability by mis-classifying the plaintiff as having an impairment, the treatment or cure for which was the defendant's Covid-19 Policy.

87.    The defendant mis-classified the plaintiff as having a deadly contagious disease (impairment) by imposing its Covid-19 Policy upon her as a condition of receiving new job

assignments, and made a record of such disability by imposing its policy upon the plaintiff without any diagnosis, but based upon pure speculation, generalization and stereotype.

**88.** It is the defendant's policy that demonstrated that the defendant regarded the plaintiff as disabled because of the plaintiff's unvaccinated status.

**89.** The plaintiff is entitled to the protections established in the ADA under the second and third prongs ("regarded as" "record of").

**90.** The defendant's Covid-19 Policy assumes that unvaccinated employees have a contagious disease that affects their respiratory system (a major bodily function) or else, that because they remain unvaccinated, they have a suppressed or weak immune system that makes them vulnerable to Covid-19 and a threat to other employees.

**91.** The defendant conducts no individualized assessment to determine the existence of the disability or the "dangerousness" of the presence of the unvaccinated employees in the workplace.

**92.** Ironically, it is the defendant's Covid-19 policy itself that creates a physical impairment that substantially limits the plaintiff's ability to engage in one or more major life activities, including working and interacting with others.

**93.** The defendant, by its own policies, attitude toward the plaintiff and means of communication, record-keeping and general treatment of the plaintiff, created a set of facts that satisfy the criteria under the ADA known as the "record of" prong.

**94.** The plaintiff was never required to discuss the nature of such disability and because such disability was not job related and the plaintiff was not requesting reasonable modifications, again, she was therefore not required to discuss the nature of such disability no more than she was required to participate in the defendant's Covid-19 Policy.

**95.** Not only the defendant's so-called Covid-19 Policy is not rational, and not implemented with any legal authority or duty whatsoever–there is no rational basis to act as if every single member of a community (e.g., all employees of the defendant) suddenly have the same exact illness (which constitutes a disability) and that without any individualized examination, everyone would benefit from the same exact medical treatment. It is irrational that non-skilled and unlicensed individuals should impose such interventions upon everyone

at the same time because of some commentary on a website (e.g., CDC, EEOC, etc.) that states that type of policy will prevent a disease, while such websites simultaneously disclaims such commentary as valid legal or medical advice.

96.    The defendant's policy was based purely upon the speculation, generalization and stereotype that everyone was infected with Covid-19 and that the defendant suddenly had the legal duty and authority to protect every employee, in spite of the fact that it had no financial responsibility, either to protect anyone from any deadly contagious disease, or to compensate anyone suffering any adverse health consequences from participating in its Covid-19 Policy or taking experimental vaccines or other treatments.

97.    The plaintiff identified herself as being within a protected group and engaged in a protected activity upon giving the defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability and then refusing the defendant's accommodations based upon her good faith belief.

98.    The plaintiff also alleged that she was qualified for the job and both willing and able to continue performing her employment duties and that the defendant's Covid-19 Policy was not related in any way to plaintiff's essential job functions.

99.    And that the defendant failed to give conspicuous notice as to the manner in which such policies were related to the plaintiff's essential job functions.

100.    Beginning from the moment plaintiff gave such notice to the defendant, the plaintiff suffered adverse employment actions when the defendant continued attempting to impose its Covid-19 Policy upon the plaintiff, ignored and denied her claim of disability and continued reprimanding her, on a daily basis, for refusing its accommodations as alleged in the plaintiff's affidavit, and finally, terminating her employment.

101.    The plaintiff demands a jury trial.

102.    WHEREFORE plaintiff demands injunctive relief, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount she is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable

fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable, and for other relief deemed appropriate by this court.

## COUNT II – COMPLAINT FOR RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

**103.**    The plaintiff sues the defendant for retaliation in violation of the ADA and the ADA-AA.

**104.**    The plaintiff re-alleges the foregoing statements of fact and allegations from her complaint for discrimination in Count I along with her affidavit, and further alleges the following.

### ALLEGATIONS

**105.**    Upon giving defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability, the defendant began retaliating against the plaintiff by imposing punitive measures and adverse employment actions, upon her for her good faith refusal to participate in the defendant's offered accommodations.

**106.**    Title 29 of Part 1630.12(b) prohibits employers from retaliating against employees, namely the plaintiff for exercising and enjoying her rights under the ADA,  specifically, "[i]t is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part."

**107.**    The defendant retaliated by seeking to impose their Covid-19 Policy upon the plaintiff in violation of its *bona fide* legal duty of care under the ADA.

**108.**    The plaintiff exercised her right to refuse the defendant's Covid-19 Policy measures based upon a good faith belief that the policy did not apply to her because of the foregoing alleged failure of the defendant to establish any exemption or exception to its legal duty to comply with the ADA.

**109.**   Exercising this right was a protected activity and the defendant's Covid-19 Policy was not equally or universally applied to the plaintiff because she had given notice of a disability and was therefore in a protected class and engaged in a protected activity.

**110.**   The plaintiff exercised her right to refuse the defendant's policy measures based upon a good faith belief that the policy did not apply to her because the policy was not related in any way to her essential job function.

**111.**   The plaintiff exercised her right to refuse the defendant's policy measures based upon a good faith belief that the policy did not apply to her because the defendant failed to give plaintiff conspicuous notice as the manner in which its policy was related in any way to her essential job function.

**112.**   The defendant imposed pecuniary measures, adverse employment actions, upon plaintiff which included the loss or threatened loss of pay, isolation, segregation, diminished employment responsibilities, and the termination of her employment.

**113.**   Each time the plaintiff exercise her right to refuse the defendant's accommodations, she did so in good faith, and the defendant subsequently and either immediately or in a manner that was causally related to the exercise of such right, impose adverse employment actions upon the plaintiff, including but not limited to segregating and isolating their employees and asking them to work from home, and thus preventing her from doing her normal employment duties; compelling her to submit to various medical interventions such as wearing masks over her face and getting "PCR" tests; requiring her to get vaccinated as a new condition of employment; diminishing her responsibilities by refusing to schedule her, and ultimately terminating her employment, but not for any necessary reasons other than as an adverse employment action intended to punish her for exercising her rights.

**114.**   The defendant imposed adverse employment actions upon the plaintiff which included, isolation and segregation, or sending her home so that he could not perform her essential job functions, and was excluded from new job assignments and thereby suffered loss of income.

**115.**    The defendant imposed these measures in a direct causally related manner upon the plaintiff each time she exercise her rights to refuse to participate in the defendant's Covid-19 Policy.

**116.**    The adverse actions against plaintiff were either taken immediately, such as "If you don't wear a mask, you can't come onto the property and begin working", and reducing her hours in order to reduce her compensation or later down the line, such as terminating the plaintiff's employment.

**117.**    The defendant's Covid-19 Policy, as alleged herein and described in more detail in the plaintiff's affidavit, describes a materially adverse change in the terms and conditions of employment, comparing the way it used to be in 2018 to the way it has become by the defendant's implementation of it's Covid-19 Policy.

**118.**    These changes did not simply create an inconvenience for the plaintiff, they substantially altered the manner in which she was able to do her job and interact with co-workers and substantially impaired her ability to perform her essential employment duties, and was the direct and proximate cause behind the plaintiff's loss of income and income opportunities, which majorly depended on sales commissions.

**119.**    As a direct and proximate cause of plaintiff exercising her rights under the ADA to refuse in good faith the defendant's Covid-19 Policy measures, the defendant prevented the plaintiff from working on the premises, isolated her from other employees, caused her the loss of income by denying her new job assignments, thereby diminishing her employment responsibilities and materially removing or reducing her benefits.

**120.**    Each of the foregoing adverse employment actions resulted from every effort the defendant undertook to coerce the plaintiff into submitting to their Covid-19 Policy accommodations, and each adverse employment action described herein was causally related to plaintiff's good faith refusal to comply with the defendant's policy. Each adverse employment action took place within moments of, and in direct response to, plaintiff's expression of her good faith refusal to comply with the defendant's policy.

**121.**    While the defendant ignorantly and illegally ignored their actual legal duties, the defendant made a record of such disability by mis-classifying the plaintiff as having an

impairment that substantially limited one or more major life activities, including but not limited to thinking, working, eating, breathing, walking, communicating and others expressed in the ADA itself, but not limited thereto.

122.  The defendant made such a record by adding the plaintiff's name to a list of employees who were "unvaccinated" and then keeping an actual record of the same, and by adopting its written Covid-19 Policy and by their attitude toward the plaintiff and the manner in which the defendant interacted and communicated with the plaintiff.

123.  It is not relevant whether or not the defendant denies regarding the plaintiff as having a disability, the fact is that she was regarded as having a disability, at least by the government and as demonstrated by defendant's policies, irrespective of the defendant's bad faith and contradictory denial of the same.

124.  These facts demonstrate the defendant's adverse employment actions derived from their Covid-19 Policy and their failure to comply with the ADA in fact constituted a materially adverse change in the terms and conditions of employment.

125.  Before the policy, the plaintiff and other employees were protected by disability law, medical privacy rights and the right to informed consent (which as explained previously are rooted in and protected by the ADA), the right to be heard, and the right to have a complaint for harassment heard impartially by the defendant, and after the defendant's adoption of its Covid-19 Policy, all of those rights were ignored and violated in a direct and causal response to the plaintiff's exercise of her right to refuse.

126.  These changes were not just "disruptive" or inconvenient; they were not merely limited to include a change in plaintiff's employment duties, such as refusing to schedule her to work at the retail location.

127.  These changes included (actual or likely) termination of employment, isolation, demotion, decrease in wages and loss of benefits and were each causally related to each time the plaintiff chose to exercise and enjoy her rights under the ADA.

128.  Ultimately, the defendant did terminate the plaintiff's employment as a direct and proximate cause of her refusal to participate in the defendant's Covid-19 Policy.

Case 1:22-cv-03784-MLB   Document 1   Filed 09/19/22   Page 22 of 23

**129.** The plaintiff was engaged in the protected activity of refusing in good faith to participate in its Covid-19 Policy. The defendant was aware of plaintiff refusal from the very moment she expressed that she was regarded as having a disability and began refusing to participate in their policy.

**130.** Each time the defendant approached the plaintiff with a demand or request to submit to the terms of their Covid-19 Policy, the defendant informed the plaintiff that she would be penalized, such as the plaintiff has previously alleged.

**131.** Each time the plaintiff exercised her right to refuse, the defendant undertook adverse employment actions against the plaintiff as previously alleged, and in each instance, such measures were causally related to the incident of refusing the policy and suffering penalties or pecuniary measures imposed by the defendant and each of these are detailed in the foregoing allegations.

**132.** The plaintiff demands a jury trial.

**133.** WHEREFORE the plaintiff demands injunctive relief, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount he is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable, and for other relief deemed appropriate by this court.

DATED this _31_ day of August, 2022.

By: *Ealaila Conard*

Ealaila Conard,
Plaintiff in *propria persona*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Written communication and EEOC right to sue

Ealaila Conard
Plaintiff in Propria Persona
3162 Blackstone Run
Lawrenceville, Georgia  30043
770-545-7013
eahabibul@gmail.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 19 2022

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

EALAILA CONARD
      PLAINTIFF,

v.

CHANEL, INC.
      DEFENDANT.

CASE NO. :22-CV-3784

_____/

## AFFIDAVIT IN SUPPORT OF COMPLAINT

STATE OF GEORGIA      )
                          )      ss
COUNTY OF GWINNETT   )

1.    I, Ealaila Conard, do hereby solemnly affirm that the statements herein are true and correct in substance and in fact and that I have personal knowledge of each.

2.    I have been harassed at my job, and was discriminated and retaliated against based on disability for refusing to accept my employer's accommodations for regarding me as disabled with a communicable disease and significantly impaired in both my immune and respiratory systems.

3.    I am absent and without evidence of any information from any health officer identifying myself as having any communicable disease or having been exposed to any toxic substance.

4.    I am absent and without knowledge of any evidence or court order, obtained by any petition of the Department of Health or a public health officer, that was based upon any physician's affidavit in which I have been identified as having any communicable disease or

having been exposed to any toxic substance.

5.    I am absent and without knowledge of any evidence of any court order determining that I am or have been a direct threat to anyone.

6.    I am absent and without knowledge of any evidence of any individualized assessment required by law that has determined that I am or have been a direct threat to anyone.

7.    I am absent and without knowledge of any evidence of any court order imposing any terms of isolation or quarantine or other measures upon myself.

8.    I have previously and timely disclosed and duly noticed the defendant of a prior existing disability, and that the assertions made in the complaint are true and correct to the best of my knowledge, information and belief.

9.    I joined Chanel, Inc. on December 2018 as a fashion advisor at its retail location within Neiman Marcus in Atlanta, Georgia.

10.    From mid March of 2020 to mid June of 2020, I worked from home. I went back to work around June 12th, 2020 and I was required to wear a mask while working.

11.    In late December 2020, a team member "tested positive for COVID 19". I was told I could not work for a few days and that I would need to provide a "negative PCR test" to return to work. The biggest portion of my earnings is based on commission, and I felt compelled to take a "PCR test" so I could get back to work ASAP. They were regarding me as sick and infectious, they forced me to stay home even though I did not have any symptoms. I missed a big day of sales at work so I lost money and missed out on opportunities to earn money.

12.    On September 13, 2021, during a Teams meeting, Store Manager Bradley announced that Chanel is mandating "COVID 19 vaccine" as a requirement for continuation of employment for everyone. I also received an e-mail from Chanel Corporate mandating "COVID 19 vaccine". (Exhibit A-1)

13.    On September 17, 2021, Chanel told employees that it would accept medical or religious exemptions requests.

14.    On September 22, 2021 I emailed a religious exemption to the "COVID policy" at Chanel's new vaccinerequirement@chanel.com address from my personal email.

**15.** On October 4, 2021, a representative from Chanel's HR department called to discuss my exemption. I asked her to email me her questions. She never did.

**16.** On October 6, 2021, Bradley, the store manager, scheduled a Teams meeting with me, Michelle Rhee from HR and our assistant manager Hae. In the meeting, Bradley and Michelle said that my religious exemption was denied because my position required regular in-person presence. They did not have any alternative solution and they said if I did not get the experimental "COVID vaccine" I would be fired. I requested Michelle to send me a written email with this information. (Exhibit A-2)

**17.** November 2, 2021 was my last day of physically being at work. I said goodbye to some of my clients and left my work phone at work. November 8, 2021 was my official termination date. On November 10, 2021, I received an email from Donna Hart, from Chanel's legal department. She sent me a separation agreement and release offer of $5000 if I waived my rights to file a claim against Chanel in the future. (Exhibit A-3)

**18.** I considered the "COVID 19" policy as a threat to my personal heath. I'm capable of making my own health decisions and the policy denied me my right to choose how I handle my health. During my employment I had never called out sick. I felt harassed by the emails from the new "vaccine department" I regularly and verbally communicated my frustration with my store manager.

**19.** I filed an EEOC charge of discrimination and retaliation based upon disability on February 16, 2022. I claimed that my employer regarded me as disabled because it assumed I was an infectious threat without relying on any individualized assessment. My employer fired me because I was "unvaccinated" against a disease it just assumed I had. I claimed I was being forced to reveal non-job-related medical information and to take non-job-related medical treatments. I claimed I was only offered a religious exemption to the medical treatment policy, which was denied. I was never informed that I could opt out of the policy based upon my rights protected under the ADA. (Exhibit A-4)

**20.**    On June 7, 2022, I received a right to sue letter from the EEOC for my case #: 410-2022-01070.  (Exhibit A-5)

**21.**    Each of the exhibits referenced herein and in the complaint and alleged in the complaint are true and correct copies of the originals.

By: Ealaila : Conard

Ealaila Conard, Affiant

STATE OF GEORGIA                    )
                Jackson Co        )Ss
COUNTY OF ~~GWINNETT~~           )

Subscribed and Sworn to before me a notary public this 2 day of August, 2022.

Signature of Notary                                            [ls]

# EXHIBIT A

written communications

Exhibit A-1



**New Vaccine Policy and Additional COVID Updates**

**CHANEL Announcements**    Yesterday
...

⊖  PERMISSIONS - Do Not Forward

📄  Proof of Vaccination Status Workday Instruct...
PDF - 512 KB

Below, you will find important details on the health and safety updates announced earlier today.

**Updated CHANEL U.S. Vaccine and Business Travel Policy:**

CHANEL, Inc. is mandating that all employees in its U.S.-based organization be fully vaccinated as of November 8, 2021. You are currently considered "fully vaccinated" according to the CDC two weeks after your second dose in a 2-dose series (such as the Pfizer or Moderna), or two weeks after a single-dose vaccine (such as Johnson & Johnson's Janssen vaccine). The last day to receive all necessary vaccine doses to meet the above requirements will be October 25, 2021. As vaccine guidance evolves, our policies may as well. Please visit the CONNECT CHANEL Covid Hub to read the policy.

All vendors, temporary workers and consultants working with CHANEL must also be fully vaccinated as of November 8, 2021.

with CHANEL must also be fully vaccinated as of November 8, 2021.

Additionally, **effective immediately**, employees must be fully vaccinated to conduct CHANEL business travel. Daily commuting to your primary work locations (e.g., 9 West, 15 East, Piscataway, CHANEL retail locations) via public transportation is exempt from this travel guideline (e.g., city/trolley buses, trams or light rail, passenger trains, rapid transit such as subways, ferries).

Employees who cannot be vaccinated for medical reasons or a sincerely held religious belief may submit a written request for an accommodation. The instructions for this process will be available on the CONNECT CHANEL Covid Hub by Friday, September 17, 2021. The Company will evaluate your request and will engage in an interactive process and cooperative dialogue with you with respect to a possible accommodation in accordance with applicable law.

**NEW Mandatory Vaccine Certification in Workday for All Employees:**

All employees must certify vaccination status as soon as possible, **whether you are currently fully vaccinated or not, in a new Workday process.** While many of you have previously certified, please be aware that this is a different process. Follow the attached instructions, which will also be available on the CONNECT CHANEL Covid Hub, to verify and provide additional details about your vaccination status. **In this new process, you will be able to update your vaccination status in Workday as it changes.** Again, this new certification is mandatory for all employees.

**Reminder on Additional Health and Safety Measures:**

All other current workplace health and safety policies



reasons or a sincerely held religious belief may submit a written request for an accommodation. The instructions for this process will be available on the CONNECT CHANEL Covid Hub by Friday, September 17, 2021. The Company will evaluate your request and will engage in an interactive process and cooperative dialogue with you with respect to a possible accommodation in accordance with applicable law.

**NEW Mandatory Vaccine Certification in Workday for All Employees:**

All employees must certify vaccination status as soon as possible, whether you are **currently fully vaccinated or not**, in a new Workday process. While many of you have previously certified, please be aware that this is a different process. Follow the attached instructions, which will also be available on the CONNECT CHANEL Covid Hub, to verify and provide additional details about your vaccination status. **In this new process, you will be able to update your vaccination status in Workday as it changes.** Again, this new certification is mandatory for all employees.

**Reminder on Additional Health and Safety Measures:**

All other current workplace health and safety policies, including mask requirements, eating and drinking, social distancing, capacity and Event protocols remain in place. They can be found on the CONNECT CHANEL Covid Hub.

Please reach out to your Manager, MC Leader or HR Business Partner with any other questions. We appreciate your continued cooperation and dedication to a safe workplace environment.

↩ ⌄  Reply    ↩ ⌄  Reply    ↩  Reply

Exhibit A-2

**From:** VACCINE REQUIREMENT <vaccinerequirement@chanel.com>
**Sent:** Friday, October 8, 2021 6:54:22 PM
**To:** Ealaila CONARD <ea_conard@chanel.com>
**Cc:** Michelle RHEE <michelle.rhee@chanel.com>
**Subject:** Mandatory Vaccine Policy Accommodation - Outcome

Dear Ealaila

Thank you for your request for an accommodation from the Chanel Mandatory Vaccine Policy and supporting information. In furtherance to this week's meeting, without waiving the right to question whether you have a sincerely held religious belief that would permit an exemption from the Mandatory Vaccine Policy, given that the essential functions of your position requires regular in-person presence, and in light of Chanel's commitment to the health and safety of its workforce, we are unable to accommodate your request to be unvaccinated.

As such, as a condition of employment, we expect you to be fully vaccinated as defined by the CDC and per the Mandatory Vaccine Policy by November 8, 2021. Please confirm your decision with your manager & HR Partner at your earliest convenience.

If you intend to be vaccinated, please certify your vaccination status in Workday per the Certification process once you receive your first dose of a two-dose vaccination or only dose of one-dose vaccination. Directions can be found on the Covid Hub.

Failure to comply with the Mandatory Vaccine Policy will result in termination of employment. Should you have any questions, please reach out to your manager and HR Partner.

Exhibit A-3

## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

THIS CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE (the "Agreement") is executed by and between **Chanel, Inc.**, (the "Company" or "Employer") and Ealaila Conard ("Employee"). Together, the Company and Employee may be referred to hereinafter as the "Parties".

In consideration of the payments, covenants and releases described below, and in consideration of other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, the Company and Employee agree as follows:

**1.      Separation from Employment.** Employee's employment with the Company ended on November 8, 2021 (the "Separation Date"). On Employee's Separation Date, Employee acknowledges that Employee received final pay, including any accrued and unused vacation, apart from whether Employee signs this Agreement. Employee acknowledges that, upon payment of those amounts, Employee will have been paid all wages, benefits, and other forms of compensation to which Employee is entitled by virtue of employment with the Company through the date of execution of this Agreement. Employee further acknowledges Employee shall not be entitled to receive, and the Company shall not be obligated to pay or provide to Employee, any other or additional wages, compensation, or benefits not expressly provided for in this Agreement. All Employer benefits and other privileges of employment with the Employer will end immediately after the Separation Date, except as expressly provided below.

**2.      Separation Obligations of the Company.** In consideration of Employee's promises contained in this Agreement, if Employee signs this Agreement, the Company agrees as follows:

(a)      **Special Payment.** The Company will pay to Employee a Special Payment totaling $5,000.00 less legally required withholding for taxes and other similar items (the "Special Payment"). The Special Payment shall be paid to Employee as a lump sum within sixty (60) days of Employee's Separation Date only following receipt by the Company of an original fully executed Agreement. The Employer will issue an IRS Form W-2 to Employee reflecting this payment.

(b)      **Unemployment:** To the extent permitted by applicable law, the Employer agrees not to contest any claim Employee files for unemployment compensation benefits, provided however that the Employer will respond truthfully to any request from the applicable state agency regarding your claim. Employee acknowledges that whether Employee receives unemployment compensation benefits is decided by the applicable state agency and not by the Employer.

Employee agrees that each of the benefits above are items of value being provided in exchange for your promises in this Agreement, and that Employee is not otherwise entitled to these benefits. Further, Employee agrees that the benefits exceed and are in lieu of any benefits Employee might otherwise be eligible for, including, but not limited to, under any policy, program or agreement with the Employer.

**3.      No Further Compensation.** Employee will not receive, nor be entitled to receive, any other compensation, pay, bonuses, long-term incentive grants or any other benefits from the

Company, nor be entitled to participate in any employee pension benefit plans, employee welfare benefit plans, retiree welfare benefit plans, insurance programs, or any other compensatory or benefit program provided by the Company, except as expressly provided herein and except for Employee's vested rights, if any, in the Company's welfare, retirement and other plans and programs in which Employee was participating as of the Separation Date, including all equity plans and programs of the Company with respect to the equity awards made to Employee prior to the Separation Date. Employee's Medical, Dental, Vision will terminate on the last day of the month in which the Separation Date occurs

4.  **General Release of Claims.**

  **a.** **Release.** In consideration of the payments made to Employee by the Company and the promises contained in this Agreement, Employee on behalf of him/herself and his/her agents and successors in interest, hereby UNCONDITIONALLY RELEASES, RELEASES, INDEMNIFIES, HOLDS HARMLESS, and FOREVER DISCHARGES the Company, its successors, subsidiaries, parent companies assigns, joint ventures, and affiliated companies and their respective agents, legal representatives, shareholders, attorneys, employees, members, managers, officers and directors (collectively, the "Releasees") from any and all claims, demands, actions or causes of action on account of, arising out of or in any way connected with (a) Employee's employment with the Company; (b) Employee's separation with the Company; (c) any and all injuries, losses or damages to Employee, including any claim for attorneys' fees; (d) any and all claims relating to the conduct of any employee, contractor, officer, director or agent of the Company; and (e) any and all matters, transactions or things occurring prior to the date hereof, including any and all possible claims, known or unknown, which could have been asserted against the Company or the Company's employees, contractors, agents, officers or directors.. This release includes, but is not limited to, claims arising under federal, state or local laws prohibiting employment discrimination, retaliation, or harassment; claims arising under severance plans and contracts; and claims growing out of any legal restrictions on the Company's rights to terminate its employees or to take any other employment action, whether statutory, contractual or arising under common law or case law. Employee specifically acknowledges and agrees that Employee is releasing any and all rights under federal, state and local employment laws including without limitation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans With Disabilities Act, the Family and Medical Leave Act, claims under the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), the National Labor Relations Act, the Worker Adjustment and Retraining Act of 1988, 29 U.S.C. § 2101, *et seq.* and its State counterparts (collectively, "WARN"), the Genetic Information Nondiscrimination Act, the anti-retaliation provisions of the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Equal Pay Act, the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the Employee Polygraph Protection    Act   the   Fair   Credit   Reporting Act, New York Executive Law § 290 et seq.; the New York City Charter and Administrative Co de, the New York Equal Pay Law; the New York Whistleblower Law; the New York Labor Law; Article 6 of the New York Labor Law; Article 19 of New York Labor Law; any and all state law;New Jersey Law Against Discrimination, the New Jersey Family Leave Act, the New Jersey Conscientious Employee Protection Act, New Jersey Wage and Hour Laws, the New Jersey Civil Rights Act, the New Jersey Equal Pay Act, the Millville Dallas Airmotive Plant Job Loss Notification Act ("NJ WARN")to the extent releasable under the law; the Fair Labor

Standards Act, 29 U.S.C. Section 201 *et seq.* (wage and hour); the Consolidated Omnibus Budget Reconciliation Act of 1985, 42 U.S.C. Section 1395(c) (insurance matters); the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. §1514A, also known as the Sarbanes-Oxley Act; and all applicable California Industrial Welfare Commission Order, and/or any other federal, state or local law dealing with discrimination in employment on the basis of age, sex, sexual harassment, race, national origin, religion, age, ancestry, physical disability, medical, veteran status, genetic information, marital status, sexual orientation, wage and hour, labor, contract or tort, state employment and labor laws, any claims growing out of any legal restrictions on an employer's right to separate its employees and any claims for salary and benefits, personal injury, compensatory or punitive damages, the California Labor Code that may be lawfully released and any and all other local, state, and federal law claims arising under statute or common law.  It is agreed that this is a general release and it is to be broadly construed as a release of all claims, except those that cannot be released by law.

      **b.**    **Other Representations.**  This Agreement is intended to and does settle and resolve all claims of any nature that Employee might have against the Company arising out of their employment relationship or the termination of employment or relating to any other matter, except those that cannot be released by law.  Employee warrants that Employee has not filed any notices, claims, complaints, charges, or lawsuits of any kind whatsoever against the Company or any of the Releasees as of the date of execution of this Agreement.  This Agreement shall not in any way be construed as an admission by the Company or any of the Releasees of wrongdoing or liability or that Employee has any rights against the Company or any of the Releasees.  Employee represents and agrees that Employee has not transferred or assigned, to any person or entity, any claim that Employee is releasing in this Paragraph 4.  Employee acknowledges and agrees that Company expressly reserves and does not release claims that Company has or may have against Employee.

      **c.**    **Claims Not Released.** Employee is not waiving any rights Employee may have to: (a) her own vested accrued employee benefits under the Company's health, welfare, or retirement benefit plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes (with the exception of claims under California Labor Code §§ 132a and 4552, which shall be released); (c) pursue claims which by law cannot be waived by signing this Agreement, including any Claims arising after the date on which Employee executes this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement.

      **d.**    **Collective/Class Action Waiver**. If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company or any other Released Party identified in this Agreement is a party.

      **e.**    **Governmental Agencies**. Nothing in this Agreement prohibits, or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee will not be entitled to recover any individual monetary relief or other individual

remedies. Moreover, nothing in this Separation Agreement prohibits or prevents Employee from testifying in any administrative, legislative, or judicial proceeding concerning alleged criminal conduct or sexual harassment on the part of Employer or any agents or employees of Employer, when Employee has been required or requested to attend the proceeding pursuant to a court order, subpoena, or written request from an administrative agency or the Legislature.

5.    **Knowing and Voluntary Waiver.** Employee acknowledges that this waiver is knowingly and voluntarily made and specifically agrees that: (i) this waiver is written in a manner that Employee understands; (ii) Employee does not waive any rights or claims that may arise after the date Employee signs this Agreement; (iii) Employee is waiving these rights or claims in exchange for substantial consideration in excess of anything of value to which Employee is otherwise entitled to receive; and (iv) Employee is hereby advised in this writing, to consult with an attorney, of their own choice at his own expense, before signing this Agreement and shall have Ten (10) days to consider this Agreement and consult with an attorney.

6.    **Acknowledgements and Affirmations.** Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against the Company.

Employee affirms that Employee has been paid and/or has received all compensation, wages for all hours worked, vacation, sick pay, other leave, bonuses, commissions, and all other compensation of any kind and/or benefits which are due and payable as of the date Employee signs this Agreement.

Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee affirms that Employee has no known workplace injuries or occupational diseases. Employee affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by the Company or its officers, including any allegations of corporate fraud.

7.    **Right to Consult an Attorney; Consideration Period.** THE COMPANY HEREBY ADVISES EMPLOYEE AND EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS THE RIGHT TO CONSULT WITH AN ATTORNEY OF EMPLOYEE'S OWN CHOOSING PRIOR TO EXECUTING THIS AGREEMENT AND EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE COMPANY HAS ADVISED, AND HEREBY DOES ADVISE, EMPLOYEE OF AN OPPORTUNITY TO CONSULT AN ATTORNEY OR OTHER ADVISOR AND HAS NOT IN ANY WAY DISCOURAGED EMPLOYEE FROM DOING SO. EMPLOYEE HAS TEN (10) DAYS TO CONSIDER THIS AGREEMENT AND CONSULT WITH AN ATTOREY. IF YOU DECIDE TO SIGN THE AGREEMENT PRIOR TO THE END OF THIS TIME PERIOD, YOU ACKNOWLEDGE THAT YOU ARE VOLUNTARILY SHORTENING THE TIME TO CONSIDER THE AGREEMENT AND HAVE NOT BEEN INDUCED BY THE COMPANY THROUGH FRAUD, MISREPRESENTATION OR A THREAT TO WITHDRAW OR ALTER THE OFFER PRIOR TO THE EXPIRATION OF THE CONSIDERATION PERIOD, OR BY PROVIDING DIFFERENT TERMS TO EMPLOYEES WHO SIGN SUCH AN AGREEMENT PRIOR TO EXPIRATION.

8.    **Cooperation After Separation**. Employee acknowledges and agrees that, on an as-needed basis, Employee will cooperate and assist the Company, as well as the other Releasees, in connection with any and all matters that Employee has knowledge of, handled, were responsible for and/or otherwise worked on while employed by the Company. It is acknowledged that such cooperation and assistance may include, but shall not be limited to, making yourself available to the Company's and the other Releasees' attorneys and/or providing the Company and the other Releasees with complete and accurate information regarding the particular matters.

9.    **Non-Disparagement**. Except as required by law, Employee further agrees that Employee has not and will not communicate with the media or make any public statement, whether orally or in writing, electronically (including, but not limited to, via e-mail) or otherwise, regarding the Company or any of the other Releasees, including, but not limited to, via press interviews or press statements, and/or statements to any newspaper, magazine, television or radio station, website or blog, or posting to any website or blog. Nothing in this provision prevents Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that Employee has reason to be is unlawful.

10.    **Return of Materials.** In further consideration of the promises and payments made by the Company hereunder, Employee agrees to return immediately, and before receiving payment under this Agreement, all items in his possession or under his control which are owned by the Company, including, but not limited to, (a) any equipment or personal property (including, but not limited to, cell phones, laptops, computers, or other personal computing devices), (b) any company-provided vehicle, (c) all written business information which is of a confidential or proprietary nature (i.e. manuals, reference guides, etc.), and (d) Employee's corporate credit card and fuel card, if applicable. To the extent that Employee has electronic files or information in his possession or under his control that belong to the Company or contain confidential or proprietary information relating to the Company or its customers (specifically including but not limited to electronic files or information stored on personal computers, mobile devices, electronic media, or in cloud storage), Employee represents that Employee has (d) provided the Company with an electronic copy of all of such files or information (in an electronic format that readily accessible by the Company), and (e) after doing so, deleted all such files and information, including all copies and derivatives thereof, from all non-Company-owned computers, mobile devices, electronic media, cloud storage, and other media, devices, and equipment, such that such files and information are permanently deleted and irretrievable. Employee agrees that they will reimburse the Company for all of its costs, including reasonable attorneys' fees, of recovering the above materials and otherwise enforcing compliance with this provision if Employee has not returned the materials to the Company or has not taken the required steps with respect to electronic information or files.

11.    **Confidentiality of Agreement.** Employee agrees not to disclose the underlying facts that led up to this Agreement or the terms, amount, or existence of this Agreement or the benefits Employee is receiving under this Agreement to anyone other than a member of his immediate family, attorney, or other professional advisor and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Such a person's violation of this confidentiality requirement will be treated as a violation of this Agreement by Employee. This Paragraph 14 does not prohibit Employee from disclosing the terms, amount, or existence of this Agreement to the extent necessary legally to enforce this Agreement. Anything herein to the contrary

notwithstanding, Employee shall not be restricted from disclosing information that is required to be disclosed by law, court order, other valid and appropriate legal process, or a valid request by a Government Agency.

   **12.    Non-Solicitation / Non-Interference/Non-Competition.** You acknowledge and agree that during your employment and for a period of twelve (12) months from  the Separation Date you will neither alone, nor in concert with others:

   a.    Solicit, induce, influence, encourage, or attempt to solicit, induce, influence or encourage, either directly or indirectly, any person employed by the Company to terminate his or her employment relationship with the Company or otherwise interfere with any such person's employment by or association with the Company.
   b.    Take any other action detrimental to the relationship of the Company with its employees, customers, vendors or suppliers.
   c.    Chanel hereby waives any noncompetition obligation you may have with Chanel.

   The parties agree that, in the event this Paragraph is deemed too restrictive in a court proceeding, the court may reduce such restrictions to the extent it deems reasonable under the circumstances; provided that your obligations under this Paragraph are in addition to, and not in lieu of, any restrictions pertaining to the foregoing under applicable law or any other obligations you have under this Agreement.

**13.    Non-Disclosure of Confidential Information.** Employee agrees that  Employee will not directly or indirectly, use, make available, sell, disclose or otherwise communicate to any person any confidential or proprietary information regarding the Company which shall include, but is not limited to, all business information, proprietary information and trade secrets of any nature which was maintained, generated, received, acquired or accessed by Employee during his term of employment and which is confidential in nature or is not generally known by the public or by third parties ("Confidential Information").  Such Confidential Information also includes, without any limitations, the following: financial information, budgets, plans, data, trade secrets, computer software, technical information, research and development, product information, service information, processes, customer lists, consumer information, customer data, pricing information, reimbursement information and rates, fees and charges, sales information, marketing information, bid information, job or project information, contracts, purchasing information, inventory information, data processing, processes, formulas, designs, drafts, drawings, systems, specifications, means, methods, techniques, protocols, compilations, intellectual property, inventions and improvements, operational methods, business plans and strategies, market information, supplier information, vendor information, personnel matters and records, and any and all other matters, information and documentation that is sensitive, business, proprietary or confidential in nature. Confidential Information also includes all items that would be designated as trade secrets under any applicable federal or state law. Under the Defend Trade Secrets Act, however, Employee will not face civil or criminal liability for disclosing a trade secret: (1) to a government official or an attorney, if the disclosure is made in confidence and for the sole purpose of reporting or investigating a suspected violation of law; or (2) in a document filed in a lawsuit or other court proceeding, provided the document is filed under seal.  In addition, if Employee files a lawsuit against the Employer for retaliating against Employee for having reported a suspected

violation of law, Employee may disclose a trade secret to Employee's attorney and use the trade secret information in court, provided the document containing the trade secret is filed under seal and Employee does not otherwise disclose the trade secret except pursuant to court order.

**14.    Work Made For Hire and Assignment**: During the course of your employment with the Company, your duties may have included preparation of various materials, designs, artwork, products, formulas, prototypes, works protected by intellectual property, and other creative works (hereinafter collectively referred to as "Works"). It is agreed that all such Works, whether written or otherwise, created by you, shall be deemed to be "works made for hire" as defined and used in the United States Copyright Act of 1976, as amended. You understand that since the Works are "works made for hire," the Company will be deemed the "author" thereof for purposes of copyright and will solely retain and exclusively own all rights in such Works, including, but not limited to, the right of copyright. Further, you hereby irrevocably assign to the Company or its designee any and all rights, title or interests worldwide, including, but not limited to the copyright and all renewals thereto, any moral rights and any and all causes of action that you may have in and to any and all works (including, but not limited to the Works, as defined above), inventions, innovations, discoveries and/or improvements that are authored, conceived of or made by you, in part or in whole, during your employment with the Company. You further agree to cooperate in the event Chanel seeks that you execute any and all applications, assignments or other instruments that the Company shall deem necessary to apply for and obtain Letters Patent or Copyrights of the United States or any foreign country or to otherwise protect and secure the Company's interest and ownership rights in and to the works (including, but not limited to the Works, as defined above), inventions, innovations, discoveries and/or improvements and to otherwise cooperate, at the Company's expense, in any proceeding to enforce the Company's rights in connection therewith. Your obligations herein shall continue in perpetuity and shall be binding upon your assigns, executors, administrators and other legal representatives. Should you fail to take such further steps or execute such further documents promptly upon request, the Company may, in your name and on your behalf, take such steps or execute such documents and make appropriate disposition thereof, and you hereby irrevocably appoint the Company as your lawful attorney-in-fact with full power to do so. This power of attorney is coupled with an interest and is irrevocable. Without limiting the generality of the foregoing, your obligations herein survives termination of your employment with the Company. Notwithstanding anything in this Agreement to the contrary, the assignment in this paragraph shall not apply to any invention you developed entirely on your own time without using the Company's equipment, supplies, facilities, or Confidential Information, except for those inventions that either: (i) relate at the time of conception or reduction to practice of the invention to the Company's or its affiliates' business, or actual or demonstrably anticipated research or development of the Company or its affiliates; or (ii) result from any work performed by you for the Company or its affiliates.

**15.    Breach of Agreement.** Either party may institute an action specifically to enforce any term(s) of this Agreement and/or seek any damages for breach. By signing this Agreement, Employee acknowledges that violations of any of the provisions of this Agreement are material and that any violations may result in a forfeiture, at Chanel's sole discretion, of Employee's benefits and payments under this Agreement, but do not relieve Employee of the continuing obligations under this Agreement. In addition, in the event of a breach of Paragraph 9 (Non-Disparagement), Paragraph 11 (Confidentiality), or Paragraph 12 (Non-Solicitation / Non-

Interference), the Company's obligation to make any payment to you under Paragraph 2 shall immediately cease, and you agree, to the fullest extent permitted by law, to forfeit 50% of the after-tax amount of the payment made to you under Paragraph 2 of this Agreement upon demand by the Company, it being recognized that actual damages for such a material breach would be impractical and extremely difficult to remedy. The prevailing party in any action by either party concerning this Agreement shall, to the fullest extent permitted by law, be entitled to its/her reasonable attorneys' fees and costs and be entitled to seek any other damages and relief provided under law or in equity. Employee agrees that the Company's remedies at law for any breach by Employee of these covenants will be inadequate and that the Company will also have the right to obtain immediate injunctive relief, without a bond, so as to prevent any continued breach of any of these covenants, in addition to any other available legal remedies. It is understood that any remedy available at law or in equity will be available to the Company should the covenants be breached.

16.    **Pre-Existing Agreements**.   The Parties acknowledge and agree that the terms and conditions set forth in the Arbitration Agreement and Offer letters signed by you (the "Employment Agreements") shall in no way be altered, modified, enhanced, diminished or amended by this Agreement, and that the Employment Agreements stand alone, operate individually and shall be enforced separately without reference to or effect by the Agreement.

17.    **Internal Revenue Code Section 409A**. The parties hereto have a made a good faith effort to comply with current guidance under Section 409A. The intent of the parties hereto is that payments and benefits under this Agreement be exempt from Section 409A and, accordingly, to the maximum extent permitted, this Agreement will be interpreted to be in compliance therewith, including, without limitation, that references to "termination of employment" and like terms, with respect to payments and benefits that are provided under a "nonqualified deferred compensation plan" (as defined in Section 409A) that is not exempt from Section 409A, will be interpreted to mean "separation from service" (as defined in Section 409A). Notwithstanding the foregoing, Chanel makes no representation to Employee about the effect of Section 409A on the Initials provisions of this Agreement and Chanel will have no liability to Employee in the event that Employee becomes subject to taxation under Section 409A (other than any tax reporting and/or withholding obligations that Chanel may have under applicable law. Employee further understands and agrees that the Company is neither providing tax nor legal advice, nor making any representations regarding tax obligations or consequences, if any, related to the payments and benefits to be provided to you under this Agreement.

18.    **Entire Agreement.**   This Agreement contains the entire agreement between the Company and Employee with respect to the subject matter hereof, and supersedes all prior agreements between the Parties However, this Agreement does not in any way affect or limit Employee's Arbitration Agreement with Chanel. The Parties agree that this Agreement may not be modified except by a written document signed by both Parties.  The Parties agree that this Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

19.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its conflict of law principles.

20.    <u>Waiver.</u>  The failure of either party to enforce any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision.  Any waiver of any provision of this Agreement must be in a writing signed by the party making such waiver.  No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.

PLEASE READ CAREFULLY. THIS AGREEMENT AND GENERAL RELEASE HAS IMPORTANT LEGAL CONSEQUENCES.

EMPLOYEE HAS BEEN ADVISED THAT EMPLOYEE HAS AT LEAST TEN (10) DAYS TO CONSIDER THIS AGREEMENT AND TO CONSULT WITH EMPLOYEE'S ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT, WHICH EMPLOYEE AGREES THAT EMPLOYEE HAS DONE. IF EMPLOYEE HAS SIGNED THIS AGREEMENT PRIOR TO THE EXPIRATION OF SAID TEN (10) DAY PERIOD, EMPLOYEE DOES SO KNOWINGLY, VOLUNTARILY AND WAIVES SAID PERIOD.

The Parties knowingly and voluntarily sign this agreement as for the dates set forth below:

_____

[EMPLOYEE NAME]    (Date)

AGREED TO AND ACCEPTED BY:

Signature: _____

Print Name: _____

Date: _____, 2021

STATE OF _____                    )
                                                                              ss.:
COUNTY OF _____                     )

On _____, 2021, before me _____ personally came_____, to me known, and known to me to be the individual described herein, and who executed the foregoing General Release, and duly acknowledged to me that s/he executed the same.

_____

Notary Public

AGREED TO AND ACCEPTED BY:

_____

**Christine Esteban**
**Head of US People & Organization**
**Chanel, Inc.**

Date: _____, 2021

Exhibit A-4

Ealaila Conard
3162 Blackstone Run
Lawrenceville, Georgia, 30043
eahabibul@gmail.com
770-545-7013

| | |
|---|---|
| Jerome Locke<br>Sam Nunn Atlanta Federal Center<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303<br>JEROME.LOCKE@EEOC.GOV | CRTIU Supervisor<br>Sam Nunn Atlanta Federal Center<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303 |
| Michelle Rhee, HR Manager<br>Chanel, Inc<br>3393 Peachtree Rd NE<br>Atlanta, Georgia 30326<br>michelle.rhee@chanel.com | Marcus G. Keegan, Regional Attorney<br>Sam Nunn Atlanta Federal Center<br>100 Alabama Street, SW, Suite 4R30<br>Atlanta, GA 30303 |

April 28, 2022

## For Atlanta District Office EEOC
## Charge of Discrimination and Retaliation
## Request for Mediation/ Right to Sue Letter

Re: Chanel, Inc
3393 Peachtree Rd NE
Atlanta, Georgia 30326

### AMENDED STATEMENT IN SUPPORT OF COMPLAINT

I am amending my complaint against my employer for its discrimination and retaliation against me based upon disability. The EEOC has the authority and legal duty to investigate this complaint. My case # is **410-2022-01070.**

My employer regarded me as having a disability. My employer regarded me as having a contagious disease and as having an impairment of my immune system and an impairment of my respiratory system. I am therefore a qualified individual with a disability.

I have been harassed, coerced and intimidated by my employer while it attempted to impose its discriminatory policies upon me.

- 1 -

My employer's policies demonstrated that it regarded me as having a disability; and it has taken adverse employment actions against me because of regarding me as having a disability. I have been injured by being denied equal access to the programs and benefits of employment that are available to other employees and I have suffered loss of income, wages and other benefits from employment. I have been terminated by my employer because of disability.

My employer has also made a record of such disability; by mis-classifying me as having a physical or mental impairment that substantially limits my ability to engage in one or more major life activities.

My employer has failed to conduct any individualized assessment to determine if I was a direct threat to anyone.

My employer has failed to engage in any interactive process with me concerning disability rights or resolutions.

My employer has offered various accommodation measures including but not limited to mask-wearing, staying six feet away from others, frequent hand-sanitizing, collection, use and storage of my vital statistics, histological samples and biometric data and biometric identifiers without adequate or proper notice, adequate disclosures, adequate data retention security or my informed consent, working in isolation, video-graphic and audio-graphic communications in lieu of face to face communications, working behind clear shielding, and injections of certain types of suspensions which are being called "vaccinations" yet do not prevent infection or transmission of any contagious disease and in fact create more disabilities by altering the normal function of my immune system and other cellular functions. My employer has not merely "offered" such accommodation measures, but has penalized me for refusing such accommodations in violation of 29 CFR Part 1630.9(d).

My employer never conspicuously disclosed that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job. My employer imposed discriminatory policies upon me that created a disability in that I could not (was not permitted to) do my job without complying with the policies, yet the policies were not related to my essential job function.

My employer has adopted policies that perceive un-diagnosed disabilities in me and then create actual disabilities for me because of forcing its accommodations upon me. My employer encouraged others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

I have requested information regarding the risks and benefits of my employers accommodation measures and in response, my employer has retaliated against me by reprimanding me and then terminating my employment for opposing a discriminatory policy in good faith and for refusing the accommodation measures instead of providing me with the information I requested so that I could make an informed decision.

-2-

I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation as a result of my exercise of such rights, and my employer has prevented and interfered with this occurring.

My employer has instead retaliated against me for exercising my rights under the Americans with Disabilities Act by threatening me with disciplinary measures and penalties for refusing such accommodation measures, including but not limited to suspension or reduction of pay, limiting my access to the premises where I work, segregation, isolation, termination of employment, exclusion from programs or services that would permit me to improve my employment skills or become eligible for advancement, and denied me the possibility for promotion even when I was eligible or would become eligible.

I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not. I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.

I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.

Each day my employer permitted and encouraged other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of my employment duties.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations of my rights and failures to comply with the law. My employer has no legal duty of care as demonstrated by its lack of any insurable risk.

### REQUEST FOR MEDIATION/ RIGHT TO SUE LETTER

By filing this Charge, I am formally requesting a mediation hearing to resolve these issues. If my employer refuses mediation and the EEOC does not plan to investigate my Charge, I request an immediate Right to Sue letter without any delay.

- 3 -

**FILE CHARGE MANUALLY**

I request that my Charge be entered manually. I request the CRTIU Supervisor to enter my Charge into the EEOC system manually as I do not find the online portal acceptable or accessible for entering my Charge. I am not required to have personal access to printers, scanners, laptops, digital signatures and digital encryption technology in order to file a Charge of Discrimination and Retaliation. I do not waive access to the US postal system. EEOC internal policies that limit EEOC employee access to their job sites based upon regarding employees as disabled are discriminatory and may be cause to strip the EEOC of federal funding. I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

Ealaila Conard

- 4 -

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

|  | no state agency response requested | and EEOC |
|---|---|---|
|  | State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|---|
| Ealaila Conard | | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 3162 Blackstone Run | Lawrenceville, Georgia, 30043 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|---|
| Chanel, Inc | | Unknown | |

| Street Address | City, State and ZIP Code |
|---|---|
| 3393 Peachtree Rd NE | Atlanta, Georgia 30326 |

| Name | | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|---|
| | | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Spetember 2    Latest: November 20

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See Attached

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 04, 2022 — Date    Ealaila Conard — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| no state agency requested | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 04, 2022     Ealaila Conard<br>Date        *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Exhibit A-5

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/07/2022

**To:** Ealaila Conard
3162 Blackstone Run
LAWRENCEVILLE, GA 30043
Charge No: 410-2022-01070

EEOC Representative and email:    Lucy Campa
Investigator
lucy.campa@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2022-01070.

On behalf of the Commission,

Digitally Signed By: Darrell Graham
06/07/2022
Darrell Graham
District Director

Court Name: Northern District of Geogia
Division: 1
Receipt Number: GAN160141145
Cashier ID: bgutting
Transaction Date: 09/20/2022
Payer Name: EALAILA COWARD
---------------------------------------
CIVIL FILING FEE- NON-PRISONER
  For: EALAILA COWARD
  Case/Party: D-GAN-1-22-CV-003784-001
  Amount:      $402.00
---------------------------------------
PAPER CHECK CONVERSION.
  Check/Money Order Num: 28260675562
  Amt Tendered: $402.00
---------------------------------------
Total Due:      $402.90
Total Tendered: $402.00
Change Amt:     $0.00

With a check payment you authorize
us either to use information from
your check to make a one-time
electronic fund transfer from your
account or to process the payment
as a check transaction.  For
inquiries or privacy
information,call 404-215-1625

Case 1:22-cv-03784-MLB Document 1-2 Filed 09/19/22 Page 2 of 2

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

1:22-CV-3784

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ealaila Conard

**DEFENDANTS**
CHANEL, INC.

**(b)** County of Residence of First Listed Plaintiff   GWINNETT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   GWINNETT
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only.)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only.)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - | of Property 21 USC 881 | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product | Product Liability | 690 Other | 28 USC 157 | 3729(a)) |
| 140 Negotiable Instrument | Liability | 367 Health Care/ | | **INTELLECTUAL** | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' | Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted | Liability | 368 Asbestos Personal | | 835 Patent - Abbreviated | 460 Deportation |
| Student Loans | 340 Marine | Injury Product | | New Drug Application | 470 Racketeer Influenced and |
| (Excludes Veterans) | 345 Marine Product | Liability | | 840 Trademark | Corrupt Organizations |
| 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets | 480 Consumer Credit |
| of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle | 371 Truth in Lending | Act | | 485 Telephone Consumer |
| 190 Other Contract | Product Liability | 380 Other Personal | 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| 195 Contract Product Liability | 360 Other Personal | Property Damage | Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | Injury | 385 Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ |
| | 362 Personal Injury - | Product Liability | 751 Family and Medical | 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement | | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate | | 870 Taxes (U.S. Plaintiff | Act |
| 240 Torts to Land | 443 Housing/ | Sentence | | or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | Accommodations | 530 General | | 871 IRS—Third Party | 899 Administrative Procedure |
| 290 All Other Real Property | [x] 445 Amer. w/Disabilities - | 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | 462 Naturalization Application | | Agency Decision |
| | 446 Amer. w/Disabilities - | 540 Mandamus & Other | 465 Other Immigration | | 950 Constitutionality of |
| | Other | 550 Civil Rights | Actions | | State Statutes |
| | 448 Education | 555 Prison Condition | | | |
| | | 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only.)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title I of the Americans with Disabilities Act
Brief description of cause:
Discrimination and Retaliation under the ADA

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    [x] Yes    [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                          DOCKET NUMBER

DATE
08/31/2022

SIGNATURE OF ATTORNEY OF RECORD
By: Ealaila Conard

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA

**EALAILA CONARD,**

        **Plaintiff,**

    **v.**                          **Case No. 22-CV-3784-MLB-CCB**

**CHANEL, INC.,**

        **Defendant.**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Chanel, Inc. ("Chanel"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits the following memorandum of points and authorities in support of its Motion to Dismiss Plaintiff's Complaint in its entirety.

### INTRODUCTION

The instant lawsuit is Plaintiff's second attempt to bring legal claims against Defendant related to her termination pursuant to Chanel's mandatory COVID-19 vaccination policy. Plaintiff's first lawsuit in this Court (Case No. 1:22-cv-01168-CAP-WEJ), asserted claims "on the grounds of religious persecution, breach of contract and retaliation." In this lawsuit, Plaintiff changes up her strategy and abandons her religious discrimination claims, instead asserting claims of disability discrimination and retaliation under the Americans with Disabilities Act.

The Federal Rules of Civil Procedure require Plaintiff to plead claims that are both timely and plausible in order to survive a motion to dismiss. Plaintiff's Complaint does neither. Because Plaintiff's Complaint fails to state a claim upon which relief can be granted, it must be dismissed with prejudice.

## FACTS ALLEGED IN THE COMPLAINT[1]

Plaintiff was employed by Chanel from December 2018 to November 8, 2021, as a Fashion Advisor at Chanel's boutique within the Neiman Marcus department store in Atlanta, Georgia. *See* Compl. (ECF No. 1) at ¶¶ 19, 27; Aff. In Support Of Complaint ("Pl. Aff.") (ECF No. 1-1) at ¶¶ 9, 17. In September 2021, Chanel implemented a mandatory COVID-19 vaccination policy, pursuant to which all of its U.S. employees would need to become fully vaccinated against COVID-19 by November 8, 2021. *See id.* at ¶ 23. Chanel's vaccination policy provided employees an avenue for requesting religious and/or medical accommodations pursuant to the policy. *See id.* at ¶¶ 23-26; Pl. Aff. (ECF No. 1-1) at Ex. A-1. Plaintiff "asked for a 'religious exemption' [to the vaccination policy] as a means of exercising her rights under the ADA." *See id.* at ¶ 25. Chanel denied her request for religious accommodation, and when Plaintiff chose not to comply with Chanel's policy, the Company terminated her employment on November 8,

---

[1] For the purposes of Defendant's Motion to Dismiss, Chanel accepts as true all factual allegations in Plaintiff's Complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

2021. *See id.* at ¶¶ 26-27.

## PLAINTIFF'S PRIOR LAWSUIT IN THIS COURT

Plaintiff first filed a Complaint against Chanel in February 2022, primarily
alleging that Chanel discriminated against her on the basis of her religion when it
denied her request for a religious accommodation pursuant to the Company's
COVID-19 vaccination policy. *See* Case No. 1:22-cv-01168-CAP-WEJ at ECF
Nos. 1, 1-1.[2] Specifically, Plaintiff's original Complaint alleged that Plaintiff
"declared" a "religious objection to" the vaccination policy and "request[ed]
reasonable accommodations," that Chanel denied her request "without respecting
[Plaintiff's] religious beliefs," and then terminated her employment. *See id.* at ¶¶
7,12. The Complaint did <u>not</u> allege, as Plaintiff does here, that she was disabled
within the meaning of the ADA, that she requested or needed any accommodation
for an alleged disability, nor that Chanel discriminated against her in any way on

---

[2] Plaintiff filed her original complaint, alleging an array of claims challenging her discharge from
Chanel, in the Superior Court for Gwinnett County, Georgia (Case No. 22-A-01243-4). Chanel
removed that Complaint to this Court in March 2022, and filed a Motion to Dismiss. *See* Case
No. 1:22-cv-01168-CAP-WEJ. Chanel's Motion to Dismiss sought dismissal of Plaintiff's
original Complaint in its entirety, because it was an improper "shotgun" pleading under Fed. R.
Civ. P. 8 and 10, failed to state a claim under Fed. R. Civ. P. 12(b)(6), and because Plaintiff had
failed to exhaust her administrative remedies. See *id.* at ECF No. 4. Plaintiff failed to file a
timely response to Chanel's Motion to Dismiss, prompting the Court to issue an Order to Show
Cause, instructing Plaintiff to respond and reminding her that even proceeding *pro se*, she was
expected to follow the Federal Rules of Civil Procedures and Local Rules. *See* Case No. 1:22-cv-
01168-CAP-WEJ, 4/25/2022 Order to Show Cause (ECF No. 5).

3

the basis of disability.[3] *See generally id.* On May 5, 2022, Plaintiff voluntarily

dismissed that Complaint without prejudice. *See id.* at ECF No. 6.

Plaintiff's first Charge of Discrimination (filed with the EEOC the day she

filed suit in Georgia state court) also alleged religious discrimination, and made no

mention whatsoever of any alleged disability.[4] *See* Madigan Dec. at ¶ 3; Exhibit A;

*see also* Compl. (ECF No. 1) at ¶¶ 5, 30. Plaintiff's Charge stated that she

requested a religious accommodation to Chanel's vaccination policy, that it was

denied, and that she was discharged on the basis of her religion ("non-

denominational") in violation of Title VII of the Civil Rights Act of 1964, as

amended ("Title VII"). *See id.*

In May 2022, upon voluntarily dismissing her original Complaint, Plaintiff

filed an Amended Charge with the EEOC. *See* Pl. Aff. (ECF No. 1-1) at Ex. A-4.

In spite of the fact that Plaintiff requested a religious and not a medical

---

[3] With regard to the ADA, Plaintiff's original complaint in this Court alleged only that "[n]o one can order or coerce another to take a medical experiment. No employer can ethically pry into the medical, religious, or private life of an individual or employee." *See id.* at ¶ 9.

[4] The Court may consider Plaintiff's original EEOC Charge without converting this motion to one for summary judgment. *See Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.") (internal quotation omitted). "The EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it is not attached to a pleading. *Perry v. Don Park USA Ltd. P'ship,* No. 120CV03070JPBRGV, 2021 WL 3399822, at *2, n.3 (N.D. Ga. Apr. 28, 2021) (citing *Speaker,* 623 F.3d at 1379). "In addition, the court may consider public records on a motion to dismiss without converting the motion to one for summary judgment." *Id.* (internal quotation omitted).

4

accommodation pursuant to Chanel's vaccination policy, the Amended Charge

unexpectedly reversed course, dropping Plaintiff's Title VII religious

discrimination claim, and for the first time, asserting claims of disability

discrimination and retaliation under the ADA. *See id.* Plaintiff requested a Notice

of Right to Sue in the Charge itself, which the EEOC issued in June 2022. *See id.*

at Ex. A-4, A-5.

### STANDARD OF REVIEW

To state a claim, a complaint must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Showing an "entitle[ment] to relief" requires more than a mere "the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pleadings offering labels, legal conclusions, or "naked assertions" devoid of

factual support do not state a claim upon which relief may be granted. *Id.*; *Bell

Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, to survive

dismissal under Rule 12(b)(6), a claim must be supported by sufficient facts that, if

taken as true, make it "plausible" that the defendant is liable for the misconduct

alleged and that plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556, 570.

Plausibility requires "more than a sheer possibility" that a defendant acted

unlawfully. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause

5

of action, supported by mere conclusory statements, do not suffice," and a "legal

conclusion couched as a factual allegation" is not entitled to the presumption of

truth. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Jackson v. Bellsouth

Telecomm.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (explaining that "conclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts will not prevent dismissal") (internal citation and quotations omitted).

When considering a motion to dismiss, a district court must identify the

elements of a plaintiff's claims, disregard all legal conclusions, and then determine

whether all of the elements identified in part one of the inquiry are sufficiently

alleged by the well-pleaded facts. *See Twombly*, 550 U.S. at 555; *Turks v. Bank of

Am.*, 742 F. App'x 470, 473 (11th Cir. 2018).

Although *pro se* pleadings are governed by less stringent standards than

pleadings prepared by attorneys, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972),

*pro se* parties are still required to comply with minimum pleading standards set

forth in the Federal Rules of Civil Procedure and this district's Local Rules. *See

Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), *cert. denied*, 493 U.S. 863

(1989) (a *pro se* litigant "is subject to the relevant law and rules of court, including

the Federal Rules of Civil Procedure.")

## **LEGAL ARGUMENT**

6

Plaintiff's Complaint contains two counts: Count I alleges discrimination in violation of the ADA and Count II alleges retaliation in violation of the ADA. Because the Complaint also appears to assert other claims outside of the numbered "Counts," including failure to accommodate and/or that Chanel's vaccination program otherwise violated the ADA, those claims are addressed herein as well. Plaintiff's Complaint cannot survive a motion to dismiss because it is both untimely and fails to plead sufficient facts to plausibly allege any of the claims it purports to assert. Accordingly, the Complaint should be dismissed in its entirety.

## I.    Plaintiff's Claims Are Time-Barred.

All of the claims alleged in Plaintiff's Complaint, based solely on the ADA, are subject to the statutory filing period applicable to ADA claims. In order for her ADA claims to be timely, Plaintiff was required to file suit within 90 days after receiving her notice of right to sue from the EEOC. *See* 42 U.S.C. § 12117; *Miller v. Georgia*, 223 F. App'x 842, 844 (11th Cir. 2007) ("[ADA] plaintiff must file her complaint in the district court within 90 days of her receipt of a right-to-sue letter from the EEOC."). This 90-day statute of limitations is strictly construed. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *Moton v. Skanska USA Civ. Se., Inc.*, No. 3:20CV5950/MCR/EMT, 2022 WL 585347, at *2 (N.D. Fla. Jan. 11, 2022), *report and recommendation adopted*, No.

7

3:20CV5950/MCR/EMT, 2022 WL 580813 (N.D. Fla. Feb. 25, 2022) (90-day filing

period is strictly construed and akin to a statute of limitations).

Plaintiff admits that she received the Notice of Rights on June 7, 2022. *See* Pl.

Aff. (ECF No. 1-1) at ¶ 20, Ex. A-5. Accordingly, Plaintiff needed to have filed her

lawsuit in court on or before September 6, 2022.[5] Indeed, the Notice advised

Plaintiff:

> If you choose to file a lawsuit against the respondent(s) on
> this charge under federal law in federal or state court,
> "**your lawsuit must be filed WITHIN 90 DAYS of your
> receipt of this notice**... Your right to sue based on this
> charge will be lost if you do not file a lawsuit in court
> within 90 days."

*See* Pl. Aff. (ECF No. 1-1) at Ex. A-5 (emphasis in original). Yet, Plaintiff did not

file suit until September 19, 2022, two weeks after the 90-day period expired. *See*

Compl. (ECF No. 1). Thus, Plaintiff's Complaint under the ADA is untimely and

should be dismissed.

**II.    Plaintiff's Complaint Fails To State A Claim Under The ADA.**

    **A.    Plaintiff's ADA Discrimination Claim In Count I Fails Because
        Plaintiff Fails To Plausibly Allege That She Was Disabled Within
        The Meaning Of The ADA.**

To state a claim for discrimination under the ADA, Plaintiff must, at a

---

[5] The 90th day actually fell on September 5, 2022, a legal holiday (Labor Day). Accordingly,
Plaintiff's filing period extended to September 6, 2022. *See* Fed. R. Civ. P. 6(a)(1)(C).

minimum, plausibly allege that she is disabled within the meaning of the ADA.[6] *See,*

*e.g., Cramer v. Fla.*, 117 F.3d 1258, 1264 (11th Cir. 1997); *Puckett v. Bd. of Trs. of*

*First Baptist Church of Gainesville, Inc.*, 17 F. Supp. 3d 1339, 1342 (N.D. Ga. 2014)

(in order to succeed on ADA discrimination claim, Plaintiff must show that: "(1)

[s]he is disabled; (2) [s]he was a qualified individual at the relevant time, meaning

[s]he could perform the essential functions of the job in question with or without

reasonable accommodations; and (3) [s]he was discriminated against [or suffered an

---

[6] Even if the Complaint plead sufficient facts to raise a plausible inference that Plaintiff is disabled under within the meaning of the ADA (it does not, as discussed *infra*), it still fails to state a discriminatory discharge claim because it also does not plead sufficient facts to raise a plausible inference that Chanel discharged Plaintiff because of an alleged disability. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (plaintiff bringing a disparate-treatment claim under the ADA must allege that the disability actually motivated the employment decision); *see also Cappetta v. N. Fulton Eye Ctr.*, No. 1:15-CV-3412-LMM-JSA, 2017 WL 5197207, at *24 (N.D. Ga. Feb. 1, 2017), *report and recommendation adopted sub nom. Capetta v. N. Fulton Eye Ctr.*, No. 1:15-CV-3412-LMM-JSA, 2017 WL 5443877 (N.D. Ga. Mar. 7, 2017), *aff'd sub nom. Cappetta v. N. Fulton Eye Ctr.*, 713 F. App'x 940 (11th Cir. 2017) ("Thus, a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him *but for* his actual or perceived disability.") (emphasis added) (internal quotation omitted). The Complaint plainly states Chanel discharged Plaintiff because of her refusal to comply with its COVID-19 vaccination policy. *See* Compl. (ECF No. 1) at ¶ 18 (alleging Chanel "ultimately terminat[ed] her employment as a direct and proximate cause of her good faith refusal to participate in the defendant's Covid-19 Policy."). Thus, Plaintiff pleads Chanel discharged her due to the application of a neutral policy — not because of her disability — and fails to plead any other facts from which one could reasonably infer intentional discrimination. *See Caporicci v. Chipotle Mexican Grill, Inc.*, 729 F. App'x 812, 816 (11th Cir. 2018) (upholding trial court's finding that employer discharged the plaintiff for violating a neutral, generally applicable rule, and thus that her discharge was not disability-related); *Smith v. Miami-Dade Cnty.*, 21 F. Supp. 3d 1286, 1290 (S.D. Fla. 2014), *aff'd*, 621 F. App'x 955 (11th Cir. 2015) (dismissing ADA discriminatory discharge claim where Complaint alleged employer did not hire her due to its rehire policy, which rendered her ineligible for rehire due to her violation of the attendance policy during her previous employment with the company). Plaintiff's ADA discriminatory discharge claim fails for this additional reason.

adverse employment action] because of [her] disability.") (internal marks omitted).
To do so, the Complaint must plead facts, beyond mere conclusory statements, to
establish that, during the relevant time period, Plaintiff (1) had a physical or mental
impairment that substantially limited one or more major life activities; (2) had a
record of such an impairment; or (3) was regarded by Chanel as having such an
impairment. *See* 42 U.S.C. § 12102(1)(A)-(C) (ADA definition of "disability"); *see
also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007)
("a complaint must contain either direct or inferential allegations respecting all the
material elements necessary to sustain a recovery under some viable legal theory.")
(internal quotation omitted).

   The Complaint does not allege Plaintiff has any actual impairment. *See*
Compl. (ECF No. 1) at ¶¶ 33, 89. Rather, Plaintiff alleges Chanel regarded her as
disabled and that she had a record of a disability. *See id.* However, the Complaint
fails to plausibly allege either theory.

### 1.    Having COVID-19 In And Of Itself Is Not A Disability.

   COVID-19 is a transitory illness that is often minor and indeed sometimes
entirely asymptomatic. Impairments that are transitory (actual or expected duration
of six months or less) and minor do not constitute disabilities under the ADA. *See*
42 U.S.C. § 12102(3)(B); *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir.

10

2019) ("an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor").

Thus, having COVID-19 is not itself a disability under the ADA. *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1348 (M.D. Ga. 2021) ("Court has little trouble disagreeing with [the plaintiff's] legally-flawed position that anyone alleged to have COVID-19 is 'disabled' as that term is defined by the ADA"); *see also What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Emp. Opportunity Comm'n (July 12, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("EEOC Guidance") at N.2 ("A person infected with the virus causing COVID-19 who is asymptomatic or a person whose COVID-19 results in mild symptoms similar to those of the common cold or flu that resolve in a matter of weeks - with no other consequences - will not have an actual disability within the meaning of the ADA."). Accordingly, whether Plaintiff claims Chanel regarded her as having COVID-19 by virtue of issuing its mandatory vaccination policy or that it viewed her as having a record of having COVID-19, this - without more - does not establish she was disabled within the meaning of the ADA.

**2.    The Complaint Fails To Plausibly Allege That Chanel "Regarded" Plaintiff As Disabled.**

The Complaint alleges Chanel regarded Plaintiff (and all other non-vaccinated

11

employees) as disabled, claiming the existence of the Company's vaccination policy demonstrates that Chanel assumed Plaintiff had or was at risk of having the COVID-19 virus.[7] *See* Compl. (ECF No. 1) at ¶¶ 17, 39-40, 42, 89-90. However, the Complaint does not allege that Plaintiff ever actually had COVID-19, let alone that she had "long COVID" or any symptom(s) that substantially limited her in any way, nor that Chanel had any knowledge of or believed she had any such illness. The Complaint offers no plausible basis to infer that Chanel regarded Plaintiff as having a physical or mental impairment.

The case *Speaks v. Health Sys. Mgmt., Inc.*, No. 522CV00077KDBDCK, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022), is directly on-point. In *Speaks*, like here, the defendant employer implemented a mandatory COVID-19 vaccination policy that provided for religious or medical exemptions. Speaks did not request an exemption, but refused to comply with the policy to become vaccinated, and was thus discharged. The plaintiff in *Speaks*, like Plaintiff here, then filed suit alleging

---

[7] Despite Plaintiff's assertions to the contrary, an individual is not disabled within the meaning of the ADA merely because they are *at risk* of contracting an illness that could be disabling. *See Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) (holding "the disability definition in the ADA does not cover [restrictions on foreign travel because of the risk of the Ebola virus] where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future."); *Hice v. Mazzella Lifting Techs., Inc.*, No. 2:21CV281, 2022 WL 636640, at *7–8 (E.D. Va. Mar. 4, 2022) (possible future exposure to COVID-19 does not constitute an impairment under the ADA). Indeed, if this were a proper basis to claim that Defendant's mandatory vaccination violated the ADA, it would invalidate every mandatory vaccination policy as Plaintiff is claiming that Chanel viewed anyone who was unvaccinated as being at heightened risk for COVID-19.

her employer "regarded" her as disabled, based on the same theory as put forth by

Plaintiff. The court in *Speaks* granted the employer's motion to dismiss, finding that

the complaint failed to plausibly allege that the plaintiff was disabled as defined by

the ADA. *See id.* at *4-6.

With respect to Speaks' argument the employer "regarded" her as disabled,

the court explained:

> [T]here is no plausible basis to conclude that [the defendant employer]
> regarded Speaks as having a 'physical or mental impairment.' The
> Company only regarded Speaks as being required – like all of its
> employees – to obtain a COVID-19 vaccine or be approved for an
> exemption and then 'regarded' her as having failed to do so by the
> deadline to become vaccinated. **Refusing to get a vaccine required by**
> **an employer is not itself an 'impairment' of any sort. Rather, it**
> **reflects a personal choice by Speaks that, while hers to make in this**
> **context, cannot be considered an impairment under the ADA.**

*Id.* at *5 (emphasis added).

Also, in *Shklyar v. Carboline Co.*, No. 4:22 CV 391 RWS, 2022 WL 2867073

(E.D. Mo. July 21, 2022),[8] another case with similar facts and based on the same

legal theories as those here, the court rejected the plaintiff's claim she was regarded

as disabled. In dismissing the complaint for failure to state a claim, the court found

Shklyar's "conclusory allegation" that her employer regarded her as having a

disability was "simply implausible," given the general applicability of the COVID-

---

[8] Plaintiff has filed an appeal of this decision, which is currently pending before the Eighth
Circuit.

19 policies. The court noted, "to infer that [the defendant] regarded [the plaintiff] as having a disability would require inferring that [the defendant] regarded all of [the employees subject to the policies] as having a disability. This too is not a reasonable inference." *See id.* at *5.

Like the employers in *Speaks* and *Shklyar*, Chanel's COVID-19 policies applied to all U.S. employees, negating any plausible inference that the Company regarded Plaintiff (or its other employees) as disabled. *See* Compl. (ECF No. 1) at ¶¶ 23, 95; Pl. Aff. (ECF No. 1-1) at Ex. A-1. Indeed, Chanel "only regarded [Plaintiff] as being required - like all of its employees - to obtain a COVID-19 vaccine or be approved for an exemption and then 'regarded' her as having failed to do so by the deadline to become vaccinated." *Speaks*, 2022 WL 3448649 at *5.

### 3. The Complaint Fails To Plausibly Allege Plaintiff Had A "Record Of" A Disability.

To state a claim for disability discrimination based on a "record of" a disability, Plaintiff must plausibly allege she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2); *see also Hilburn v. Murata Elec. North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) (holding that the impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's

14

major life activities); *Speaks*, 2022 WL 3448649, at *5; *Shklyar*, 2022 WL 2867073, at *2–3.

Plaintiff does not allege any history of impairment, but rather alleges Chanel misclassified her as having an impairment that substantially limited a major life activity because its policy would not allow her to work if she was unvaccinated.[9] *See* Compl. (ECF No. 1) at ¶ 121. The plaintiffs in *Speaks* and *Shklyar* made the same argument and, in each case, it was roundly rejected by the court. *See Speaks*, 2022 WL 3448649, at *5 ("Simply put, inferring that the Company classified Speaks as impaired by requiring her to become vaccinated or seek an exemption would mean that Health Systems considered all its employees to have an "impairment," which is of course not a plausible inference, particularly in light of the possibility of an exemption."); *Shklyar*, 2022 WL 2867073, at *4 ("Inferring that Carboline misclassified Shklyar as having a disability would therefore require inferring that Carboline misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable. As a result, Shklyar has not plausibly alleged that

---

[9] Plaintiff also alleges Defendant "made a record of the impairment its [mandatory vaccination] policy is intended to treat, by documenting plaintiff's 'vaccination status' . . ." Compl. (ECF No. 1) at ¶ 70. This allegation does not raise any inference, let alone a plausible one, that she had a record of a disability under the ADA. The state of being unvaccinated is not an impairment, and the fact that Chanel recorded Plaintiff's vaccination status is not the same as Plaintiff having a record of an impairment. *See Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort.").

Carboline misclassified her as having a disability, and she cannot proceed under a theory of being disabled based on a record of a disability.").

The same rationale applied by the courts in *Speaks* and *Shklyar* dooms Plaintiff's misclassification theory here. Chanel's COVID-19 policies were applicable to *all* U.S. employees. *See* Compl. (ECF No. 1) at ¶¶ 23, 95; Pl. Aff. (ECF No. 1-1) at Ex. A-1. Chanel "classified" Plaintiff as it did all U.S. employees; thus, to infer that Chanel classified Plaintiff as disabled, simply by virtue of the existence of its COVID-19 policies, would mean that the Company classified all of its U.S. employees as disabled. Again, that is not a plausible inference, especially where Chanel's policies provided an opportunity for exemptions.[10]

Because Plaintiff has not plausibly alleged an actual disability, that she had a record of a disability (or that Chanel misclassified her as disabled), nor that the

---

[10] Plaintiff also argues that Chanel's COVID-19 vaccination policy rendered her disabled by preventing her from engaging in the major life activity of working (*see* Compl. (ECF No. 1) at ¶¶ 70, 87), because she was not permitted to work in Chanel's boutique due to her refusal to comply with the policy. The fact that Plaintiff does not allege she had any actual physical or mental "impairment" that limited any major life activity is fatal to that argument. Moreover, Chanel's policy only required Plaintiff to become vaccinated to continue working at *Chanel*. Accordingly, the argument that Chanel's policy rendered Plaintiff disabled fails. *See Speaks*, 2022 WL 3448649, at *5 (rejecting similar argument and holding that the employer's policy "plainly did not impair [the plaintiff's] ability to work (for example, for another company)."). Indeed, an employee cannot use their intentional violation of Company policy, and resulting termination or exclusion from the workplace, to create a disability under the ADA. *See id.* at *4, n.4; *Roman v. Hertz Loc. Edition Corp.*, No. 20 CV 2462-BEN, 2022 WL 1541865, at * 8 (S.D. Cal. May 16, 2022) (rejecting argument that employer's "COVID-19 policy prevented [plaintiff] from working and therefore transformed her COVID-19 infection into disability."). If Plaintiff's legal theory were to succeed, every employee discharged or restricted from the workplace for a violation of Company policy would be disabled under the ADA. Such an outcome cannot prevail.

16

Company regarded her as having a disability, she has failed to plausibly allege the existence of an essential element of Plaintiff's ADA discrimination claim: that she is disabled within the meaning of the ADA. Accordingly, her discriminatory discharge claim fails and should be dismissed.

**B.    The Complaint Fails To State A Failure To Accommodate Claim Under The ADA.**

Plaintiff alleges she "asked for a 'religious exemption' [to the mandatory vaccination policy] as a means of exercising her rights under the ADA." *See* Compl. (ECF No. 1) at ¶¶ 24-27. Assuming the truth of this assertion for purposes of this motion only, Plaintiff's failure to accommodate claim under the ADA must still be dismissed.

To state a *prima facie* claim of disability discrimination based on an alleged failure to accommodate, Plaintiff must plausibly allege that she: (1) is disabled; (2) is a qualified individual; and (3) was discriminated against because of her disability by way of the defendant's failure to provide a reasonable accommodation. *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016). Plaintiff's failure to accommodate claim must be dismissed because, as set forth above, she does not plausibly allege she was actually disabled or had a record of disability.[11] *See* Sec.

---

[11] Even if she had sufficiently pled that Chanel regarded her as disabled (which it does not), her claim would still fail because an individual who is "regarded as" disabled (as opposed to actually disabled or with a record of an actual disability) is not entitled to a reasonable accommodation.

II(A)(1)-(3), *supra*. This alone is fatal to her claim.

Further, the Complaint concedes Plaintiff never requested an accommodation related to any disability. *See* Compl. (ECF No. 1) at ¶¶ 24-25. Plaintiff's contention that she "asked for a 'religious exemption' as a means of exercising her rights under the ADA" is insufficient as a matter of law to show that she requested or indicated any need for an accommodation due to any alleged disability. "[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made" by the employee. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (*per curiam*); *Moreira v. Am. Airlines, Inc.*, 157 F. Supp. 3d 1208, 1216 (S.D. Fla. 2016) ("The duty to accommodate is triggered only when an individual makes a request that is direct, specific, and identifies how it is linked to his disability."). Plaintiff's failure to allege that she requested an accommodation under the ADA is fatal to any ADA failure to accommodate claim. *Davis v. O'Rourke*, 2018 U.S. Dist. LEXIS 229089, at *24, 2018 WL 8997476, at *8 (N.D. Ga. July 18, 2018) (dismissing failure to accommodate claim with prejudice finding that the plaintiff failed to state a claim when he did "not allege that he made the necessary demand for accommodation that

---

*See* 42 U.S.C. 12201(h); *Morris v. Precoat Metals*, No. 2:11-CV-0053-SLB, 2012 WL 4727995, at *25 (N.D. Ala. Sept. 27, 2012), *rev'd and remanded on other grounds sub nom. Morris v. Sequa Corp.*, 564 F. App'x 516 (11th Cir. 2014).

would trigger any obligation on the part of [his employer]"), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 229088, 2018 WL 8997472 (N.D. Ga. Sept. 24, 2018); *Puckett v. Bd. of Trs. of First Baptist Church of Gainesville, Inc.*, 17 F. Supp. 3d 1339, 1343 (N.D. Ga. 2014) ("Because Plaintiff fails to allege that he requested an accommodation, Plaintiff's ADA discrimination claim based on a failure to accommodate is due to be DISMISSED.") (emphasis in original).[12]

In sum, Plaintiff fails to state a claim for ADA failure to accommodate because the Complaint fails to plausibly allege she was disabled under the ADA, fails to plausibly allege she requested an accommodation for any alleged disability, and fails to plausibly allege she needed any accommodation to perform the essential functions of her job. Accordingly, Plaintiff's ADA failure to accommodate claim should be dismissed.

### C.   Plaintiff's Complaint Fails To State A Claim For Retaliation Under The ADA.[13]

---

[12] Plaintiff pleads that she was able to continue performing the essential functions of her job without the need for any accommodation. *See* Compl. (ECF No. 1) at ¶ 73. Her Complaint fails to state a claim for failure to accommodate for this additional reason. *See Zalezhnev v. Wonderworld Montessori Acad. Corp.*, No. 19-CIV-60268-RAR, 2019 WL 7633182, at *5 (S.D. Fla. Dec. 23, 2019), *aff'd*, No. 20-10277, 2021 WL 4553019 (11th Cir. Oct. 5, 2021) ("a plaintiff cannot state a failure to accommodate claim if he was able to perform all essential functions of his job without regard to his physical or mental limitations.") (internal quotation omitted).

[13] Plaintiff's retaliation claim is effectively a repackaging of her failure to accommodate claim, and is based on nothing more than Chanel's denial of her request for a *religious* exemption to the vaccination policy.

In order to state a claim for retaliation under the ADA, Plaintiff must allege that (1) she suffers from a qualifying disability; (2) she engaged in a statutorily protected activity; (3) she suffered an adverse employment decision; and (4) the decision was causally related to the protected activity. *See* 42 U.S.C. § 12102(1)(A); *Powell v. Space Coast Credit Union*, No. 615CV550ORL22TBS, 2015 WL 9664963, at *5 (M.D. Fla. Dec. 23, 2015), report and recommendation adopted, No. 615CV550ORL22TBS, 2016 WL 81374 (M.D. Fla. Jan. 7, 2016) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)). As a threshold matter, as discussed above, the Complaint fails to plausibly allege that Plaintiff is disabled as defined by the ADA. This alone is fatal to her ADA retaliation claim.

Further, the Complaint fails to plausibly allege that Plaintiff engaged in any protected activity. A statutorily protected activity for the purposes of an ADA retaliation claim is "oppos[ing] any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a); *see also Calvo v. Walgreens Corp.*, 340 F. App'x 618, 625-26 (11th Cir. 2009) (noting that opposing unlawful practices or filing charges against the employer are the bases for a retaliation claim). Here, Plaintiff bases her retaliation claim on Chanel's denial of her religious accommodation request. *See* Compl. (ECF No. 1) at ¶¶ 108-15. Requesting a *religious* accommodation not a protected activity under the ADA. *See Monroe v. Fla. Dep't of Corr.*, 793 F. App'x

20

924, 928 (11th Cir. 2019) (*per curiam*) (request for accommodation not required by ADA does not constitute protected activity). Moreover, the Eleventh Circuit has made clear that the denial of a requested ADA accommodation does not constitute an unlawful act for the purposes of a retaliation claim under the ADA. *See Calvo*, 340 F. App'x at 625-26 (the denial of requested accommodations may be discriminatory, but it is not retaliatory).

Similarly, Plaintiff's refusal to comply with a neutral Company policy that is itself permissible under the ADA (*see infra* at n. 17) cannot be an actionable protected activity under the ADA. *See Monroe*, 793 F. App'x at 928 ("To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show, among other things, that he engaged in a statutorily protected expression... The employee must have had a good faith, reasonable belief that the activity was protected by the [ADA].") (internal citations omitted). Plaintiff admits she did not "determine" that she "had rights under the ADA" until "several months *after*" her employment at Chanel ended. *See* Compl. (ECF No. 1) at ¶ 30 (emphasis added). Accordingly, Plaintiff has not plausibly alleged that she engaged in activity protected by the ADA.

Even if the Complaint plausibly alleged Plaintiff engaged in any protected activity (which it does not), Plaintiff's Complaint still fails to state a retaliation claim because she has not plausibly alleged a causal connection between any such

21

protected activity and the adverse action taken against her. Chanel's COVID-19

vaccination policy, which ultimately was the grounds for Plaintiff's termination

when she chose to remain unvaccinated, was enacted *before* Plaintiff refused to

comply with the requirements of that policy. *See* Compl. (ECF No. 1) at ¶¶ 17-18.

Therefore, it is not reasonable to infer that there was a causal connection between

Plaintiff's purported opposition to the policy and her termination. The court in

*Speaks* also rejected this theory, holding:

> The core of Speaks retaliation claim against Health Systems is that her
> termination under the Company's COVID-19 policy's vaccination
> requirement violates the ADA because she repeatedly opposed the
> policy. However, it is clear that the policy – which was undisputedly
> the grounds for Speaks' termination when she chose to remain
> unvaccinated – was enacted before Speaks spoke up in opposition to
> the vaccination requirement. Therefore, it is not reasonable to infer that
> there was a causal connection between her criticism of the policy and
> her termination.

*Speaks*, 2022 WL 3448649, at \*6; *see also Shklyar v. Carboline Co.*, No. 4:22 CV

391 RWS, 2022 WL 2867073, at \*6 (E.D. Mo. July 21, 2022) (granting motion to

dismiss ADA retaliation claim, holding: "Given that the adverse action taken against

Shklyar was taken pursuant to policies that were implemented before Shklyar

engaged in her alleged protected activity, it is not reasonable to infer that there was

a causal connection between the two events."); *see also O'Hailpin v. Hawaiian

Airlines, Inc.*, 583 F. Supp. 3d 1294, 1311 (D. Haw. 2022), *appeal dismissed*, No.

22-15215, 2022 WL 3339844 (9th Cir. July 13, 2022) ("[T]he vaccine policy was

established, as well as the consequences for failing to comply with the policy - *i.e.*, the adverse employment actions at issue here - before Plaintiffs submitted their [accommodation] requests… In other words, employees were subject to termination or unpaid leave for violating the policy irrespective of whether they submitted an [accommodation] request."); *Together Emps. v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 573 F.Supp.3d 412, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy").

For all of these reasons, Plaintiff's retaliation claim fails and must be dismissed for failure to state a claim.

**C.   Plaintiff's Complaint Fails To State A Claim That Defendant's Mandatory Vaccination Policy Otherwise Violated The ADA.[14]**

**1.   Plaintiff Fails To Plausibly Plead That Chanel's Mandatory**

---

[14] Plaintiff appears to suggest Chanel did not have the right or legal authority to implement a mandatory COVID vaccination policy. This, however, is not the case. The EEOC has definitively stated that mandatory vaccination policies by private employers do not violate the ADA as long as the employer does not itself administer the vaccine and as long as the policy allows for requests for accommodation to be made based on disabilities under the ADA and religion under Title VII. *See, e.g.*, EEOC Guidance at Sec. K.1, K.5-6. Plaintiff concedes that Defendant's policy allowed for accommodation requests to be made based on disability and religious reasons, and there is no allegation that Chanel attempted to administer the vaccines itself. *See id.* at ¶¶ 23-26; Pl. Aff. (ECF No. 1-1) at Ex. A-1. Thus, Defendant's mandatory vaccination policy did not violate the ADA.

23

**Vaccination Policy Was An Unlawful Medical Examination Or Inquiry Under The ADA.**

Plaintiff's Complaint also appears to allege that Chanel's COVID-19 vaccination policy constituted an unlawful medical inquiry or examination under the ADA. *See* Compl. (ECF No. 1) at ¶¶ 34, 44, 46-7, 60; 42 U.S.C. § 12112(d)(4)(A). A plaintiff asserting a claim under § 12112(d)(4)(A) must show (1) she is an employee of the defendant-employer, and (2) the defendant-employer required her to undergo a medical examination or made a disability-related inquiry of her that is not permitted under the ADA.

However, as a matter of law, Chanel did not require Plaintiff to undergo a medical examination or make a disability-related inquiry of her as alleged in the Complaint. The EEOC has made clear that the act of administering a COVID-19 vaccine is not a "medical examination" under the ADA because it does not seek information about the employee's physical or mental health. *See* EEOC Guidance at K.7. Further, "requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply." *Id.* at K.9. Because Plaintiff has failed to allege Chanel required her to undergo a medical examination or made a disability-related inquiry of her in violation of the ADA, any such claim should be dismissed.

24

**2.**    **Plaintiff Fails To Plausibly Allege That Chanel's Policy Violated The ADA's Confidentiality Provision.**

Finally, the Complaint also contends Chanel's policy violated the ADA's confidentiality provision. *See* Compl. (ECF No. 1) at ¶ 66; 29 C.F.R. § 1630.14(c)(1) (requiring information obtained through job-related medical examination or inquiry must be treated as a confidential medical record). That regulation does not prohibit the collection of an employee's vaccination status; rather, it prohibits the *disclosure* of any such medical information. *See* 29 C.F.R. § 1630.14(c)(1). Because, the Complaint pleads nothing more than the conclusory allegation that the confidentiality provision was violated, and no facts regarding what record(s) were purportedly disclosed and/or to whom, Plaintiff fails to state a claim of any such violation.

## CONCLUSION

For all of the foregoing reasons, all causes of action in the Complaint fail as a matter of law, and Plaintiff's Complaint should be dismissed in its entirety.

DATED:  November 17, 2022          Respectfully submitted,

                                   SEYFARTH SHAW LLP


                                   By:/s/ Alex S. Drummond
                                        Alex S. Drummond
                                        adrummond@seyfarth.com
                                        Florida Bar No. 0038307
                                        SEYFARTH SHAW LLP
                                        1075 Peachtree Street, N.E.
                                        Suite 2500
                                        Atlanta, GA  30309-3958
                                        Telephone:    (404) 885-1500
                                        Facsimile:    (404) 892-7056

                                        Karla Grossenbacher
                                        kgrossenbacher@seyfarth.com
                                        Shana Madigan
                                        smadigan@seyfarth.com
                                        SEYFARTH SHAW LLP
                                        975 F Street, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 463-2400
                                        Facsimile: (202) 828-5393

                                        *Attorneys for Defendant Chanel, Inc.*


## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, NDGa., I hereby certify that this filing has been prepared in
compliance with LR 5.1C, NDGa., using Times New Roman 14 point style.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

EALAILA CONARD,

        **Plaintiff,**

    **v.**                                    **Case No. 22-CV-3784-MLB-CCB**

CHANEL, INC.,

        **Defendant.**

## DECLARATION OF SHANA MADIGAN
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I, Shana Madigan, make this declaration under 28 U.S. Code § 1746, and hereby state as follows:

1. I am over the age of 18 years old. I have personal knowledge of the facts set forth in this Declaration.

2. I am outside counsel for Chanel, Inc. ("Chanel"), and co-counsel for Chanel in this matter. I make this Declaration in support of Chanel's Motion to Dismiss.

3. Exhibit A is a true and correct copy of Plaintiff Ealaila Conard's original EEOC Charge of Discrimination, dated February 16, 2022.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2022.

*Shana Madigan*

Shana Madigan
SEYFARTH SHAW LLP
975 F Street NW, Suite 900
Washington, DC 20004
(202) 828-3581
(202) 828-5393 (facsimile)
smadigan@seyfarth.com

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **410-2022-01070** |
| | | and EEOC |

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | | Home Phone | Year of Birth |
|---|---|---|---|
| Ealaila Conard | | (770) 545-7013 | 1987 |
| Street Address | | | |
| 3162 Blackstone Run | | | |
| LAWRENCEVILLE, GA 30043 | | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | | No. Employees, Members | Phone No. |
|---|---|---|---|
| CHANEL | | Unknown Number Of Employees | (646) 789-3621 |
| Street Address | | | |
| 3393 PEACHTREE RD NE | | | |
| ATLANTA, GA 30326 | | | |
| Name | | No. Employees, Members | Phone No. |
| | | | |
| Street Address | City, State and ZIP Code | | |
| | | | |

| DISCRIMINATION BASED ON | | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|---|
| | | Earliest | Latest |
| Religion | | 09/13/2021 | 11/08/2021 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ealaila Conard** **02/16/2022** | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

Case 1:22-cv-03784-MLB-CCB   Document 7-3   Filed 11/17/22   Page 3 of 4

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **410-2022-01070** |
| | | and EEOC |

*State or local Agency, if any*

I was hired by the above employer on December 10, 2018, as a Fashion Adviser. On September 13, 2021, my employer mandated to get the COVID-19 vaccine or be separated from employment by November 8, 2021. On or about September 22, 2021, I requested a religious accommodation, but my requested was denied. On November 8, 2021, I was discharged. I believe that I have been discriminated against because of my religion (non-denominational), in volition of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ealaila Conard** **02/16/2022** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 20 2022

KEVIN P. WEIMER, Clerk
By: *Paca Thea* Deputy Clerk

Ealaila Conard
Plaintiff in Propria Persona
3162 Blackstone Run
Lawrenceville, Georgia 30043
eahabibul@gmail.com
770.545.7013

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

EALAILA CONARD
    PLAINTIFF

v.                                                          CASE NO. 22-CV-3784-MLB-CCB

CHANEL, INC.
    DEFENDANT

_____/

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**I. Plaintiff filed her complaint timely.**

Defendant claimed that plaintiff's suit should be time-barred because it alleged plaintiff filed her suit on September 19, 2022 and outside of the 90 days allowed by EEOC. Plaintiff received her Right to Sue letter on June 7, 2022 and accordingly needed to have filed her lawsuit in court on or before September 6, 2022. Plaintiff mailed her complaint to the court with certified USPS delivery tracking on September 2nd, 2022 thus September 2nd is the correct date of filing. A true and correct copy of the proof of delivery date is included as Exhibit A-1. In addition, the filed Court document shows an earlier processing stamp by Clerk on September 6, 2022. A true and correct copy of the scanned, filed document from the docket is included as Exhibit A-2. This is crossed out and a new stamp is placed on the document showing September 19, 2022. This was due to an administrative question which was later resolved, but which does not alter the official date of her filing.

Plaintiff alleges she timely filed and due to clerk error her filing date has been mis-entered. Her complaint is therefore timely and properly allege the exhaustion of all available remedies.

**II. Plaintiff sufficiently alleged a claim of discrimination under the ADA.**

Plaintiff's complaint contained sufficient factual matter, accepted as true, to state a claim to relief for disability discrimination and retaliation under the ADA that is plausible on its face.

**A. Plaintiff sufficiently alleged the following facts in her complaint in support of a claim of disability discrimination and retaliation:**

1.) that her employer is a covered entity; (See *Complaint* ¶ 32)

2.) that she has a disability within the meaning of the ADA under two prongs: "regarded as" and "record of"; (See *Complaint* ¶¶ 33,39, 57, 58, 88,121,122,)

3.) that she is qualified to perform the essential functions of her job;(See *Complaint* ¶¶ 73, 98)

4.) that she was engaged in protected activity and her employer knew she was engaged in protected activity; (See *Complaint* ¶ 74,97,109)

5.) that she received adverse employment actions which were causally related to her protected opposition to the "Covid Policy". (See *Complaint* ¶ 112, 113, 116)

**B. Plaintiff is proceeding under the "regarded as" prong and the "record of" prong of the ADA.**

The plaintiff never alleged to have any specific disability such as "Covid-19".  The plaintiff was not required to allege that she had any specific disability because she is not required to discuss the nature of a disability under the "regarded as" and "record of" prongs of the ADA; and furthermore,  she was not requesting any accommodation, nor is she required to make such a request under these prongs.  In addition, the defendant has failed to show that its "Covid policy" is related to the plaintiff's essential job functions.

**C. Defendant misapplies the "transitory and minor" defense to this case**

In many ways, a claim of disability under the **regarded as** prong is a mirror image of the usual procedures taken when a claimant is claiming disability under the "actual" prong of the ADA.  In this particular set of circumstances, because the plaintiff is being **regarded as** having a disability by the "Covid Policy", there is a burden shift of how the disability is "claimed".  Plaintiff is not required to discuss/prove/have a doctor's note "on file" with the employer stating the nature of the disability (contagious disease) that the "COVID policy" **regards her** as having; it is the policy itself which claims plaintiff has the perceived disability;

therefore it is the defendant's policies, attitudes and procedures which all vividly demonstrate the disability that the plaintiff is regarded as having. Plaintiff provided the defendant with adequate notice that she is being regarded as disabled and she did give the employer sufficient notice that she is being regarded as having a disability by the employer's "Covid Policy".

Additionally, the plaintiff is not required to discuss the nature of a disability that is not related to her essential job functions, she simply needs to claim that because the "Covid Policy" demonstrates that her employer and others regard her as having a disability, the employer is imposing policy measures which are not-related to her essential job functions, which she did sufficiently allege in the complaint and affidavit.

The defendant's "Covid Policy" admits that it regards all employees as having a contagious disease and that it regards all employees as needing medical treatment.

Defendant attempted an affirmative defense by proclaiming that all cases of "Covid" are transitory and minor and thus cannot be claimed as a disability. This argument does not apply to Conard's case because the argument is based upon facts that were not alleged. Plaintiff never alleged that she "had Covid", nor is the Plaintiff required to allege she "had Covid". This attempted defense also misapplied the statute by failing to show both elements of "transitory <u>and</u> minor" as required by the rules.

Conard never alleged to have any specific disability such as Covid-19, in fact she has alleged the complete opposite claim and has asked the defendant to prove its suppositions with an individualized assessment. The Defendant admits that it failed to conduct an individualized assessment to determine the nature of the plaintiff's disability, therefore it cannot now claim that the plaintiff has any disability that is both transitory and minor.[1] Defendant's argument is not based upon any *bona fide* medical diagnosis showing that she has any disability that is BOTH "transitory and minor".

The defendant's citation of *EEOC v. STME, LLC* is not relevant to Conard's complaint, and not binding upon this court. The *EEOC*-Plaintiff's physical disability was job-related and a safety risk. In Conard's case, the defendant failed to articulate or express any facts establishing a safety risk, and failed to identify or describe any set of facts establishing that Conard had a disability that substantially impaired her ability to work or perform the essential functions of her job. Ironically, in Conard's case, the defendant mis-classified Conard as

---

[1] The rules of construction require a showing of BOTH transitory and minor, in any case.

having an impairment that could only be cured by its "Covid Policy".    Simultaneously, defendant had no evidence of such an impairment because it never conducted any individualized assessment to make that determination.

The defendant's citation of *Champion v. Mannington Mills, Inc.* is also irrelevant to this case because the Champion-Plaintiff made an "association-discrimination" claim and not a "regarded as" claim and the rules of construction and the facts of the case are completely different and do not apply to the Conard case.

Defendant also included commentary from the EEOC website stating that many "Covid cases" are transitory; however this commentary is certainly not a diagnosis and does not apply to this specific Plaintiff or her claims. It is general information which also comes with numerous legal disclaimers.

The defendant completely ignores the EEOC commentary,   as much as it is not relevant, regarding the so-called "long Covid"  or that the so-called public health emergency regarding "Covid" has been continuing for nearly three years and when everyone in the community claims that someone can become infected with the so-called "Covid-19" disability more than once.  But once again,  we have no way of determining any facts which might otherwise satisfy the criteria for "BOTH transitory AND minor" because the defendant never made this defense or alleged that it had conducted any individualized assessment of the plaintiff and was not acting upon any bona fide medical diagnosis.  The HHS and DOJ Issue Guidance on "Long COVID" and Disability Rights Under the ADA, Section 504, and Section 1557

The EEOC, in its most recent Guidance for Employers regarding Covid and the ADA, stated that an employer must have objective evidence of a disease before it makes medical inquiries or imposes testing.   The EEOC counsels employers that if they want to ask a particular employee[2] to "test" and answer medical inquiries, then that employer is required to first have a diagnosis of that individual employee before making disability-related inquiries.

> "If an employer wishes to ask only a particular employee to answer such questions, or to have a temperature reading or undergo other screening or testing, the ADA requires the employer to have a reasonable belief based on objective evidence that this person might have the disease."[3] ("Disability-related Inquiries and Medical Exams", A-9)

---

2 Such as focusing testing on "unvaccinated" employees claiming exemption under the ADA, for example.

The defendant never performed an individualized assessment thus it did not have the "objective evidence" required to proceed.   The defendant has not met the burden necessary to claim "business necessity" which is discussed in the same EEOC guidance which clearly shows that the business necessity standard requires proof of a medical condition that meets the "direct threat" standard and it must also be "job-related":

> "...once an employee begins work, any disability-related inquiries or medical exams must be "job-related and consistent with business necessity." One way inquiries and medical examinations meet this "business necessity" standard is if they are necessary to determine whether a specific employee has a medical condition that would pose a "direct threat" to health or safety…"
> *("Disability-related Inquiries and Medical Exams",* Introduction)

The defendant cannot conclude that any disability was both transitory and minor based upon commentary appearing on any website.  In fact, we cannot make a conclusion about the nature of any disability because the plaintiff is not required to discuss the nature of any specific disability that it is not related to his essential job-function.   The defendant never conducted any individualized assessment and this does not appear in the record, nor is there any *bona fide* medical diagnosis appearing in the record, therefore the defendant's argument that any disability is "both transitory and minor" is not supported by any facts and the argument completely ignores the "minor" aspect of the necessary two-part condition which cannot be separated from each other.

Likewise, the website commentary does not replace an individual medical diagnosis or individualized assessment for the plaintiff.  Moreover, the website itself disclaims liability for the accuracy and reliability of the commentary and warrants that it cannot be relied upon as a substitution for any law.   Website commentary is not a substitute for an individualized assessment or *bona fide* medical diagnosis as it pertains to one specific individual.  The website commentary does not pertain to any one specific individual so the defendant's argument lacks merit and foundation.

The U.S. Court of Appeals for the 3rd Circuit stated that the exemption of both "transitory and minor" impairments from the protections of the Americans with Disabilities Act requires an employer to establish that the impairment in question is both transitory and minor.

---

3  "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws *Technical Assistance Questions and Answers" - Updated on July 12, 2022.* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

If "Covid-19" is minor, then why the need for the government's declaration of a public health emergency and why the need to impose involuntary medical interventions upon everyone in the entire population of the defendant's employees, the state, the country or the entire world? If it is minor, then why the need for any "Covid Policy" in the first place?

The Americans with Disabilities Act sets forth a three-prong definition of "disability": (1) the individual has a physical or mental impairment that substantially limits one or more of their major life activities; (2) there is a record of such an impairment; or (3) he is regarded as having such an impairment. Under the ADA, an employer may assert the defense that "transitory and minor" impairments do not fall within the "regarded as" prong. "Transitory" is defined as lasting 6 months or less, while "minor" is undefined; however, the defendant failed to proffer any supporting facts that would otherwise establish that the so-called "Covid-19" was a disability that was both transitory and minor. In fact, it is only the defendant that now claims the disability that the plaintiff has is "Covid-19" but the plaintiff never claimed to have such a disability.

In *Eshleman v. Patrick Industries, Inc.*,[4] the employee had surgery to remove a nodule on his lung and a respiratory infection, which collectively lasted less than 6 months. Conflating "transitory" with "minor" in applying the 6-month limitation, the employer argued that the employee was not disabled within the meaning of the ADA. The 3rd Circuit, however, noted that, as set forth in the ADA regulations, an employer must establish that the impairment was both transitory and minor. An impairment that is transitory but not minor falls outside the exemption. By the defendant's own claims, the so-called "Covid-19" disease, even if there were evidence of such a disease, is by no means minor, even if such website commentary makes the opposite claim.

It is then necessary to separately evaluate whether the employee's impairment was "minor," which is a determination that must be made on a case-by-case basis, for example, with an individualized assessment or *bona fide* medical diagnosis, which the defendant failed to conduct or obtain. According to *Eshleman*, relevant factors include the symptoms and severity of the impairment, the type of treatment required, the risk involved, and whether any kind of surgical or medical intervention is anticipated or necessary—as well as the nature and scope of any post-operative care. We have no way of knowing any of these factors, because the defendant failed to conduct any individualized assessment or act upon any *bona fide*

---

4   Eshleman v. Patrick Industries, Inc., No. 19-1403 (3d Cir. Court of Appeal, May 2020)

medical diagnosis.  The defendant's policy is more likened to a cult rather than a rational means of preventing the spread of any disease.

It is striking that the defendant completely ignores the EEOC commentary, as much as it is not relevant, regarding the so-called "long Covid"[5] or that the so-called public health emergency regarding "Covid" has been continuing for nearly three years.  Furthermore,  it is supposedly possible for someone to become infected with "Covid-19" more than once.  But once again,  we have no way of determining any facts which might otherwise satisfy the criteria for "BOTH transitory AND minor" because the defendant never made this defense or alleged that it had conducted any individualized assessment of the plaintiff and was not acting upon any *bona fide* medical diagnosis.


**2.  Plaintiff sufficiently alleged a claim of being regarded as disabled by her employer's policy.**

The statute defines the proof of "being regarded as" disabled as being conditioned upon showing adverse employment actions taken by the employer based upon perceiving the employee as disabled or impaired.

> "Under the ADAAA, an individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*. 42U.S.C. §12102(3)(A) (emphasis added)."
> *Nunies v. HIE Holdings*, No. 16-16494 (9th Cir. 2018)


The Ninth Circuit reminded employers of their obligations under the ADA and that liability can be imposed where an employer considers and treats an employee as having a disability even if the employee does not in fact have one.  The "Covid Policy" itself creates the causal connection between the imposed measures and the consequences for refusing them. It is the "Covid Policy" itself which demonstrates that Conard was being perpetually classified as a "direct threat" because she remained "untreated" for a hypothetical disease.  The policy itself made demands and gave deadlines for getting these "covid vaccines".  The policy vividly demonstrates the causal connection between medical demands and adverse employment

---

5   HHS and DOJ Issue Guidance on "Long COVID" and Disability Rights Under the ADA, Section 504, and Section 1557

actions. The moment the plaintiff refused non-job-related medical treatments and inquiries she was scheduled for the process of termination.

The "Covid Policy" is so poorly conceived and implemented that it literally assumes that all employees are direct threats and need medical treatment. Let that sink in. This is why this case of "first impression" is so important. It brings forth the violations inherent in the policy and asks that they finally be addressed. It is time to stop trying to argue away the logical conclusions that must be faced and corrected.

Indeed, as defendant stated,

> "the complaint alleges defendant regarded plaintiff and all other non-vaccinated employees as disabled, claiming the existence of the defendant's vaccination policy demonstrates that it assumed plaintiff had or was at risk of having COVID-19".

In fact, all employees were initially regarded as "direct threats" by the policy. Next, the employees who submitted to mitigation measures ("Covid vaccines") were no longer regarded as direct threats.[6]   Yet, defendant continued to perceive and classify those employees who remained "unvaccinated", or who opposed the policy for legal reasons, as "direct threats".

In addition, the employer misinformed this smaller group of employees and told them that they only had the option to request two very specific accommodations from the employer: a "religious exemption" or a "medical exemption". This was a ruse by the employer to coerce employees into giving up their rights protected under the ADA. Some employees fell for the ruse. This plaintiff, Conard, did not fall for the ruse and she claimed her protected rights. In essence, she told the employer that she was not diseased and contagious ("disabled") and did not need treatment, and the employer refused to believe her and scheduled the plaintiff for termination.

Conard never claimed she "had Covid"; her claim is that her employer's policy regards all "untreated" employees as "direct threats" and that the policy is unrelated to her essential job functions. She further claims that she is being regarded as having a hypothetical disease because she has never been diagnosed with a contagious, deadly disease.

Defendant attempted to argue that the policy was applied equally to all employees, however the plaintiff alleged that the policy was applied disproportionately to her once she refused the treatments for the hypothetical disease the "Covid Policy" proclaimed all employees had.

---

6   Which is irrational considering "Covid vaccines" are not claimed by the maker to either prevent infection or produce immunity, they are only claimed to lessen symptoms, therefore the only benefit is for the user.

Regarding the defendant's citation of *Shklyar v. Carboline Co.,* this case is not a holding, and the Judge concluded that "the [Skylar] employer classified the plaintiff in the same way it had classified all its employees." *Id.* at *5. However, the Conard-plaintiff has clearly alleged that the "Covid Policy" was disproportionately applied to her once she exercised her rights under the ADA to refuse the accommodations imposed by the "Covid Policy". Conard belongs to a minority of employees claiming to being regarded as having a disability by the "Covid Policy" as she alleged in her amended complaint:

> "One of the mitigation measures established by the defendant's "Covid-19 policy" is a vaccination mandate. On the basis of compliance with this accommodation, the defendant's policy identified three types of employees: (1) vaccinated; (2) unvaccinated but with a medical or religious exemption; and (3) unvaccinated with no request for exemption.
> The defendant's policy treated the third group of employees (as opposed to the other employees that complied with the "Covid-19 Policy" or exempted themselves from it) either "as if" they carried a specific, active, infectious disease, or "as if" they had an impaired or suppressed immune system that made them prone to contracting "Covid-19". The policy regarded them as disabled with a contagious disease with an impaired immune system." (*FAC ¶ 10)*

Interestingly the Shkylar court also determined that it was implausible to infer "...that [the employer] regarded all of its employees as having a disability." Yet this is exactly the situation that the "Covid Policy" places the plaintiff in, because the "Covid Policy" regards all employees as direct threats of contagious disease without performing an assessment. Defendant admits that the "Covid Policy" requires all employees to get a "Covid vaccine", this is an admission of regarding her as in need of a "Covid vaccine" because the policy regards all unvaccinated employees as needing medical treatment.

Regarding the citation of *Speaks;* the impairment was established by the defendant's "Covid Policy" and its conduct; which included adverse employment actions taken against the Speaks-plaintiff. The defendant in the Speaks case established the impairment by misclassifying Speaks-plaintiff as having a physical or mental impairment that substantially limited her ability to engage in one one or more major life activities. This is the correct characterization of the Speaks case, which is not how it was characterized by the Conard-defendant. Neither plaintiff in either case ever claimed that refusing a vaccine was an impairment; this was solely the defendant's mischaracterization.

Defendant's argument that "taking an experimental vaccine is a choice" is without legal foundation because taking any medical treatment as a condition of employment when it is not job-related is never a choice when doing so is not imposed as a matter of law, see *Let Them Choose v. San Diego Unified School District,* Fourth Court of Appeal, California, Nov. 22, 2022.

Regarding the citation of *Shklyar v. Carboline Co.* To argue that it is implausible that every employee of the defendant was considered to be disabled, the "Covid Policy" (both the court's and the defendant's) is admittedly intended to "prevent the spread of Covid" and is based upon the pure speculation that every employee suddenly had the same exact disability, or had "Covid", and that the defendant alone would treat every employee with the same exact experimental medical treatment without any supervision by a qualified physician, without any court order and without any legislative authority.

The policy itself is implausible for these reasons, and for the reason that at no time in human history has there been any scientific evidence establishing the medical necessity for imposing a medical treatment on one person as a means to protect another person from an illness. If the medical treatment is effective, then the person taking it would be sufficient. It is also implausible that all employees suddenly incurred the same exact disability and that each of them could be treated by the same exact medical treatment, based purely upon a layman's test result ("Covid test") and not a *bona fide* medical diagnosis of a qualified physician and without any consideration to possible contraindications or pre-existing medical conditions.

If we are to accept anyone's assertion that it is not plausible that every employee is disabled with a straight face, then we must also conclude that the defendant's (and the court's) "Covid-19 policy" does not plausibly establish the medical necessity that every employee submit to the same medical interventions under these circumstances and that every employee suddenly incurred a disability that could be treated by an ad hoc policy with no professional supervision. If it's not plausible, then the "Covid Policy" itself is not plausible.

**3. The complaint has sufficiently alleged facts supporting a "record of" a disability.**

The defendant's policy, its conduct, and its adverse employment actions taken against the plaintiff establish the "record of" prong under the criteria of the ADA. The Defendant by its policy and conduct, has misclassified the Plaintiff as having an impairment, the cure or

treatment for which, by the defendant's own admission, is its "Covid Policy". This is all sufficiently alleged in the complaint.

Plaintiff does not allege any history of impairment, but rather alleges defendant misclassified her as having an impairment that substantially limited a major life activity because its policy would not allow her to work if she was unvaccinated. The plaintiffs in *Speaks* and *Shklyar* made the same argument and, in each case, it was roundly rejected by the court.

To the extent that the defendant claims that the "Covid policy was applied equally to all employees, this is a naked claim and is not supported by the facts. The defendant's "Covid Policy" is disproportionately applied to the plaintiff. The group of people considered to have disability, but who are undergoing treatment (masking + testing) is treated differently than the group of employees that are considered to be a direct threat to others.

Furthermore, the defendant's "Covid Policy" fails to recognize any employee who claims disability and fails to identify any representative or employee who can assist employees who have disabilities, such as an ADA coordinator. The defendant's "Covid Policy" excludes the group claiming disabilities, at the same time that it assumes all employees are direct threats. In fact, all of the plaintiff's requests to recognize his disability claim were refused by the defendant.

The exemptions to which the defendant refers are not cognizable accommodations under the ADA 29 CFR § 1630. 2 (o).

None of the citations made by the defendant describe a case where the discrimination claim originated from a deliberate policy implemented by the employer that was based upon the purely hypothetical and speculative belief that all employees suddenly had the same exact disability and that the employer had the only cure or treatment, and that each employee would be required to submit to the medical treatment without regard to his own rights to informed consent, medical privacy or whether the treatment was job-related. None of these citations are relevant for this reason alone.

Furthermore, none of these citations originated from a set of facts where the employer instigated or provoked the dispute by adopting a policy such as the defendant's "Covid Policy". This is a case of first impression, at least for this reason, but also for the reason that the court itself has adopted the same or nearly identical "Covid Policy" which gave rise to this complaint in the first place.

In addition the citation of *Raytheon Co. v. Hernandez* is irrelevant because the plaintiff in that case tested positive for cocaine. He then admitted that his behavior violated workplace rules. He then retired, and then two years later, he applied for employment with the same employer. This is a completely different set of facts and has nothing to do with the pending case (Conard) and was not instigated or provoked by a "Covid policy" or anything like it. It might also be worth noting that the facts giving rise to *Raytheon* took place before the 2008 amendment to the ADA. Furthermore, "drug addiction" is specifically excluded as being a disability under the ADA, by the ADA itself.

*Cappetta v. N. Fulton Eye Ctr.* was cited in an attempt to argue the "but for" condition of retaliation. The Conard plaintiff has already alleged in the complaint that the only reason she was fired was because she opposed the "Covid Policy" and refused medical treatments that were not related to her essential job functions. There was no other reason she was fired. The Cappeta-plaintiff was not able to show that she was only fired for discriminatory reasons.

The defendant's citation of *Cappetta* is not relevant because it was disposed of based upon the criteria for summary judgment and not as a motion to dismiss made as a responsive pleading.

Cappetta's employment was terminated because she was excessively late. She then claimed that she was suffering from a physical disability that was job-related. She claimed an "actual" diagnosed disability; claimed it was related to her essential job-function and she identified the disability, because she was relying upon this diagnosis to request reasonable accommodations. These are a completely different set of facts than those in the Conard case.

Regarding defendant's citation of *Caporicci v. Chipotle Mexican Grill, Inc.,* Conard has already expressed above how the "Covid Policy" is not a "neutral policy" because it is applied disproportionately to her and because the policy imposes non job-related medical treatments and inquiries. *Caporicci* was based upon a claim under the Family Medical Leave Act and a diagnosed psychiatric condition, to wit: "Plaintiff suffers from a disability requiring her to be under the care of a psychiatrist and take daily medications." This was not job related. This is a completely different set of facts than here in Conard and not a relevant holding.

Also Caporicci involved the use of drugs and the question of a drug abuse of some kind. The use of, or addiction to drugs is excluded as a disability under the ADA and the Family Medical Leave Act.

Regarding *Smith v. Miami-Dade Cnty.*, 21 F. Supp. 3d 1286, 1290 (S.D. Fla. 2014), *aff'd*, 621 F. App'x 955 (11th Cir. 2015) this case not a relevant holding because it is based on a rehire application which is not similar set of facts as in Conard. Also Smith was fired because of poor job performance therefore she was not rehired. These are not similar set of facts as in Conard's case. Also this case was decided under the criteria of summary judgement and not a motion to dismiss filed as a responsive pleading. Again its not a relevant holding.

**B. The plaintiff has not alleged failure to accommodate in her complaint.**

The plaintiff did not require any accommodations because she was perfectly able to continue performing her essential job functions without any accommodations and without participating in the "Covid Policy", and for the most important reason, no provision of the defendant's "Covid Policy" was related to the plaintiff's essential job function, and defendant failed to give conspicuous notice as to the manner in which its "Covid Policy" was related to the plaintiff's essential job function. This is completely ignored by the defendant. These facts are each sufficiently alleged in the complaint.

Plaintiff's remedy is not limited only to alleging that the defendant failed to provide her any reasonable accommodation; instead, the plaintiff's complaint is based upon the fact that she objected in good faith to the defendant's "Covid Policy" by refusing to participate and then the defendant imposed adverse employment actions upon her as a consequence. Plaintiff was not required to request any accommodation, especially under the facts of this case.

None of the citations made by the defendant involve the unique situation where the employer adopted a health control policy that instigated and provoked a dispute involving disability discrimination and then the employee sued the employer in federal court where the court itself had adopted the same policies as the defendant's. This is where we find ourselves now.

The defendant confuses exemptions with accommodations. Exemptions are not accommodations cognizable under 29 CFR § 16230.2(o). And regarding the defendant's

citations and arguments on page 18 this it is irrelevant for the reasons stated herein. The plaintiff was not asking for accommodations and was not required to ask for accommodations.

**C. Plaintiff's complaint clearly states a claim for retaliation under the ADA.**

Plaintiff has clearly alleged in her complaint the necessary elements of retaliation under the ADA, which have already been addressed in this response.

**The complaint clearly and plausibly alleges that plaintiff engaged in any protected activity.**

The protected activity has been clearly alleged in the complaint and has been addressed herein. Also the defendant mistakenly claims that the complaint is based upon the defendant's denial for her religious accommodation request. This is patently false. A denial of a religious exemption does not give a rise to a cause of action under the ADA. Please remediate yourself on the complaint and seek competent legal advise if you do not understand it.

Just like most of the cases the defendant cites, the citation of *O'Hailpin v. Hawaiian Airlines*, Inc., this is not a holding, it is merely a trial court decision. This case was based upon a "failure to accommodate" and not a similar set of facts as in the above captioned case where the plaintiff alleges discrimination because he was denied equal access because of his good faith objection and refusal to participate in a policy that regarded him as having a disability without any evidence, and based upon the defendant's adverse employment actions that were consequential to the plaintiff's objection and refusal and exercise of his right under 29 CFR Parts 1630.9(d), 1630.14(c) and (d).

O'Hailpin was also based upon the plaintiff's application for a temporary restraining order which requires a greater burden of proof than the complaint filed by⬚Conard

Ultimately, O'Hailpin was dismissed for its failure to exhaust administrative remedies. This is not a similar set of facts as in the pending case (⬚).

Once again, claiming that the cause of action arose as a direct and proximate result of defendant's implementation of its "Covid Policy" does not require the plaintiff to allege that he opposed the policy before it was even a policy. It was the policy itself that gave rise to the cause of action. O'Hailpin is therefore not a relevant holding.

Just as in the case of *Together Emps. v. Mass Gen. Brigham Inc.,* cited by the defendant, this plaintiff was also terminated because she opposed the policy, however this plaintiff also claims that the policy is "non-job-related" which is a significant difference.

Plaintiff clearly alleged a causal relationship in her complaint (see above) and alleged that she was fired for no other reason than her opposition to the policy. Plaintiff claimed her rights and claimed the protection of the ADA which is protected opposition and defendant was in a protected class. Opposition is simultaneously non-compliance. Plaintiff expressed her opposition in a number of ways: she gave written notice to her employer that she was being discriminated against, she filed an EEOC complaint, she refused all mitigation measures, she identified the policy as illegal and illegitimate and when she did not comply with the demands of the "Covid policy" she was retaliated against and fired. There was no other reason she suffered several adverse employment actions than because she refused to comply with the policy.

**III. Plaintiff's complaint clearly states a claim that defendant's vaccination policy violated the ADA.**

First of all the policy was not mandatory because it was not based on any existing law or was not job related. But the defendant is correct. Not only does it appear to suggest but the plaintiff did in fact allege that the defendant did not acquire any new legal duty or authority to impose any medical treatments upon the plaintiff.

Moreover, the EEOC is not a legislative authority and commentary on its website does not create any new legal authority or legal duty for anyone, anywhere.

**1. Plaintiff has plausibly plead that defendant's vaccination policy was an unlawful medical examination or inquiry under the ADA.**

This has already been alleged by the plaintiff, that the policy violated 29 CFR §§ 1630.9(d), 1630.14(c) and (d). The defendant's citation of website commentary whether on the EEOC's website or any other website, is not a legal defense for its violations of the ADA. The website itself disclaims that the commentary cannot be relied as legal or medical advise.

**2. Plaintiff has plausibly allege that defendant's policy violated the ADA's confidentiality provision.**

Defendant's mis-cites or simply ignores what is written in the statute of 29 CFR § 1630.14 (c) which clearly requires for the examinations or inquiries to be job-related and consistent with business necessity.  The defendant's policy is not job-related or consistent with business necessity, which is also clearly alleged in the complaint.  The defendant skips 29 CFR § 1630.14(c) and only mentions 29 CFR § 1630.14(c)(1).  The plaintiff clearly alleged that the defendant imposed non-job-related medical examinations and inquiries all in violation of the ADA.

## CONCLUSION

The defendant's motion is in bad faith and clearly shows that the defendant either misread the complaint or completely ignores the proper allegations in the complaint.

WHEREFORE, for the foregoing reasons, plaintiff requests that the motion to dismiss be denied and for any other relief that the court deems appropriate.

DATED this 19 day of December, 2022.

By: Ealaila : Conard

Ealaila Conard, Plaintiff in *propria persona*

Ealaila Conard
Plaintiff in Propria Persona
3162 Blackstone Run
Lawrenceville, Georgia 30043
eahabibul@gmail.com
770.545.7013

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

EALAILA CONARD
    PLAINTIFF

v.                                 CASE NO. 22-CV-3784-MLB-CCB

CHANEL, INC.
    DEFENDANT

_____/

## CERTIFICATE OF SERVICE

I, Ealaila Conard, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorney, Alex S. Drummond, the address of 1075 Peachtree Street, N.E. Suite 2500 Atlanta, GA 30309-3958, via first class mail on this 10 day of December, 2022.

By: EC

*EXHIBIT A*

Exhibit A-1

## USPS Receipt

UNITED STATES POSTAL SERVICE.

LAWRENCEVILLE NORTH
1557 BUFORD DR
LAWRENCEVILLE, GA 30043-9998
(800)275-8777

09/02/2022 02:38 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Priority Mail® Flat Rate Env | 1 | | $8.95 |
| Atlanta, GA 30303<br>Flat Rate<br>Expected Delivery Date<br>Sat 09/03/2022<br>Tracking #:<br>9510 8104 5523 2245 8696 61 | | | |
| Insurance<br>Up to $100.00 included | | | $0.00 |
| Signature Confirm | | | $3.65 |
| Total | | | $12.60 |

Grand Total: $12.60

Credit Card Remit $12.60

## USPS Tracking

Track your package
Data provided by USPS

Tracking number 9510810455232245869661

**Delivered**
September 06, 02:37PM
Atlanta, GA

View details on USPS

Call 1-800-275-8777

Track another package

Exhibit

1   Ealaila Conard
    Plaintiff in *Propria Persona*
2   3162 Blackstone Run
    Lawrenceville, Georgia 30043
3   eahabibul@gmail.com
4   770/545/013

5   FILED IN CLERK'S OFFICE
    U.S.D.C. - Atlanta
    SEP 19 2022
    KEVIN P. WEIMER, Clerk
    By:

# UNITED STATES DISTRICT COURT

5

6   ## NORTHERN DISTRICT OF GEORGIA

7   2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

8

9   EALAILA CONARD

        PLAINTIFF

10  v.                                    CASE #22-CV-3784

11  CHANEL, INC.

12      DEFENDANT

13  _____/

14  ## COMPLAINT FOR DISCRIMINATION, RETALIATION, AND PROHIBITED ACTIONS ON

15  ## THE BASIS OF DISABILITY

16      Ealaila Conard ("plaintiff"), sues the CHANEL, INC. ("defendant") for violations of the

17  Americans with Disabilities Act and the Americans with Disabilities Amendments Act of 2008

18  (hereafter "ADA" and "ADA-AA", respectively), 42 U.S.C. §12101, *et seq.*, for discrimination,

19  retaliation, and prohibited actions taken on the basis of disability under the "regarded as"

20  and "record of" prongs in violation of the Americans with Disabilities Act of 1990 and the

21  Americans with Disabilities Act Amendment Act of 2008 (hereafter "ADA" and "ADA-AA",

22  respectively), 42 U.S.C. § 12101, *et seq.* Plaintiff petitions for declaratory and injunctive

23  relief under Title I of the ADA as implemented under 29 CFR Part 1630, *et seq.*

24  ## PARTIES

25  1.   The plaintiff resides in Lawrenceville, Georgia at the address of 3162 Blackstone Run

26  for all times material to the facts giving rise to the complaint.

27  2.   The defendant is an "employer" within the definition of 42 U.S.C. 12111(5), with their

28  principal place of business at 3393 Peachtree Road NE, Atlanta, Georgia, 30026 for all

    times material to the facts giving rise to the complaint.



**UNITED STATES POSTAL SERVICE** | **PRIORITY MAIL**

POSTAGE REQUIRED

FROM:

C/O Ealaila Conard
3162 Blackstone Run
Lawrenceville, Georgia
[30043]

TO:

United States District Court
Northern District of Georgia
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia 30303-
3309

---

**UNITED STATES POSTAL SERVICE** *Retail*

**P**

**US POSTAGE PAID**
**$9.90**
Origin: 30043
12/19/22
1249630269-53

**PRIORITY MAIL®**

0 Lb 4.70 Oz

RDC 22

EXPECTED DELIVERY DAY: 12/20/22

C039

SHIP
TO:
75 TED TURNER DR SW
ATLANTA GA 30303-3315



USPS TRACKING® #

9505 5104 5523 2353 9132 77








**PRESS FIRMLY TO SEAL**

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

# PRIORITY®
IL

**Retail**

OSTAGE PAID
Origin: 30043
12/19/22
1249630269-53

9.90

ns apply).*

inations.

Y MAIL®

0 Lb 4.70 Oz

RDC 22

: 12/20/22

coverage.

C039

R SW
3-3315



ACKING® #



23 2353 9132 77

KUP

**FROM:**

C/O Ealaila Conard
3162 Blackstone Run
Lawrenceville, Georgia
[30043]

**TO:**

United States District Court
Northern District of Georgia
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia 30303-
3309

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

#

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EALAILA CONARD,

    Plaintiff,

    v.

CHANEL, INC.,

    Defendant.

**CIVIL ACTION NO.**
**1:22-CV-3784-MLB-CCB**

## FINAL REPORT AND RECOMMENDATION

Plaintiff Ealaila Conard, proceeding *pro se,* brings this action against her previous employer, Defendant Chanel, Inc., asserting claims of discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.* (Doc. 1). This matter is before the Court for consideration of Defendant's motion to dismiss the complaint. (Doc. 7). Plaintiff filed a response to the motion, (Doc. 19), and Defendant filed a reply, (Doc. 20). The undersigned **RECOMMENDS** that Defendant's motion to dismiss the complaint, (Doc. 7), be **GRANTED,** and that Plaintiff's complaint be **DISMISSED** for failure to state a claim.

## I.    BACKGROUND

The Court draws the following factual allegations from the complaint, (Doc. 1), which are assumed to be true for the purpose of this discussion.

Plaintiff began working for Defendant in December of 2018 as a fashion advisor at its retail location within Neiman Marcus in Atlanta. (Doc. 1 at ¶ 19). Defendant required Plaintiff and her colleagues to work from home between mid-March of 2020 and mid-June of 2020 due to the COVID-19 public health emergency. *Id.* at ¶¶ 19, 20. On or about June 12, 2020, Defendant informed Plaintiff that she would be required to wear a surgical mask over her face and engage in frequent handwashing as a new condition of employment before returning to work at Defendant's premises. *Id.* at ¶ 21. Plaintiff returned to work on or about June 12, 2020, and she was required to wear a mask. (Doc. 1-1 at 2, ¶ 10). In late December of 2020, after a team member tested positive for COVID-19, Plaintiff was not allowed to work until she provided a negative PCR test, which caused Plaintiff to lose money and opportunities to earn commission when she missed a day of big sales. *Id.* at 2, ¶ 11.

On September 13, 2021, during a meeting, store manager Bradley announced that Defendant was requiring all employees to receive the COVID-19

2

vaccine as a condition of continued employment. (Doc. 1 at ¶ 23). Plaintiff was also

emailed Defendant's COVID-19 policy, which mandated that all U.S. employees

be fully vaccinated by November 8, 2021. *Id.*; (*see also* Doc. 1-1 at 6). On September

17, 2021, Defendant updated the Connect Chanel Hub with instructions on how to

request an exemption from the vaccination policy, referring to an exemption as an

"accommodation." (Doc. 1 at ¶ 24; *see also* Doc. 1-1 at 6). On September 22, 2021,

Plaintiff asked for a religious exemption. (Doc. 1-1 at 2, ¶ 14). On October 6, 2021,

store manager Bradley, assistant manager Hae, and Human Resources (HR)

employee Michelle Rhee held a meeting with Plaintiff. *Id.* at 3, ¶ 16. Rhee and

Bradley told Plaintiff that her religious exemption was denied because her position

required regular, in-person presence and that she would be fired if she did not

receive the COVID-19 vaccine. *Id.* On October 8, 2021, Defendant sent Plaintiff a

letter formally denying the exemption request and reiterating that, as a condition

of her employment, she was required to be fully vaccinated by November 8, 2021.

(Doc. 1 at ¶ 26; Doc. 1-1 at 7). Defendant ultimately terminated Plaintiff on

November 8, 2021. (Doc. 1 at ¶ 27).

Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission (EEOC) on February 16, 2022. (Doc. 1 at ¶ 5). She filed

3

an amended charge on May 4, 2022. (Doc. 1-1 at 18–24). The EEOC issued her a notice-of-right-to-sue letter on June 7, 2022. *Id.* at 25.

## II.    MOTION TO DISMISS AND PLAINTIFF'S RESPONSE

Defendant filed its motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 7). Defendant moves to dismiss the complaint in its entirety. *Id.* at 1.

Defendant first argues that Plaintiff's claims are time-barred because she did not file her suit within 90 days after receiving her notice of right to sue from the EEOC. (Doc. 7-1 at 7–8). Next, Defendant argues that Plaintiff's ADA discrimination claim fails because Plaintiff has not plausibly alleged that she was disabled within the meaning of the ADA or that she was discharged because of an alleged disability. *Id.* at 8–17. Defendant contends that having COVID-19 is not in and of itself a disability and that Plaintiff has not plausibly alleged that Defendant regarded Plaintiff as disabled or that Plaintiff had a record of a disability. *Id.* at 10–17. Defendant argues that Plaintiff's failure-to-accommodate claim fails because Plaintiff has not plausibly alleged that she was actually disabled or had a record of disability and because Plaintiff does not allege that she ever requested an accommodation related to a disability (as opposed to her request for a religious

4

exemption). *Id.* at 17–19. As to her ADA retaliation claim, Defendant argues that Plaintiff has not plausibly alleged that she is disabled, that she engaged in protected activity under the ADA, or that there is a causal connection between any alleged protected activity and her termination pursuant to the COVID-19 vaccination policy. *Id.* at 19–23. Finally, Defendant argues that Plaintiff has not plausibly pled that Defendant's mandatory vaccination policy constituted an unlawful medical examination, violated the ADA's confidentiality provision, or otherwise violated the ADA. *Id.* at 23–25.

Plaintiff responded to the motion to dismiss. (Doc. 19). First, as to the timeliness of her claims, Plaintiff argues that, based on delivery tracking and the Clerk's Office's processing stamp, she timely filed her complaint. *Id.* at 1. Plaintiff argues that she has sufficiently alleged a discrimination claim because she alleged that she was regarded as having a disability by virtue of Defendant's COVID-19 policy that regarded *all* employees as having or possibly having a contagious disease. *Id.* at 1–10. She also argues that she sufficiently alleged facts supporting the "record of" a disability prong because she alleged that Defendant misclassified her as having an impairment and that Defendant's COVID-19 policy was disproportionately applied to her. *Id.* at 10–13. Next, Plaintiff argues that she does

5

not allege a failure-to-accommodate claim in her complaint because she did not require or ask for any accommodations. *Id.* at 13–14. Plaintiff also argues that she has plausibly alleged an ADA retaliation claim, maintaining that she has shown protected activity, namely her opposition to Defendant's COVID-19 policy. *Id.* at 14–15. Plaintiff argues that Defendant's vaccination policy was an unlawful medical examination or inquiry under the ADA and that it violated the ADA's confidentiality provision. *Id.* at 15–16.

Defendant filed a reply brief, (Doc. 20), and the matter is now before the Court for consideration.

## III.    DISCUSSION

### A.    Standard on a Motion to Dismiss

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

Instead, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks omitted).

Courts must liberally construe *pro se* filings. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (recognizing that a court "read[s] briefs filed by *pro se* litigants liberally"). However, "*pro se* complaints also must comply with the procedural rules that govern pleadings." *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

"[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Attachments that are "exhibit[s] to a pleading [are] a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). And "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (internal quotation marks omitted); *see also Little v. Select Portfolio Serv.*, No. 1:15-CV-0880-MHC-JSA, 2015 WL 11578456, at *3 (N.D. Ga. Oct. 15, 2015), *adopted by* 2015 WL 11605406 (Nov. 5, 2015).

**B.    Timeliness**

Defendant first argues that Plaintiff's claims are barred because she did not timely file her complaint after receiving her notice of right to sue from the EEOC.

(Doc. 7-1 at 7–8). Before an employee may litigate a claim for discrimination under the ADA, "she must first exhaust her administrative remedies," which begins with "filing a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (citing 42 U.S.C. § 2000e-5(b)[1]). "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)). If the EEOC dismisses the charge and notifies the plaintiff of her right to sue, the plaintiff then has 90 days within which she may bring a civil action. *See* 42 U.S.C. § 2000e-5(f)(1); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 & n.2 (11th Cir. 2000).

Plaintiff received her notice-of-right-to-sue letter from the EEOC on June 7, 2022. (Doc. 1-1 at 4, ¶ 20; *see also* Doc. 1-1 at 25). Therefore, Plaintiff was required to file her lawsuit on or before September 6, 2022.[2] *See* 42 U.S.C. § 2000e-5(f)(1).

---

[1] The Eleventh Circuit generally applies the legal standards developed in Title VII, ADA, and ADEA cases interchangeably, including the procedural requirements. *Rizo v. Ala. Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. Jan. 31, 2007); *see also Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.").

[2] The final day of the 90-day period—September 5, 2022—fell on a legal holiday (Labor Day). Therefore, Plaintiff's filing period continued to run through September 6, 2022. *See* Fed. R. Civ. P. 6(a)(1)(C).

9

Defendant argues that Plaintiff's complaint is untimely because it was not filed until September 19, 2022. (Doc. 7-1 at 8 (citing Doc. 1)). In response, Plaintiff argues that she timely filed her complaint on or before September 6, 2022, but that the filing date was entered incorrectly due to a clerk error. (Doc. 19 at 1). Plaintiff attaches her USPS receipt and delivery tracking, which show that she mailed her complaint on September 2, 2022, and that it was delivered on September 6, 2022. *Id.* at 19. Plaintiff's complaint also contains a file stamp showing that it was received on September 6, 2022, although that stamp was crossed out and a second file stamp on the complaint is dated September 19, 2022. *Id*. at 1; (*see also* Doc. 1 at 1). Plaintiff states that the crossed-out file stamp "was due to an administrative question which was later resolved." (Doc. 19 at 1). Defendant does not address Plaintiff's arguments on this issue or otherwise discuss timeliness in its reply brief. (*See* Doc. 20).

"Once a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *see also Adebiyi v. City of Riverdale*, No. 1:09-CV-0025-RWS-JFK, 2009 WL 10664779, at *5 (N.D. Ga. July 21, 2009) (same), *adopted by* 2009 WL 10664836 (N.D. Ga. Sept. 8,

10

2009). Here, Plaintiff has attached her USPS receipt and delivery tracking, which show that she mailed her complaint on September 2, 2022, and that it was delivered on September 6, 2022. (Doc. 19 at 19).[3] Plaintiff also notes that her complaint contains a file stamp showing that it was received on September 6, 2022, although that stamp was crossed out and a second file stamp on the complaint is dated September 19, 2022. *Id.* at 1; (*see also* Doc. 1 at 1). The receipts and crossed-out stamp indicate that Plaintiff's complaint was received at the Court on September 6, 2022, meaning that it was timely filed.

Further, Defendant abandoned its argument that Plaintiff's claims should be dismissed as untimely by not addressing the arguments and evidence Plaintiff raised in her response brief. *See Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition,*

---

[3] When evaluating a motion to dismiss, a court can consider documents attached to the complaint and documents filed in conjunction with a motion to dismiss without converting the motion to one for summary judgment if the documents are central to the complaint and not in dispute. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *see also Swauger v. Dep't of Def.-Def. Intelligence Agency*, 852 F. App'x 393, 394–96 (11th Cir. 2021) (considering postal receipts at the motion-to-dismiss stage because the documents "are central to the issue here [of delivery of a notice of right to sue] and their authenticity is not challenged"); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (explaining that documents are undisputed when there is no dispute about their authenticity). Here, Plaintiff's postal receipt and delivery tracking are central to the issue of whether her complaint was timely filed, and Defendant did not dispute their authenticity in its reply brief.

11

*LLC*, No. 1:16-cv-949, 2020 WL 10728951, at *12–13 (N.D. Ga. Jan. 10, 2020) (noting, in the summary judgment context, that the defendants abandoned arguments where they did not address arguments and case law raised by the plaintiff in a response brief); *Deutz Corp. v. City Light & Power, Inc.*, No. 1:05-cv-3113-GET, 2009 WL 2986415, at *7 (N.D. Ga. Mar. 21, 2009) (finding that the defendant abandoned an argument made in a *Daubert* motion by failing to address the plaintiff's rebuttal arguments in its reply brief).

Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss the complaint in its entirety as untimely be **DENIED**.

### C.    ADA Claims

Plaintiff brings discrimination and retaliation claims under the ADA. (Doc. 1 at 6, 18). She also alleges that Defendant's vaccination policy was an unlawful medical examination or inquiry under the ADA and that it violated the ADA's confidentiality provision. *Id.* at ¶¶ 34, 44, 46–47, 66. The Court considers each claim in turn.

#### 1.  ADA Discrimination

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" concerning hiring, promotion, discharge,

12

compensation, training, job application procedures, or "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]here are two distinct categories of disability discrimination claims under the ADA: (1) failure to accommodate and (2) disparate treatment." *Equal Emp. Opportunity Comm'n v. Eckerd Corp.*, No. 1:10-cv-2816-JEC, 2012 WL 2568225, at *4 (N.D. Ga. July 2, 2012). Here, Plaintiff alleges only disparate treatment.[4] Supreme Court precedent holds that the complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under *McDonnell Douglas*[5] to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). Nevertheless, the Eleventh Circuit has since held that complaints alleging discrimination still must meet the plausibility standard of *Twombly* and *Iqbal. See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300–01 (11th Cir. 2010) (noting that to state a hostile-work-environment claim post-*Iqbal*, the employee "was required to allege" five *prima*

---

[4] Defendant argues that Plaintiff fails to plausibly allege a failure-to-accommodate claim under the ADA. (Doc. 7-1 at 17–19). However, Plaintiff states in her response brief that she does not bring a failure-to-accommodate claim in her complaint. (Doc. 19 at 13–14 ("The plaintiff has not alleged failure to accommodate in her complaint . . . [t]he plaintiff was not asking for accommodations")). Accordingly, the Court does not construe the complaint as raising a failure-to-accommodate claim.

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*facie* elements); *see also Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (holding that although a complaint in an employment case need not establish a *prima facie* case to survive a motion to dismiss, it still must satisfy the standards of *Twombly* and *Iqbal*). The complaint must "provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (internal quotation marks omitted).

While Plaintiff need not establish a *prima facie* case to survive Defendant's motion to dismiss, it is useful to note that Plaintiff can establish a *prima facie* case of disparate treatment under the ADA by showing that: "(1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Smith v. Miami-Dade Cnty.*, 621 F. App'x 955, 959 (11th Cir. 2015). "A plaintiff bringing a disparate-treatment claim under the ADA must allege that the disability actually motivated the employment decision." *Id.* (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). Defendant argues that Plaintiff's discrimination claim fails because Plaintiff has not plausibly alleged that she was disabled within the meaning of the ADA. (Doc. 7-1 at 8–17). The Court agrees.

14

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Plaintiff states that she "never alleged to have any specific disability" and is proceeding under the "regarded as" and "record of" prongs of the definition. (Doc. 19 at 2). Plaintiff alleges in the complaint that she "is regarded as having a disability by the defendant's Covid-19 Policy . . . [which] rested on the assumption that every employee, the plaintiff included, had or could have [COVID-19]," (Doc. 1 at ¶¶ 39–40), that Defendant "regarded [her] as disabled because of [her] unvaccinated status," *id.* at ¶ 88, and that Defendant "made a record of such disability by mis-classifying [her] as having [a disability] . . . by adding [her] name to a list of employees who were 'unvaccinated' and then keeping an actual record of the same," *id.* at ¶¶ 121–22.

Considering first the "regarded as" prong, "[t]he relevant inquiry is whether the employer perceived the plaintiff to have an impairment, not whether the plaintiff was actually impaired." *Toney v. Ala. A&M Univ.*, No. 5:21-cv-689-LCB, 2023 WL 1973203, at *3 (N.D. Ala. Feb. 13, 2023). "The relevant time period for assessing the existence of a disability . . . is the time of the alleged

15

discriminatory act." *Equal Emp. Opportunity Comm'n v. STME*, LLC, 938 F.3d 1305, 1314 (11th Cir. 2019). And the Eleventh Circuit has held that "the disability definition in the ADA does not cover [the] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future." *Id.* at 1315 (holding that an employee did not meet the "regarded as" prong where she was healthy, but her employer regarded her as having the possibility of becoming infected with Ebola in the future if she traveled to Ghana). The court determined that "the terms of the ADA protect persons who experience discrimination because of a current, past, or perceived disability—not because of a potential future disability that a healthy person may experience later." *Id.* at 1311. Here, as in *STME*, Plaintiff does not allege that she was disabled (or that she actually had COVID-19 or was perceived to have COVID-19 at the time of her termination) but rather that Defendant perceived her as having the potential to be infected with COVID-19 in the future. (Doc. 1 at ¶¶ 39, 40, 43, 55).

Plaintiff has thus failed to state a "regarded as" disabled claim because she has not alleged that Defendant perceived her to have a disability at the time of her termination—only that Defendant, through its vaccination policy, considered Plaintiff at risk of potentially contracting COVID-19 in the future. *See, e.g., STME,*

16

938 F.3d at 1318 ("[F]or an employee to qualify as 'being regarded as' disabled, the employer must have perceived the employee as having a current existing impairment at the time of the alleged discrimination"); *Gallo v. Washington Nat'ls Baseball Club, LLC*, No. 22-cv-01092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) (finding that the unvaccinated plaintiff failed to state a "regarded as" claim related to COVID-19 because he did not allege that his employer perceived him as having a disability at the time of his termination and noting that "[e]very court that has considered [the] question [of whether possible future exposure to COVID-19 constitutes being regarded as having a disability] has held the same"); *see also Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (reasoning that "to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 policy "would require inferring that [the employer] regarded all of its . . . employees as having a disability . . . [which] is not a reasonable inference"), *aff'd by* No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023).

Plaintiff has also failed to plausibly allege that she is disabled because of a record of a disability. To state a claim for disability discrimination based on a "record of" having a disability, Plaintiff must plausibly allege that she has "a

17

history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Plaintiff alleges that Defendant "made a record" of Plaintiff having a disability "by adding [her] name to a list of employees who were 'unvaccinated' and then keeping an actual record of the same." (Doc. 1 at ¶¶ 121, 122). However, Defendant did not classify (or misclassify) Plaintiff as having "an impairment that substantially limited one or more major life activities" by noting that Plaintiff was unvaccinated for COVID-19.

Other district courts to consider this issue have agreed that requiring an unvaccinated employee to become vaccinated under a generally applicable COVID-19 vaccination policy[6] does not satisfy the "record of" disability prong.

---

[6] Plaintiff summarily argues in her response that Defendant's COVID-19 policy was "disproportionately applied" to her. (Doc. 19 at 8, 11). However, this is contradicted by Plaintiff's own allegations in the complaint that Defendant's COVID-19 vaccination policy "mandate[ed] that **all employees** in [Defendant's] U.S.-based organization be fully vaccinated as of November 8, 2021." (Doc. 1-1 at 6 (emphasis added); *see also* Doc. 1 at ¶ 23 ("[D]efendant was requiring **all employees** get vaccinated with the Covid-19 vaccine as a condition for continuation of employment" (emphasis added))). Nothing in Defendant's policy was "disproportionately" applied only to Plaintiff.

18

*See, e.g., Librandi v. Alexion Pharms., Inc.*, No. 3:22cv1126(MPS), 2023 WL 3993741, at *7 (D. Conn. June 14, 2023) (finding that such an argument fails to state a claim and collecting cases); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (finding that the plaintiff failed to state a claim for disability discrimination based on a "record of" a disability where she alleged that her employer made a "record of" her alleged disability by misclassifying her as having an impairment and requiring her to become vaccinated under a generally applicable COVID-19 policy); *Shklyar*, 616 F. Supp. 3d at 924–26 (finding that the plaintiff did not plausibly allege a theory of being disabled based on a "record of" disability where the employer simply required her to comply with its COVID-19 policies that applied to all of its employees). As the court noted in *Speaks*, "inferring that [the employer] classified [the unvaccinated plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the employer] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption." 2022 WL 3448649, at *5.

Plaintiff has simply not alleged facts suggesting that she was regarded as disabled or had a record of having a disability. As such, Plaintiff has not plausibly

19

alleged the existence of an essential element of her discrimination claim: that she is disabled within the meaning of the ADA. For this reason, Plaintiff's ADA discrimination claim fails and should be dismissed.

### 2. *ADA Retaliation*

In addition to prohibiting discrimination based on a disability, the ADA also prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (citing 42 U.S.C. § 12203(a)). To state a *prima facie* case of retaliation under the ADA, a plaintiff must allege "(1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Id.* at 1329. And while Plaintiff need not establish a *prima facie* case for purposes of a motion to dismiss, as noted above, it is useful for guidance purposes to note how she may do so. *See Swierkiewicz*, 534 U.S. at 510.

Defendant argues that Plaintiff has failed to plead facts showing that she engaged in a statutorily protected activity or that a causal relationship existed between her protected activity and her termination. (Doc. 7-1 at 20–23). Plaintiff appears to allege that her protected activity was her opposition to or refusal to

20

participate in Defendant's COVID-19 policy. (Doc. 1 at ¶¶ 105, 107, 110, 119).[7] She alleges that she "exercised her right to refuse [Defendant's] Covid-19 Policy measures," which "was a protected activity," and that each time she "exercise[d] her right to refuse . . . [Defendant] . . . immediately or in a manner that was causally related to the exercise of such right, impose[d] adverse employment actions" such as requiring Plaintiff and other employees to work from home, requiring her to wear a mask and take a PCR test, requiring her to be vaccinated, and terminating her employment. *Id.* at ¶¶ 108, 109, 112–16, 119–20.

For retaliation purposes, a plaintiff need not establish that her protected activity is actually protected by the ADA—rather, she need show only that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (internal quotation marks omitted). Nor is she required to show that she had a disability, within the meaning of the ADA, to establish that she engaged in

---

[7] Defendant also argues that Plaintiff's request for a religious exemption from its COVID-19 vaccination policy does not constitute a protected activity under the ADA. (Doc. 7-1 at 20–21). However, Plaintiff concedes that the denial of her request for a religious exemption does not give rise to a cause of action under the ADA and states that she does not claim that her request for a religious exemption is protected activity under the ADA. (Doc. 19 at 14).

protected expression. *See Whitfield v. Northside Hosp.*, No. 1:22-CV-2198-AT-JSA, 2022 WL 19518163, at *12 (N.D. Ga. Sept. 6, 2022), *adopted by* 2023 WL 2950009 (N.D. Ga. Jan. 30, 2023). Here, Plaintiff points to no authority in support of her assertion that her mere refusal to comply with her employer's COVID-19 policy was "protected activity" under the ADA. However, even assuming that Plaintiff's refusal to comply with Defendant's policy constitutes protected activity, Plaintiff has failed to plausibly allege causation between her allegedly protected conduct and her termination.

The third element of a *prima facie* case requires Plaintiff to plausibly allege a causal link between the protected activity and the adverse employment action. *Batson*, 897 F.3d at 1328. The "but-for causation" standard, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action . . . of the employer," applies to ADA retaliation claims. *Whitfield*, 2022 WL 19518163, at *12 (internal quotation marks omitted) (citing *Univ. of Tex. S.W. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013) and *Frazier-White v. Gee,* 818 F.3d 1249, 1258 (11th Cir. 2016)). Here, it is clear from Plaintiff's allegations in the complaint that she was terminated because she refused to comply with Defendant's COVID-19 vaccination policy and become vaccinated. (Doc. 1 at ¶¶

22

27, 128; Doc. 1-1 at 7). Plaintiff has not plausibly alleged that her termination was causally connected to her *opposition* to the policy, as opposed to her failure to comply with the policy. When considering a nearly identical claim, the court in *Shklyar* found that, "[g]iven that the adverse action taken against [the plaintiff] was taken pursuant to [COVID-19] policies that were implemented before [the plaintiff] engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events." 616 F. Supp. 3d at 927. And other district courts have taken the same view that, where an employer's vaccination policy was enacted before the employee opposed the vaccination requirement, "it is not reasonable to infer that there was a causal connection between [the employee's] criticism of the policy and her termination." *Speaks*, 2022 WL 3448649, at *6; *see also, e.g., Librandi*, 2023 WL 3993741, at *8 (dismissing an ADA retaliation claim where the plaintiff's allegations did "not suggest that [the plaintiff] was terminated for objecting to [the employer's] COVID-19 policy [which was enacted before Plaintiff opposed the vaccination requirement]; rather, they suggest[ed] that she was terminated because she failed to comply with it"); *Linne v. Alameda Health Sys.*, No. 22-cv-04981-RS, 2023 WL 3168587, at *3 (N.D. Cal. Apr. 28, 2023) (dismissing the plaintiff's ADA retaliation claim because she did not

23

allege "facts to show that Defendant's communications with and termination of Plaintiff were anything other than its enforcement of a [COVID-19] policy, in place before Plaintiff opposed it, that applied equally to all employees"). The Court finds these cases persuasive.

Plaintiff has alleged that Defendant implemented COVID-19 policies that required employees to temporarily work from home and to wear a mask upon returning to work and a COVID-19 vaccination policy that required all employees to receive the COVID-19 vaccine as a requirement for continuation of employment. (Doc. 1 at ¶¶ 19, 21, 23–24; Doc. 1-1 at 2, ¶¶ 10–12). After the implementation of these policies, Plaintiff alleges that she opposed the policies. (Doc. 1 at ¶¶ 108, 113). However, Plaintiff has not alleged facts suggesting that her termination (or any of the alleged adverse actions she describes in her complaint) were causally connected to her opposition of the policy, as opposed to being the established consequences for failing to comply with the policy. When implementing its vaccination policy, Defendant stated that any employee who had not received an exemption or been vaccinated by November 8, 2021, would be terminated. (Doc. 1-1 at 6–7). Plaintiff's facts show, quite simply, that each of her alleged adverse actions occurred because she did not comply with Defendant's

24

COVID-19 policy—there is just no plausible inference to be found that Plaintiff suffered these actions in retaliation for criticizing or opposing the policies previously enacted. For this reason, Plaintiff's ADA retaliation claim fails and should be dismissed.

### 3. Miscellaneous ADA Claims

Although not set forth as separate counts in the complaint, Plaintiff appears to allege that Defendant's COVID-19 policy otherwise violated the ADA because it constituted an unlawful, non-job-related medical inquiry or examination under the statute and violated the ADA's confidentiality provision. (*See* Doc. 1 at ¶¶ 44, 46–47, 60, 66; *see also* Doc. 19 at 15–16).

First, Plaintiff alleges that Defendant's COVID-19 policy "imposed certain medical treatments, including but not limited to experimental vaccines, wearing a surgical mask over the face, social distancing, segregation, isolation, disclosing medical records and medical history, and submitting to medical examinations." (Doc. 1 at ¶ 44). Plaintiff cites to 29 C.F.R. § 1630.13(b), which states that, except as otherwise permitted, "it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an

25

individual with a disability or as to the nature or severity of such disability." (Doc.

1 at ¶ 47).

Courts have found that similar allegations regarding employer COVID-19

policies fail to state a claim that an employer violated 29 C.F.R. § 1630.13(b). In

*Librandi*, the District of Connecticut considered a similar claim that an employer's

COVID-19 policy:

> imposed certain non-job related medical inquiries including
> disclosing private medical records and medical history. . . submitting
> to COVID-19 testing and non-job-related medical treatments
> including but not limited to: taking experimental vaccines; wearing a
> surgical mask over the face; [and] engaging in social distancing which
> is a euphemism for quarantine and isolation.

2023 WL 3993741, at *9 (internal quotation marks omitted). The court noted that

the "ADA does not forbid all medical inquiries, but only those 'as to whether such

employee is an individual with a disability or as to the nature or severity of the

disability.'" *Id.* (quoting *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88,

95 (2d Cir. 2003)). The court in *Librandi* found that "[n]one of [the plaintiff's]

allegations [regarding COVID-19 testing, masking, vaccines, social distancing, or

required disclosure of COVID-19 vaccination status] amount to a plausible claim

that [the employer] conducted a medical examination or an inquiry about a

disability." *Id.* (collecting cases finding no violation of 29 C.F.R. § 1630.13(b) based

26

on employer's COVID policies or inquiries about vaccination status); *see also Friend v. AstraZeneca Pharms. LP*, No. SAG-22-03308, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) (finding that an employer's inquiry about vaccination status did not violate 29 C.F.R. § 1630.13(b)). So too, here.

Plaintiff also argues that Defendant's COVID-19 policy violates 29 C.F.R. § 1630.14(c), (Doc. 1 at ¶ 66), "but that subsection simply explains the circumstances under which the medical examinations and disability-related inquiries generally prohibited by Part 1630.13 are permitted. Because, as described above, [Defendant's COVID-19 policies are] not barred by Part 1630.13, [Defendant] need not establish that [its policies] fall[] within the exceptions in Part 1630.14." *Jorgenson v. Conduent Transp. Sols., Inc.*, No. SAG-22-01648, 2023 WL 1472022, at *5 n.1 (D. Md. Feb. 2, 2023), *aff'd by* 2023 WL 4105705 (4th Cir. June 21, 2023).

Plaintiff also references 29 C.F.R. § 1630.9(d) in her complaint, (Doc. 1 at ¶¶ 34, 79). 29 C.F.R. § 1630.9(d) states that an employee is not required to accept a reasonable accommodation for a disability. As described above, Plaintiff has not plausibly alleged that she had a "disability" within the meaning of the ADA, and Plaintiff concedes in her response that she did not request any accommodations. (Doc. 19 at 13). Nor can Defendant's COVID-19 policies, such as masking or

27

vaccination requirements, "be described as accommodations, since they are not designed to assist an employee in performing his or her job tasks." *Jorgenson*, 2023 WL 1472022, at *4. Therefore, 29 C.F.R. § 1630.9(d) is inapplicable.

The miscellaneous ADA subsections cited by Plaintiff in her complaint are inapposite, and she has not plausibly alleged that Defendant's COVID-19 policy violated the ADA.

### D.    Leave to Amend

Prior to 2002, a district court could not dismiss a complaint with prejudice without first giving the plaintiff a chance to amend the complaint if a more carefully drafted complaint might state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991). In 2002, the Eleventh Circuit overruled *Bank* in part and held that, "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*). The court was careful to note, however, that its holding did not address *pro se* complaints. *Id.* at 542 n.1. Therefore, following *Bank* and *Wagner*, "where a more carefully drafted *pro se* complaint might state a claim the 'plaintiff must be given at least one chance to amend the

28

complaint before the district court dismisses the action with prejudice.'"

*Bettencourt v. Owens*, 542 F. App'x 730, 735 (11th Cir. 2013) (quoting *Bank*, 928 F.2d

at 1112); *see also Clark v. Maldonado*, 288 F. App'x 645, 647 (11th Cir. 2008) (laying

out the history of *Bank* and *Wagner* and holding that "the *Bank* rule remains

applicable to *pro se* litigants when their complaints are dismissed with prejudice").

However, even under *Bank*, "if a more carefully drafted complaint could not state

a claim . . . dismissal with prejudice is proper." *Bank*, 928 F.2d at 1112.

Here, allowing Plaintiff to amend her complaint would be futile. Plaintiff

cannot plausibly allege that she was "regarded as" disabled or had a "record of" a

disability related to Defendant's COVID-19 policy or that her termination was

causally connected to her alleged opposition to Defendant's COVID-19 policy.

Thus, the Court **RECOMMENDS** that, if the District Judge adopts this Report and

Recommendation, Plaintiff not be given leave to replead her complaint.

## IV.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's

motion to dismiss, (Doc. 7), be **GRANTED**, and that Plaintiff's complaint, (Doc. 1),

be **DISMISSED.** This is a Final Report and Recommendation, there is nothing

29

further pending in this case, and the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

IT IS SO RECOMMENDED, this 13th day of July, 2023.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

30

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Ealaila Conrad,

               Plaintiff,

v.

Chanel, Inc.,

               Defendant.

_____/

Case No. 1:22-cv-3784-MLB

### **ORDER**

Plaintiff Ealaila Conrad sued Defendant Chanel, Inc. for violations
of the Americans with Disabilities Act. (Dkt. 1.) Defendant filed a motion
to dismiss. (Dkt. 7.) Magistrate Judge Christopher C. Bly issued a
Report and Recommendation (R&R) recommending the Court grant
Defendant's motion to dismiss. (Dkt. 24.) No one objects to the R&R.

"It does not appear that Congress intended to require district court
review of a magistrate's factual or legal conclusions, under a de novo or
any other standard, when neither party objects to those
findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). But many district
courts still do conduct a limited review of unobjected-to portions of an

R&R, typically for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee's note (1983 Addition) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Even assuming that review is necessary here, the Court sees no error—much less clear error—in the Magistrate Judge's conclusions.

The Court **ADOPTS** the Magistrate Judge's Final Report and Recommendation (Dkt. 24) and **DISMISSES** Plaintiff's Complaint for failure to state a claim. The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 14th day of August, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 2 1 2023

KEVIN P. WEIMER, Clerk
By:                    Deputy Clerk

Ealaila Conard, Plaintiff in *Propria Persona*
3162 Blackstone Run
Lawrenceville, Georgia 30043
eahabibul@gmail.com; 770-545-7013

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309

EALAILA CONARD
    PLAINTIFF,

v.                                                                    CASE NO. 22-CV-3784-MLB-CCB

CHANEL, INC.
    DEFENDANT.

_____/

## MOTION TO VACATE FINAL ORDER

Plaintiff hereby moves the court to vacate its final order dated August 14, 2023 which dismissed her complaint and adopted the conclusions reached by Magistrate Christopher C. Bly in the July 13, 2023 "Final Report and Recommendation" ("Report") in favor of dismissing her complaint.

Firstly, the fact that the Magistrate Judge required thirty pages to write his recommendation that plaintiff's complaint be dismissed, demonstrates that he is an advocate for defendant. The *pro se* plaintiff asked for an extension of time to respond to such a voluminous report with numerous citations to research and she was denied this request. Thus plaintiff now files this motion to vacate the final order and outlines her objections to the report herein.

Secondly, it must be noted that the Magistrate Judge misconstrued the plaintiff's actual claims in order to reach the conclusions he made. The Magistrate failed to make any report on plaintiff's actual claims thus the report should be stricken from the record.

The Magistrate Judge considered that the plaintiff has not *plausibly* alleged that she is disabled within the meaning of the ADA, as per the standards in *Bell v. Twombly* and *Ashcroft v. Iqbal*. However, the Magistrate Judge is disregarding that those standards cannot be applied without considering the standard of review established by Congress for ADA claims. Congress had to amend the ADA in 2008 because it found that both the Supreme Court and District Courts had issued rulings that countermanded the original intent of Congress while interpreting the definition of "disability". The

ADA standard of review for pleadings is lower than the standard in *Twombly* and *Ashcroft*. Even if that were not so, plaintiff actually pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Plausibility is a "term of art" which means that the Judge did not find defendant liable for the violations of rights. However, defendant has a legal duty to uphold the ADA. The Court is countermanding Congress and imposing a higher threshold than the ADA-AA intends, when it moves to separate employees from coverage rather than focusing on the employer's compliance of its ADA-obligations. Congress stated in 2008 that the main focus of the courts should be <u>whether the employer is satisfying its obligations under the ADA</u>. "...[I]t is the intent of Congress that the primary object of attention in cases brought under the ADA should be *whether entities covered under the ADA have complied with their obligations*, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."[1] (*emphasis added*).

In support of his argument, the Magistrate Judge cited various cases from the Eleventh Circuit which are not applicable to the case at hand. For example, *Henderson v. JP Morgan Chase Bank, N.A.* originated from claims based on allegations that the defendant failed to provide adequate seating for employees, underpaid them, and required them to purchase uniforms with personal funds–not on a claim for disability discrimination under the ADA. Likewise, *Edwards v. Prime, Inc.* and *Surtain v. Hamlin Terrace Found* are cases on racial discrimination, whose applicable standards differ from those applicable to disability discrimination.

Actually, the Eleventh Circuit has determined that the bar to be considered "disabled" under the ADA is not a high one. See e.g., *Masseo v. Color Resols, Int'l, LLC,* 746, F. 3d 1264, 1268 & n.2 (11th Cir. 2014). (explaining that Congress instructed that "the establishment of coverage under the ADA should not be overly complex nor difficult"). "Importantly, what matters for the 'regarded as' theory is whether the [employer] perceived [the plaintiff] as impaired, not whether he was actually impaired." See *Forsyth v. Univ. of Alabama, Bd. of Trustees*, No. 20-12513, 2021 (11th Cir. Sept. 8, 2021). This "more liberal standard" makes "it significantly easier for a plaintiff to show disability." See *Coker v. Enhanced Senior Living, Inc.*, 897 F.Supp.2d 1366, 1374 (N.D. Ga. 2012).

It is not a legal defense against claims of ADA violations for the defendant to claim that it fired the plaintiff because she refused to comply with the policy in question. However, this is what defendant attempted, and instead of analyzing its compliance, Magistrate Judge Bly and the Judge Brown agreed that plaintiff "was terminated because she refused to comply with Defendant's COVID-19 vaccination

---

[1] 29 CFR Appendix to Part 1630-Interpretive Guidance on Title I of the Americans With Disabilities Act.

policy and become vaccinated."[2] The Magistrate Judge completely ignored reviewing defendant's liability, and so did Judge Brown by rubber-stamping such a biased an incoherent report. The defendant failed to demonstrate that it met or satisfied any exemptions or exceptions to its *bona fide* legal duties under the ADA to aid and encourage those with disabilities, including plaintiff. Defendant is the party in this case which has a legal duty under the ADA, not plaintiff, therefore this is the proper focus of review. Neither the Magistrate Judge nor the Judge analyzed the defendant's liability or even questioned whether the defendant had any defense to the violations claimed.

The Magistrate Judge also re-wrote the plaintiff's complaint and is basing his recommendation on his fabricated revision of the complaint.

> Here... Plaintiff does not allege that she was disabled (or that she actually had COVID-19 or was perceived to have COVID-19 at the time of her termination) but rather that Defendant perceived her as having the potential to be infected with COVID-19 in the future. Plaintiff has thus failed to state a "regarded as" disabled claim because she has not alleged that Defendant perceived her to have a disability at the time of her termination—only that Defendant, through its vaccination policy, considered Plaintiff at risk of potentially contracting COVID-19 in the future.[3]

In this passage alone, the Magistrate Judge made three erroneous revisions. Firstly, plaintiff did not claim to have "COVID-19". Plaintiff claimed that first she was perceived as a <u>direct threat</u> of deadly contagious disease by her employer (by the CDC, by the government, etc) without any <u>objective assessment,</u> and she gave her employer written notice of this. Secondly, plaintiff did not allege that defendant "perceived her as having the potential to be infected with COVID-19 in the future". The plaintiff claimed her employer next proceeded to misclassify her as too impaired to work <u>as long as</u> she <u>refused non-job-related medical inquiries and treatments and disability-related tests.</u> Finally, plaintiff did not allege that defendant "regarded [her] as disabled because of [her] unvaccinated status".[4] Plaintiff claimed that she was <u>fired</u> because she opposed a discriminatory policy and refused prohibited medical treatments. The defendant actually regarded all employees as direct threats of contagious disease and then misclassified all "untreated" employees as too impaired to work and fired them. Plaintiff never claimed that "being unvaccinated" was a disability. The Magistrate Judge failed to address these very specific claims made by the plaintiff and deliberately misinterpreted her allegations in order to cobble together a defense for the employer made from smoke and mirrors.

---

2 See *Final Report and Recommendation*, p. 22.
3 See *Final Report and Recommendation*, p. 16.
4 See *Final Report and Recommendation*, p. 15.

Regarding the Judge's citation of *EEOC v. STME, LLC*, this case has very different set of facts and was based upon a claim of a "future disability" which that Judge determined is not possible to claim under the ADA. However, Conard is not arguing a disability existing in the future; she claims that she is being perceived as disabled <u>now</u>. Plaintiff's case has nothing to do with the possibility of developing a disability in the future. The *STME* court emphasized that the ADA only prohibits actions based on existing impairment or the perception of existing impairment, not a belief that an employee might develop an impairment. *Id.* (citing *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016). Conard claims she has been regarded as disabled by her employer since June 2020 and therefore is not claiming "future disability", but an existing one. Also, defendant's masking policy is evidence that it considers plaintiff as a direct threat in the present and not only as potentially disabled in the future.

The Magistrate Judge noted that a plaintiff bringing a disparate-treatment claim under the ADA must allege that the disability actually motivated the employment decision. He eroneously determined that plaintiff did not satisfy this standard by citing *Shklyar v. Carboline Co.*, in which the *Shklyar* judge argued that "to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 policy "would require inferring that [the employer] regarded all of its... employees as having a disability... [which] is not a reasonable inference"). However, this is exactly what defendant's "Covid policy" did. This is exactly what the plaintiff is claiming and neither the Magistrate Judge nor the *Shklyar* Judge gives any facts which contradict the allegation that ALL EMPLOYEES were regarded as direct threats of deadly contagious disease without any evidence. This is what Chanel did, even though it is completely irrational and makes no sense, it is still a fact that is not disproven. The plaintiff is not contradicting herself, as the Magistrate Judge argues.[5] It is true that defendant imposes its policy on everyone equally, and this actually demonstrates that the defendant initially regards <u>all employees</u> as direct threats. The disparate treatment occurs when the employer only targets the group of "untreated" employees, who oppose the policy, for termination.

Defendant's "Covid policy" imposes disparate treatment upon "untreated" employees and upon employees who claim protected status. On the basis of compliance with a non-job-related medical inquiry and treatment, the policy (mis)classifies at least three types of employees: (1) employees who are no longer classified as "direct threats" because they are considered treated and cured ("vaccinated"); (2) employees who are still classified as "direct threats" but who are undergoing treatments, tests and inquiries; (3) and employees who are still classified as "direct threats", remain "untreated" and claim exclusion from the policy on the basis of the protection of the ADA.

---

5 See *Final Report and Recommendation*, p. 18, footnote 6.

Defendant's "Covid policy" discriminates against "untreated" employees by using a "treated"/"untreated" qualification standard as a new condition of employment. The policy is also disproportionally applied to individuals who claim protected opposition to treatments, tests and inquiries. This group is terminated.

The Magistrate Judge considers that the plaintiff failed to state a claim for disability discrimination based on a "record of" a disability under the same argument: "it is not plausible because then everyone would be considered as disabled". The Magistrate Judge again mistates the plaintiff's actual claim. The "record of" prong has to do with classification, and in this case, the <u>misclassification</u> of the plaintiff. The plaintiff alleged that once she opposed taking medical treatments that were not job-related which she had every right to refuse, her employer misclassified her as too impaired to work unless she took the specific medical treatments outlined in the policy. The Magistrate is required to accept the plaintiff's allegations as true, instead he misconstued them and then denied his revision of the allegations as "implausible". Yet, it is objectively true that the underlying premise of the "Covid policy" is that everyone needs treatment; and the purpose of the "Covid policy" is to "treat" as many employees as possible. No diagnosis is required, and if the policy does not require a diagnosis (objective evidence), then it is reasonable to conclude that the policy operates on the assumption (perception) that everyone is impaired and in need of treatment. The policy itself supports the plaintiff allegations. The Magistrate is again demonstrating his personal bias, personal passion and personal political beliefs.

Regarding plaintiff's retaliation claim, the Magistrate Judge agreed with the defendant, which argued that plaintiff failed to plead facts showing that she engaged in a statutorily protected activity or that a causal relationship existed between her protected activity and her termination.

However, plaintiff did allege that she engaged in statutorily protected activity. According to the EEOC, acts that "oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it."[6] Conard fully alleged that she was engaged in exercising her ADA-protected rights, opposing a discriminatory "Covid policy", and identifying violations such as her right to not be subjected to non-job related and disability-related medical inquiries and treatments. Defendant threatened plaintiff with termination for no other reason than she refused to comply with its "Covid policy", because it interferred with her rights. The policy was motivated by an intent to discriminate

---

[6] U.S. Equal Employment Opportunity Commission, Retaliation. Available at: https://www.eeoc.gov/retaliation.

against people with (perceived) disabilities and the "Covid policy" specifically included no provisions for addressing people with disabilities.

The Magistrate Judge made the ridiculous argument that plaintiff has not plausibly alleged that her termination was causally connected to her *opposition* to the policy, instead he styles her opposition as simply a failure to comply with the policy. The plaintiff has alleged the policy is illegal because it violates the ADA, imposed experimental medical treatments against her will and informed consent, violates state public health laws, the defendant has no legal duty to "stop the spread of COVID" and the plaintiff has no legal duty to comply with the policy. Under this set of circumstances, the Magistrate still failed to fathom that plaintiff necessarily refused to comply with such a repugnant policy because she is opposing it in good faith. Instead, he reported that he saw no connection between the plaintiff suffering adverse employment action, including termination, in retaliation for opposing the policies previously enacted. He was unable to see that opposition is simultaneously non-compliance, even when the defendant admitted that the plaintiff was fired for refusing the experimental treatments. Judge Brown reviewed all this and accepted it. This demonstrates the bias of the Court.

Moreover, the Magistrate Judge made a bizarre argument that appears to be based upon the notion that because the policy was imposed before plaintiff claimed her rights, therefore the Mgistrate can see no causal correlation because the the two events (implementation of the policy and opposition to the policy). He seems to think the time differential is just too great to link the events causally. What nonsense. This is frankly untenable. Naturally plaintiff's opposition arises after the implementation of the policy. She had no issue before the policy was imposed. She claims that the policy is the problem and that it denied her rights. She alleges that once she opposed the policy she was met with a series of adverse employment actions as a direct result of her opposition. She was fired for opposing the policy. The "Covid policy" itself and the exhibits attached toplaintiff's complaint show the defendant set deadlines and consequences for opposing the policy. It's perfectly clear that Conard was fired for no other reason that because she opposed the policy. The Magistrate is advocating for the defendant.

Finally, the Magistrate Judge made no argument and presented no authority to determine that defendant's "Covid policy" was not barred by 29 CFR Part 1630.13 *Prohibited medical exams and inquiries*, and instead, he contrived to relieve the defendant from its burden to determine that the measures established therein fall within the exceptions in 29 CFR Part 1630.14 which establishes numerous conditions of employee health programs which the employer has never met. The Magistrate is again nakedly revealing his bias and is advocating for the defendant.

It is abundantly clear that the plaintiff's claim should be allowed and that the court should focus its attention on the defendant's compliance with its duties.

WHEREFORE plaintiff's motion should be granted, the magistrate's report should be stricken from the record, the case re-opened and the defendant shall be required to answer the complaint.

DATED this **17** day of August, 2023.

By: Ealaila : Conard

Ealaila Conard, Plaintiff in *Propria Persona*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Ealaila Conard,

                Plaintiff,

                                Case No. 1:22-cv-3784-MLB

v.

Chanel, Inc.,

                Defendant.

_____/

## ORDER

Plaintiff Ealaila Conrad sued Defendant Chanel, Inc. for violations of the Americans with Disabilities Act. (Dkt. 1.) Defendant filed a motion to dismiss. (Dkt. 7.) Magistrate Judge Christopher C. Bly issued a Report and Recommendation ("R&R") recommending the Court grant Defendant's motion to dismiss. (Dkt. 24.) No one objected to the R&R, and the Court adopted the R&R and dismissed Plaintiff's Complaint for failure to state a claim. (Dkt. 28.) Plaintiff filed a "Motion to Vacate Final Order" and an addendum to her motion. (Dkts. 30, 32.) For the following reasons, the Court denies Plaintiff's motion.

In Plaintiff's addendum, she contends her motion falls under Federal Rule of Civil Procedure 59. (Dkt. 32 at 1.)  A Rule 59(e) motion must be based upon "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  The decision to reconsider "is committed to the sound discretion of the district judge." *United States v. Jim*, 891 F.3d 1242, 1252 (11th Cir. 2018) (citation omitted).  It is granted sparingly, and a Rule 59(e) motion cannot be used as a vehicle through which to "relitigate old matters." *Arthur*, 500 F.3d at 1343.

In her motion before the Court, Plaintiff does not argue she is entitled to relief because of newly discovered evidence or a change in the law.  Nor does she identify a manifest error in law or fact.  At most, Plaintiff argues that the magistrate judge misconstrued her arguments, largely by reiterating arguments she made in her Complaint or her response to Defendant's Motion to Dismiss. (*See* Dkts. 1, 19.)  Plaintiff expresses disagreement with the Court's legal conclusions and essentially asks the Court to reexamine an unfavorable ruling. Accordingly, Plaintiff is not entitled to the relief she seeks.

2

The Court **DENIES** Plaintiff's Motion to Vacate Final Order (Dkt. 30).

**SO ORDERED** this 5th day of October, 2023.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

3

**CERTIFICATE OF SERVICE**

I, Ealaila Conard, hereby certify that a true and correct copy of the foregoing was duly served upon Chanel's attorney Alex S. Drummond, at the address of 1075 Peachtree Street, N.E. Suite 2500 Atlanta, GA 30309-3958, via first class mail on this 16th day of December, 2023.

I further certify that two true and correct copies of the foregoing was duly served upon the United States Court of Appeals for the Eleventh Circuit at the Elbert Tuttle Court of Appeals, 56 Forsyth Street, N.W.; Atlanta, Georgia 30303, via first class mail on this 16th  day of December, 2023.

**By:** *E.C.*

3